ROBERT S. BREWER, JR. (SBN 65294)
JAMES S. MCNEILL (SBN 201663)
MCKENNA LONG & ALDRIDGE LLP
750 B Street, Suite 3300
San Diego, CA  92101
Telephone:    (619) 595-5400
Facsimile:     (619) 595-5450

WILLIAM F. LEE (admitted *pro hac vice*)
JOHN J. REGAN (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:   (617) 526-6000
Facsimile:    (617) 526-5000

MARK D. SELWYN (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1117 California Avenue
Palo Alto, CA  94304
Telephone:   (650) 858-6000
Facsimile:    (650) 858-6100

Attorneys for Defendant/Counterclaimant
BROADCOM CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>BROADCOM CORPORATION,<br><br>Defendant.<br><br>————————————————<br>BROADCOM CORPORATION,<br><br>Counterclaimant,<br><br>v.<br><br>QUALCOMM CORPORATION,<br><br>Counterdefendant. | Case No.  05 CV 01958B (BLM)<br><br>**BROADCOM CORPORATION'S FIRST AMENDED ANSWER AND COUNTERCLAIMS TO QUALCOMM INCORPORATED'S COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge:   Hon. Rudi M. Brewster |

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

Pursuant to Rules 8, 12, and 13 of the Federal Rules of Civil Procedure and the Local Civil Rules of this Court, the defendant and counterclaim plaintiff Broadcom Corporation ("Broadcom") answers the allegations of Qualcomm Incorporated's ("Qualcomm") Complaint for Patent Infringement (the "Complaint") and asserts counterclaims as follows:

## PARTIES

1. Upon information and belief, Broadcom admits the allegations in paragraph 1 of the Complaint.

2. Broadcom admits the allegations in paragraph 2 of the Complaint.

3. Broadcom admits the allegations in paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4. Broadcom admits that Qualcomm has alleged patent infringement in this action. No answer is required to the remaining allegations contained in paragraph 4 of the Complaint, which merely state conclusions of law.

5. Broadcom denies that it has committed, and is continuing to commit, acts of infringement in this district. No answer is required to the remaining allegations contained in paragraph 5 of the Complaint, which merely state conclusions of law.

## GENERAL ALLEGATIONS

6. Broadcom denies the allegations contained in paragraph 6 of the Complaint.

## THE PATENTS

7. Broadcom admits that United States Patent No. 5,452,104 (the "'104 Patent") is entitled "Adaptive Block Size Image Compression Method and System"; that the '104 Patent indicates that it was issued by the United States Patent and Trademark Office ("USPTO") on September 17, 1995; that the '104 Patent names Chong U. Lee as its purported inventor; and that an uncertified copy of the '104 Patent is attached to the Complaint as Exhibit 1. Broadcom denies the remaining allegations contained in paragraph 7 of the Complaint.

8. Broadcom admits that United States Patent No. 5,576,767 (the "'767 Patent") is entitled "Interframe Video Encoding and Decoding System"; that the '767 Patent indicates that it was issued by the USPTO on November 19, 1996; that the '767 Patent names Chong U. Lee and

Donald Pian as its purported inventors; and that an uncertified copy of the '767 Patent is attached to the Complaint as Exhibit 2.  Broadcom denies the remaining allegations contained in paragraph 8 of the Complaint.

9.      Broadcom denies the accuracy of Qualcomm's characterization of the patents-in-suit but otherwise admits the allegations contained in paragraph 9 of the Complaint.

10.      Broadcom denies the allegations contained in paragraph 10 of the Complaint.

11.      Broadcom denies the allegations contained in paragraph 11 of the Complaint.

## COUNT I

12.      Broadcom incorporates its responses to paragraphs 1-11 of the Complaint as though fully set forth herein.

13.      Broadcom denies the allegations contained in paragraph 13 of the Complaint.

14.      Broadcom denies the allegations contained in paragraph 14 of the Complaint.

15.      Broadcom denies the allegations contained in paragraph 15 of the Complaint.

16.      Broadcom denies the allegations contained in paragraph 16 of the Complaint.

## DEFENSES AND AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

17.      Qualcomm is not entitled to any relief against Broadcom because Broadcom has not directly or indirectly infringed the '104 Patent and/or the '767 Patent (collectively, "the Qualcomm patents").

## SECOND AFFIRMATIVE DEFENSE

18.      One or more of the claims of the Qualcomm patents are invalid and/or unenforceable for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 102, 103, and 112.

## THIRD AFFIRMATIVE DEFENSE

19.      One or more of the Qualcomm patents are unenforceable against Broadcom because of waiver or other applicable equitable doctrines.

**FOURTH AFFIRMATIVE DEFENSE**

20.     Qualcomm's right to seek damages is limited, including without limitation by 35 U.S.C. §§ 286 and 287.  Upon information and belief, Qualcomm has not previously marked its products or otherwise given notice to Broadcom of the Qualcomm patents.

**FIFTH AFFIRMATIVE DEFENSE**

21.     Broadcom is exempt from liability for infringement in whole or in part to the extent that any of the alleged inventions described in and allegedly covered by the Qualcomm patents is used, manufactured, or sold by or for Broadcom, its suppliers, and/or its customers pursuant to a license.

**SIXTH AFFIRMATIVE DEFENSE**

22.     The claims of the '104 Patent are unenforceable because of inequitable conduct by individual(s) at Qualcomm involved in the prosecution of the '104 Patent application before the United States Patent and Trademark Office ("PTO"), including Chong U. Lee, a Qualcomm employee, sole named inventor of the '104 Patent, and the applicant, as set forth in detail below in Broadcom's Counterclaims

**COUNTERCLAIMS**

Broadcom Corporation for its counterclaims against Qualcomm Incorporated alleges as follows:

**PARTIES**

1.     Counterclaim-plaintiff Broadcom Corporation ("Broadcom") is a corporation organized and existing under the laws of the state of California, with its principal place of business in Irvine, California.

2.     Upon information and belief, counterclaim-defendant Qualcomm Incorporated ("Qualcomm") is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business in San Diego, California.

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

4.      Qualcomm is subject to personal jurisdiction in this District.

5.      Venue for this action is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## **FACTS**

6.      Upon information and belief, Qualcomm claims to be the owner of all rights, titles, and interests in and to U.S. Patent Nos. 5,452,104 ("the '104 Patent") and 5,576,767 ("the '767 Patent") (collectively, "the Qualcomm patents").

7.      Qualcomm has accused Broadcom of infringement of the Qualcomm patents.

8.      An actual case or controversy exists between the parties concerning the infringement, validity, and enforceability of one or more of the claims of the '104 Patent and the '767 Patent.

## **COUNT ONE**

### **(Non-infringement, Invalidity, and Unenforceability of the '104 Patent)**

9.      Broadcom repeats and re-alleges the allegations of the preceding counterclaim paragraphs 1-8 as if fully set forth herein.

10.      Broadcom has not directly or indirectly infringed and is not directly or indirectly infringing the '104 Patent, including to the extent that any of the alleged inventions allegedly covered by the '104 Patent is used, sold, or manufactured by Broadcom, its suppliers, and/or its customers pursuant to a license.

11.      One or more claims of the '104 Patent are invalid and unenforceable for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for patentability under Title 35 of the United States Code, including without limitation, §§ 102, 103, and/or 112.

12.      Broadcom is entitled to a declaratory judgment that it has not infringed and is not infringing the '104 Patent, and that the '104 Patent is invalid.

### Inequitable Conduct

13.      The '104 Patent is unenforceable due to inequitable conduct committed by individual(s) at Qualcomm involved in the preparation, filing, and/or prosecution of the '104

Patent application before the United States Patent and Trademark Office ("PTO"), including Dr. Chong U. Lee, a Qualcomm employee, sole named inventor of the '104 Patent, and the applicant.

14. Individual(s) at Qualcomm involved in the preparation, filing, and/or prosecution of the '104 Patent application before the PTO, including Dr. Lee, and/or the prosecuting attorneys and/or agents, had a duty to disclose to the PTO information that was material to the patentability of the '104 Patent application.

15. Individual(s) at Qualcomm involved in the preparation, filing, and/or prosecution of the '104 Patent application before the PTO, including Dr. Lee, and/or the prosecuting attorneys and/or agents, failed to disclose to the PTO information that was material to the patentability of the '104 Patent application.

16. Upon information and belief, individual(s) at Qualcomm involved in the preparation, filing, and/or prosecution of the '104 Patent application before the PTO, including Dr. Lee, and/or the prosecuting attorneys and/or agents, failed to disclose to the PTO information that was material to the patentability of the '104 Patent application, with an intent to deceive and/or mislead the PTO by doing so.

17. The '104 Patent, entitled "Adaptive Block Size Image Compression Method and System," issued to inventor Dr. Chong U. Lee on September 19, 1995.

18. The '104 Patent lists Qualcomm as the assignee and Russell B. Miller and Sean English as the prosecuting attorneys and/or agents.

19. The '104 Patent issued from application number 08/102,124, which was filed on August 4, 1993.

20. Application number 08/102,124 was a continuation of application number 08/004,213, which was filed on January 13, 1993, and abandoned.

21. Application number 08/004,213 was a continuation of application number 07/710,216, which was filed on June 4, 1991, and abandoned.

22. Application number 07/710,216 was a continuation-in-part of application number 07/487,012, which was filed on February 27, 1990, and issued as U.S. Patent No. 5,021,891 on June 4, 1991.

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

23.     On all of the above applications and on U.S. Patent No. 5,021,891, Dr. Lee is identified as the sole inventor.

24.     As the named inventor of the systems, apparatuses, means, and methods claimed in the '104 Patent, Dr. Lee had a duty to disclose to the PTO information that was material to the patentability of the '104 Patent application, from the time the first application was filed in the chain of related applications until the '104 Patent issued.

25.     As the named prosecuting attorney for the '104 Patent, Mr. Miller had a duty to disclose to the PTO information that was material to the patentability of the '104 Patent application, from the time the first application was filed in the chain of related applications until the '104 Patent issued.

26.     As the named prosecuting attorney and/or agent for the '104 Patent, Mr. English had a duty to disclose to the PTO information that was material to the patentability of the '104 Patent application, from the time the first application was filed in the chain of related applications until the '104 Patent issued.

27.     On or about July 11, 1990, Dr. Lee received by first class mail two conference papers from C.T. Chen (1958QB0115624-48).

28.     The first conference paper that Dr. Lee received from C.T. Chen in July 1990 was entitled "A K-th Order Adaptive Transform Coding Algorithm for Image Data Compression" and was presented by Cheng-Tie Chen at the Conference on Applications of Digital Image Processing in San Diego, California, in August 1989 ("Chen '89") (1958QB0115637-48).

29.     The second conference paper that Dr. Lee received from C.T. Chen in July 1990 was entitled "Transform Coding of Digital Images Using Variable Block Size DCT With Adaptive Thresholding and Quantization," and was presented by Cheng-Tie Chen at the Conference on Applications of Digital Image Processing in San Diego, California, in July 1990 ("Chen '90") (1958QB0115625-36).

30.     Before July 1990, Dr. Lee was aware of C.T. Chen and some of his work related to DCT-based image compression approaches.

31.     Dr. Lee read at least some portions of Chen '90 after receiving it in July 1990, including "Figure 4.  The quadtree corresponding to Fig. 3."

32.     Chen '90 was related to research that Dr. Lee was doing at the time, specifically the variable block size image compression algorithm called "Adaptive Block Size Discrete Cosine Transform" embodied in the '104 Patent.

33.     Figure 4 in Chen '90 was related to research that Dr. Lee was doing in July 1990 concerning quadtree structures, some of which is embodied in the '104 Patent.

34.     On or about July 12, 1990, an Information Disclosure Statement Under 37 C.F.R. § 1.56 was filed with the PTO in application number 07/487,012.

35.     That Information Disclosure Statement was signed by Mr. Miller, dated July 6, 1990, and listed nine references—(1) U.S. Patent No. 4,774,574; (2) U.S. Patent No. 4,922,341; (3) U.S. Patent No. 4,924,309; (4) the article "Discrete Cosine Transform" by N. Ahmed et al.; (5) the article "Adaptive Coding of Monochrome and Color Images" by Wen-Hsiung Chen et al.; (6) the article "Interframe Cosine Transform Image Coding" by John A. Roese et al.; (7) the article "Distributions of the Two-Dimensional DCT Coefficients for Images" by Randall C. Reininger et al.; (8) the article "Scene Adaptive Coder" by Wen-Hsiung Chen et al.; and (9) the article "Hamming Coding of DCT-Compressed Images Over Noisy Channels" by David R. Comstock et al.

36.     Two of the references—U.S. Patent No. 4,922,341 and U.S. Patent No. 4,924,309—issued in May 1990, just two months before the Information Disclosure Statement was filed.

37.     The July 1990 Information Disclosure Statement did not cite Chen '90.

38.     On or about December 15, 1990, the primary patent examiner, Edward L. Coles, Sr., considered the nine references in the Information Disclosure Statement, and all nine references are cited in the issued '104 Patent.

39.     On or about January 24, 1992, an Information Disclosure Statement Under 37 C.F.R. § 1.56 was filed with the PTO in application number 07/710,216.

40.     This second Information Disclosure Statement was signed by Mr. Miller, dated January 22, 1992, and listed the same references as the July 1990 Information Disclosure Statement as well as two additional references—(1) the article "Variable Block-Size Transform Image Coder" by Its'Hak Dinstein et al. and (2) the article "Quadtree-Structured Recursive Plane Decomposition Coding of Images" by Peter Strobach.

41.     The article by Its'Hak Dinstein was published in November 1990, approximately four months after Chen '90 was presented in San Diego, California, and Dr. Lee received it.

42.     The article by Peter Strobach was published in June 1991, almost one year after Chen '90 was presented in San Diego, California, and Dr. Lee received it.

43.     The January 1992 Information Disclosure Statement did not cite Chen '90.

44.     On or about September 1, 1992, the assistant patent examiner, Kim Yen Vu, considered the 11 references in the Information Disclosure Statement, and all 11 references are cited in the issued '104 Patent.

45.     The file history for the '104 Patent contains no other information disclosure statements or prior art submissions besides the July 1990 and January 1992 Information Disclosure Statements.

46.     The '104 Patent cites no "other publications" besides the articles identified in the July 1990 and July 1992 Information Disclosure Statements.

47.     Chen '90 was never disclosed to the PTO during the prosecution of the '104 Patent application, by Dr. Lee, Mr. English, Mr. Miller, or anyone else acting on behalf of Qualcomm, and was not considered by the PTO during prosecution of the '104 Patent application.

48.     On or about May 1992, Dr. Lee published a paper entitled "Intraframe Compression of HDTV Images Based On Adaptive Block Size Discrete Cosine Transform," in Proc. of the Korean Federation of Science and Technology Societies Workshop ("Korean Paper") (1958QB0043418-40).

49.     The Korean Paper describes the state of the art for video compression in 1992 and discusses Dr. Lee's purported invention claimed in the '104 Patent, including the alleged benefits and improvements of his alleged invention over the art.

50.     In the Korean Paper, Dr. Lee cited several articles describing "other variable block size algorithms," including Chen '90 and an April 1987 article by D. Jacques Vaisey and Allen Gersho entitled "Variable Block-Size Image Coding," ("Vaisey '87") (BCM2-SD3 12212-15), which was published in Proc. International Conference On Acoustics, Speech, and Signal Processing. (*See* 1958QB0043422, 1958QB0043438.)

51.     Neither the Korean Paper nor Vaisey '87 were disclosed to the PTO during the prosecution of the '104 Patent application, by Dr. Lee, Mr. English, Mr. Miller, or anyone else acting on behalf of Qualcomm, and neither was considered by the PTO during prosecution of the '104 Patent application.

52.     Dr. Lee knew that he had a duty to disclose to the PTO information that was material to the patentability of the '104 Patent application.

53.     On or about April 10, 1990, Dr. Lee signed a Combined Declaration/Power of Attorney, which was filed in application number 07/487,012. In that document, Dr. Lee swore: "I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above. I acknowledge the duty to disclose information which is material to the examination of the this [sic] application in accordance with Title 37, Code of Federal Regulations, Sec. 1.56(a)."

54.     On or about June 4, 1991, Dr. Lee signed a Combined Declaration/Power of Attorney, which was filed in application number 07/710,216. In that document, Dr. Lee swore: "I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above. I acknowledge the duty to disclose information which is material to the examination of the this [sic] application in accordance with Title 37, Code of Federal Regulations, Sec. 1.56(a)."

55.     Mr. Miller, who signed the July 1990 and January 1992 Information Disclosure Statements, knew that he had a duty to disclose to the PTO information that was material to the patentability of the '104 Patent application.

56.     Sean English, who was a registered patent agent, knew that he had a duty to disclose to the PTO information that was material to the patentability of the '104 Patent application.

57.     Dr. Lee, Mr. Miller, and/or Mr. English knew about Vaisey '87 and Chen '90, and failed to disclose the references to the PTO during the prosecution of the '104 Patent application and related applications—in breach of their duty to disclose under applicable Federal Circuit law and 37 C.F.R. § 1.56.

58.     Vaisey '87 is highly material to the patentability of the invention claimed in the '104 Patent because it discloses a variable block size image coder that uses a quadtree-based segmentation algorithm to partition an image into variable blocks according to the local detail of the image.  Vaisey also discloses a method of using transform coding and vector quantization to encode the segmented blocks.

59.     Chen '90 is highly material to the patentability of the invention claimed in the '104 Patent because it discloses, among other things, a quadtree-based adaptive block size system in which variable block size Discrete Cosine Transforms ("DCTs") are performed.  Additionally, Chen '90 discloses adaptive thresholding and adaptive quantization.  Chen '90 also discloses a DCT-based quadtree adaptive block size system that uses redundancy in DC coefficients (specifically, by considering similarity in the mean of adjacent sub-blocks) to increase the amount of compression.

60.     Neither Vaisey '87 nor Chen '90 is cumulative of any or all of the references disclosed to, or otherwise before, the PTO during the prosecution of the '104 Patent.  None of the references cited in the July 1990 and January 1992 Information Disclosure Statements, or otherwise before the PTO, taught the benefits of a DCT-based quadtree adaptive block size system.  Furthermore, none of the references before the PTO during prosecution of the '104 Patent discloses, as Chen '90 does, a DCT-based quadtree adaptive block size system that exploits redundancy in the DC coefficients to improve compression efficiency.

61.     Upon information and belief, Dr. Lee knew that Vaisey '87 and Chen '90—which he cited in his Korean Paper—were relevant to the invention claimed in the '104 Patent and material to patentability.

62.     Upon information and belief, Mr. Miller and/or Mr. English also knew that Vaisey '87 and Chen '90 were relevant to the invention claimed in the '104 Patent and material to the patentability of the invention claimed in the '104 Patent.

63.     Upon information and belief, at least one person among Dr. Lee, Mr. Miller, and/or Mr. English, owing a duty of disclosure to the PTO during prosecution of the '104 Patent and who had knowledge of Vaisey '87 and Chen '90 possessed an intent to deceive and/or mislead the PTO.  Such intent may be inferred from all of the circumstances relating to the alleged invention and prosecution and issuance of the application for the '104 Patent, including but not limited to such persons' knowledge of Vaisey '87 and Chen '90, his inclusion and discussion of them in his Korean Paper, and their high materiality to the patentability of the inventions claimed in the '104 Patent.

64.     The '104 Patent is unenforceable due to inequitable conduct committed by individual(s) at Qualcomm involved in the preparation, filing, and/or prosecution of the '104 Patent application before the PTO, and Broadcom is entitled to a declaration to that effect.

## COUNT TWO

### (Non-infringement, Invalidity, and Unenforceability of the '767 Patent)

65.     Broadcom repeats and re-alleges the allegations of the preceding counterclaim paragraphs 1-8 as if fully set forth herein.

66.     Broadcom has not directly or indirectly infringed and is not directly or indirectly infringing the '767 Patent, including to the extent that any of the alleged inventions allegedly covered by the '767 Patent is used, sold, or manufactured by Broadcom, its suppliers, and/or its customers pursuant to a license.

67.     One or more claims of the '767 Patent are invalid and unenforceable for failing to meet one or more of the requisite statutory and decisional requirements and/or conditions for

1   patentability under Title 35 of the United States Code, including without limitation, §§ 102, 103,

2   and/or 112.

3       68.    Broadcom is entitled to a declaratory judgment that it has not infringed and is not

4   infringing the '767 Patent, and that the '767 Patent is invalid.

5   **PRAYER FOR RELIEF**

6       WHEREFORE, Broadcom requests the Court to enter a judgment in its favor and against

7   Qualcomm as follows:

8           a.    Dismiss the Complaint in its entirety, with prejudice;

9           b.    Enter judgment in favor of Broadcom and against Qualcomm;

10           c.    Declare that Broadcom has not infringed, and is not infringing, the

11               Qualcomm patents;

12           d.    Declare that one or more of the claims of the Qualcomm patents are

13               invalid, void, and/or unenforceable against Broadcom;

14           e.    Award Broadcom its costs (including expert fees), disbursements, and

15               reasonable attorneys' fees incurred in this action, pursuant to 35 U.S.C.

16               § 285; and

17           f.    Grant such further relief as is just and proper.

18   **DEMAND FOR JURY TRIAL**

19       In accordance with Fed. R. Civ. P. 38(b), Broadcom demands a trial by jury on all issues

20   so triable.

21   Dated:  December 8, 2006            MCKENNA LONG & ALDRIDGE LLP

22                           WILMER CUTLER PICKERING
                          HALE AND DORR LLP

23

24                           By:_____s/James S. McNeill_____
                            James S. McNeill

25                          Attorneys for Defendant/Counterclaimant

26                          BROADCOM CORPORATION
                       E-mail:  jmcneill@mckennalong.com

27

28

1
2

**Q**UALCOMM **I**NCORPORATED **V. B**ROADCOM **C**ORPORATION
**United States District Court Case No. 05-CV-1958 B (BLM)**

3

**CERTIFICATE OF SERVICE**

4

I, James S. McNeill, certify that I caused to be served upon the following counsel and parties of record a copy of the following document(s):

5
6

•    **BROADCOM CORPORATION'S FIRST AMENDED ANSWER AND COUNTERCLAIMS TO QUALCOMM INCORPORATED'S COMPLAINT FOR PATENT INFRINGEMENT**

7

via personal service, overnight mail (VIA UPS), facsimile, first class mail or e-mail, as indicated below:

8
9
10
11

Barry Jerome Tucker, Esq.                                *Attorneys for Plaintiff*
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA 92122
Tel.: (858) 450-8478/**Fax: (858) 450-8499**
**barry.tucker@hellerehrman.com**

12

**Via Personal Delivery**

13
14
15
16
17
18
19
20

James R. Batchelder, Esq.                                *Attorneys for Plaintiff*
Adam A. Bier, Esq.
Kevin K. Leung, Esq.
Lee Patch, Esq.
DAY CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Boulevard, Suite 400
Cupertino, CA 95014
Tel: (408) 873-0110/**Fax: (408) 873-0220**
**jbatchelder@daycasebeer.com**
**cmammen@daycasebeer.com**
**abier@daycasebeer.com**
**kleung@daycasebeer.com**
**lpatch@daycasebeer.com**

21

**Via UPS Overnight Mail**

22

Pursuant to the Joint Discovery Plan dated January 30, 2006 a courtesy copy of the document described above will be provided Via Facsimile

23

Executed on **December 8, 2006,** in San Diego, California.

24
25
26

_____
s/James S. McNeill
James S. McNeill

27
28

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 1958