1   ROBERT S. BREWER, JR. (SBN 65294)
    JAMES S. MCNEILL (SBN 201663)
2   MCKENNA LONG & ALDRIDGE LLP
    750 B Street, Suite 3300
3   San Diego, CA  92101
    Telephone:(619) 595-5400
4   Facsimile: (619) 595-5450

5   WILLIAM F. LEE (admitted *pro hac vice*)
    JOHN J. REGAN (admitted *pro hac vice*)
6   WILMER CUTLER PICKERING
      HALE AND DORR LLP
7   60 State Street
    Boston, MA 02109
8   Telephone:   (617) 526-6000
    Facsimile:   (617) 526-5000
9

10   MARK D. SELWYN
    WILMER CUTLER PICKERING
      HALE AND DORR LLP
11   1117 California Avenue
    Palo Alto, California 94304
12   Phone: (650) 858-6000
    Fax: (650) 858-6100
13

14   Attorneys for Defendant/Counterclaim Plaintiff
    BROADCOM CORPORATION

15           **UNITED STATES DISTRICT COURT**

16         **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| QUALCOMM INCORPORATED, | **[REDACTED PUBLIC VERSION]** |
| Plaintiff, | Case No.  05 CV 01958 B (BLM) |
| v. | **BROADCOM CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR AN AWARD OF ATTORNEYS' FEES** |
| BROADCOM CORPORATION, | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | Date:   June 25, 2007<br>Time:  9:00 a.m.<br>Ctrm:  2<br>Judge: Hon. Rudi M. Brewster |

*Contains Qualcomm Confidential Business*
*Information – Subject to Protective Order*

1    Qualcomm asserts that the attorney-client privilege precludes it from explaining its

2    conduct. (Opp. at 6 n.3)  Yet Qualcomm argues that its presentation of demonstrably incorrect

3    testimony and argument and its failure to produce more than 46,000[1] relevant and responsive

4    documents was an "oversight" that was "innocent and inadvertent," "not an uncommon event in

5    today's litigation," and the "natural product of ignorance." (Opp. at 1, 6, 14.)  But even a portion

6    of the chronology of Qualcomm's misconduct demonstrates that this was not an "innocent and

7    inadvertent" mistake:

8    • ***January 14, 2007*** – Qualcomm learns of at least twenty-one of the concealed emails while preparing Qualcomm JVT participant Viji Raveendran to testify.  Ms. Raveendran
9    received the emails from a JVT mailing list.  (Opp. at 9.)

10   • ***January 18, 2007*** – Qualcomm represents, in response to the Court's question, that there is no evidence that Ms. Raveendran received email from the JVT list.  (Ex. L at 92:6-8.)
11

12   • ***January 24, 2007*** – Qualcomm files its Motion for Judgment as a Matter of Law, claiming that "Broadcom failed to show . . . that Ms. Raveendran ever received a single email related to this [JVT] list." (Doc. No. 479, at 11:4-5.)
13

14   • ***January 24, 2007*** – Qualcomm calls Ms. Raveendran to testify about her lack of participation in the JVT, and asks her whether she ever sent email to the JVT mailing list and whether she "read mail that came back to" her from the mailing list, but does not ask
15   whether she received any email from the list.  (Ex. M at 46:14-18.)

16   • ***January 24, 2007*** – Ms. Raveendran admits on cross-examination that she had received the concealed emails.  (*Id.* at 53:14-17.)  Qualcomm produces twenty-one emails to
17   Broadcom over the lunch recess.

18   As this chronology shows, Qualcomm's claim that, as soon as it discovered the concealed

19   documents, it "immediately" apologized to the Court and "initiated an exhaustive search to

20   uncover every potentially relevant document" is false.  (Opp. at 1.)  Qualcomm knew of at least

21   the twenty-one concealed Raveendran emails no later than January 14. (*Id.* at 9.)  After it learned

22   of the emails, instead of producing them to Broadcom, Qualcomm claimed in oral and written

23   statements to the Court that no such emails existed, and scripted a direct examination of Ms.

24   Raveendran that implied (without actually stating) that no such emails existed.  It was only after

25   Ms. Raveendran conceded on cross-examination that she had received the emails, and Broadcom

26   demanded their production, that Qualcomm finally produced them.

27   _____

[1] At the time that Broadcom filed its motion for attorneys' fees, Qualcomm had produced 35,005 documents, totaling
28   226,638 pages.  Since then, Qualcomm has produced an additional 11,605 documents, bringing its post-trial
     production to date to 46,610 documents, totaling 332,101 pages.  Broadcom understands that Qualcomm has still not
     yet completed its review and production of documents.

1       Had Broadcom not asked Ms. Raveendran whether she "received" any emails from the

2  JVT email list, Qualcomm would never have produced any of the concealed documents.

3  Qualcomm admits that it intentionally chose not to produce the Raveendran emails because it

4  inexplicably "determined the emails were not responsive" – notwithstanding Broadcom's first set

5  of document requests (served on January 23, 2006) seeking, among other things, documents,

6  "concerning any Qualcomm membership, participation, interaction, and/or involvement in setting

7  any standard relating to the processing of digital video signals that pertains in any way to any

8  Qualcomm Patent." (Ex. B at 17.)  Qualcomm's conclusion that the emails were not responsive

9  could only have been reached under a "strained or unduly restrictive"[2] construction of

10  Broadcom's requests, not a good faith evaluation of responsiveness.[3]

11       Even after trial, Qualcomm persisted in its effort to avoid disclosure of these documents.

12  Qualcomm repeatedly resisted Broadcom's requests to search for and produce additional JVT-

13  related documents, claiming that "QUALCOMM disputes [Broadcom's] contentions that it had a

14  duty to produce the emails," and that "QUALCOMM has at all times conducted reasonably

15  diligent searches for all categories of documents that it has agreed to produce, including searches

16  of email archives reasonably likely to contain such documents." (Ex. Q.)  As late as March,

17  2007, Qualcomm resisted Broadcom's request that it search the archives of its JVT participants as

18  a "request for completely new and patently overbroad discovery." (Ex. Z.)  It was not until

19  Broadcom stated that it would go to the Court for an order that Qualcomm made its first

20  production of documents – and finally apologized to the Court. (Exs. DD-FF.)

21       Even now Qualcomm attempts to minimize its misconduct by arguing that "discovery

22  problems are not an uncommon event in today's litigation." (Opp. at 1.)  But this is not a case of

23  a simple failure to produce a few responsive documents.  This is a case in which a company

24  presented to the jury an argument that had no basis in fact, and withheld the many documents that

25  proved its argument was false.  This is not a harmless discovery mistake.  This is not how

---

27  [2] *Cf.* Ex. QQ, American College of Trial Lawyers Code of Pretrial Conduct § 5 ("A lawyer should respond to written discovery in a reasonable manner and should not interpret requests in a strained or unduly restrictive way in an effort to avoid responding to them or to conceal relevant, nonprivileged information.").

28  [3] Contrary to Qualcomm's claim (without citation), there was no applicable "negotiated and agreed upon narrowed scope of Broadcom's discovery requests." (Opp. at 9.)

1   responsible litigants conduct themselves.  And this is not the conduct that the integrity of our

2   judicial system demands.

3          Qualcomm ought be held accountable for this misconduct.  Accountability requires that

4   individuals and organizations be responsible for their actions, and be required to answer

5   completely for them.  Qualcomm – who voluntarily initiated this litigation – had an obligation to

6   comply with the rules governing litigation, including the duty to conduct a reasonable

7   investigation, the duty to comply with the discovery rules, and the duty to present only truthful

8   testimony and argument.  *See, e.g., A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189

9   (C.D. Cal. 2006) ("[A] party responding to a Rule 34 production request is under an affirmative

10  duty to seek that information reasonably available to it from its employees, agents, or others

11  subject to its control" (internal citations and quotation marks omitted)).

12         Qualcomm violated that duty.  Qualcomm's actions were serious transgressions that

13  undermined the integrity of the judicial process, and directly harmed Broadcom by forcing it

14  through the expense of a protracted trial on false facts.[4]  Because of Qualcomm's unfair and bad

15  faith litigation misconduct, Qualcomm should bear the responsibility "to compensate the

16  prevailing party for its monetary outlays" in defending the suit.  *Automated Business Cos. v. NEC*

17  *America, Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000).

18                                   **ARGUMENT**

19  I.   **QUALCOMM'S MISCONDUCT WAS INTENTIONAL AND IN BAD FAITH.**

20         Qualcomm wrongly suggests that its failure to produce the JVT documents and its

21  presentation of false testimony and argument were "innocent and inadvertent."  The

22  circumstances of Qualcomm's misconduct show a failure to recognize and abide by the duty to

23  conduct a reasonable investigation, combined with an intentional and bad-faith cover-up when its

24  discovery failures were revealed.

25       A.  **Qualcomm Did Not "Immediately" or "Voluntarily" Produce the Documents.**

26         Qualcomm learned of at least twenty-one JVT-related emails no later than January 14,

27  2007.  But even after it learned that Ms. Raveendran had JVT-related emails in her email archive,

28  _____
[4] Qualcomm admits that it bore none of the risk or expense of the litigation: "There certainly was a significant upside
potential for us, but it was all upside, no downside . . . . For Broadcom, it was all downside, no upside."  (Ex. O.)

*Contains Qualcomm Confidential Business*
*Information – Subject to Protective Order*          - 3 -                              05 CV 1958

1    Qualcomm did not perform any other searches on Ms. Raveendran's archive and did not contact

2    any other Qualcomm employees to determine whether they also kept email archives. (Ex. P.)

3            Instead, Qualcomm expressly and falsely represented to the Court that no such emails

4    existed. (Ex. L, at 92:6-8; Doc. No. 479, at 11:4-5.)  Qualcomm now claims that "[t]here is no

5    indication that, at the time [Qualcomm] asserted [its JVT participation] theory, counsel knew the

6    true facts about QUALCOMM's monitoring of JVT activities and its presence at some of those

7    meetings." (Opp. at 14.)  That is not true:  Qualcomm admittedly learned of the emails from the

8    JVT email reflector to Ms. Raveendran *by January 14*, but it still pursued its "no participation"

9    theory in its motion for judgment as a matter of law, in its closing argument, and at the post-trial

10   hearing on Broadcom's waiver defense. (Doc. No. 479, at 11:4-5; Ex. N, at 125:18-20.)

11           Qualcomm's represents that "once [it] became aware of the scope of the problem, it

12   voluntarily expanded the search of potential custodians beyond what Broadcom requested."

13   (Opp. at 16.)  That is not true either.  Broadcom requested on March 5, 2007, that Qualcomm

14   search the email archives of all Qualcomm employees involved in video compression. (Ex. S.)

15   Qualcomm refused and instead limited its searches to five employees of its choosing. (Ex. Z.)

16   Only on April 25, 2007 – *after* Broadcom told Qualcomm that it intended to file motions for fees

17   and sanctions – did Qualcomm finally agree to search the archives of all of its video standard-

18   setting employees, as Broadcom had originally requested. (Ex. HH.)  That is hardly "voluntary."

19       B. **Qualcomm's Misconduct Is Not an Isolated Event.**

20           Qualcomm seeks to minimize its discovery misconduct by arguing that it is an isolated

21   event, "not representative of QUALCOMM's conduct in discovery." (Opp. at 10.)  But the facts

22   show that Qualcomm's discovery misconduct is systemic.  First, Qualcomm has admitted that,

23   during discovery in this matter, Qualcomm did not search the local email archives of *any* of its

24   employees. (Ex. P.)  Email archives are a well-known source of discoverable documents. *See,*

25   *e.g.*, *Metro Wastewater Recl. Dist. v. Alfa Laval, Inc.*, 2007 WL 1160012 (D. Colo. Apr. 19,

26   2007).  Qualcomm's failure to conduct this basic search for *any* of its employees is inexcusable.

27           Second, as Qualcomm revealed for the first time last week, its discovery failures were not

28   limited to email.  It also failed to produce hard-copy documents from sixteen Qualcomm

*Contains Qualcomm Confidential Business*
*Information – Subject to Protective Order*          - 4 -                              05 CV 1958

1  employees, many of whom participated in the H.264 standard-setting process.  (Ex. II.)[5]

2  Finally, Qualcomm continues its pattern of attacking Broadcom's integrity and motives.

3  Qualcomm suggests that Broadcom's motions "are largely driven by Broadcom's strategic

4  objectives in . . . related litigation" and seek "to advance a broader agenda."  (Opp. at 4, 15.)  But

5  in every case that has gone to trial, it is Qualcomm – not Broadcom – that has been found to be at

6  fault:  a jury in the Central District of California found that Qualcomm willfully infringed three

7  Broadcom patents; the International Trade Commission found that Qualcomm infringed a fourth

8  Broadcom patent; and, in this case, the jury found that Broadcom did not infringe Qualcomm's

9  patents, and the Court found that Qualcomm's JVT misconduct resulted in waiver.

10  **C.  Qualcomm's Explanations for Its Witnesses' Testimony Are Not Credible.**

11  Qualcomm implausibly seeks to excuse the demonstrably false testimony of its employees

12  by asserting:  (1) Broadcom's theory of JVT-related waiver was "not yet in the case" when the

13  witnesses gave their false testimony; (2) the witnesses offering false testimony were "first-time

14  witnesses"; and (3) the witnesses did not have "the benefit of any documents to refresh their

15  recollections."  (Opp. at 4, 11.)  None of these excuses is valid.

16  First, even if Qualcomm had not appreciated the impact of Broadcom's waiver theory

17  when its witnesses testified, that lack of understanding does not justify its witnesses testifying

18  falsely.  Contrary to Qualcomm's claim, Broadcom did put Qualcomm's participation in the JVT

19  at issue early in this litigation, well before September 2006.  Broadcom's first set of

20  interrogatories – served on January 23, 2006, *six months before the depositions of Ms. Irvine*

21  *and Ms. Raveendran* – expressly asked Qualcomm to "identify and describe in detail

22  Qualcomm's membership, participation, interaction, and/or involvement in setting any standard

23  related to the processing of digital video signals that pertains in any way to any Qualcomm

24  Patent."  (Ex. C at 15.)  The topics on which Ms. Irvine was offered as Qualcomm's 30(b)(6)

25  witness included "[t]he attendance or participation by any Qualcomm principal, employee, or

26  representative at any H.264 standards committee meetings."  (Ex. D.)  In addition, Broadcom

27  submitted an expert report explaining its waiver theory on August 10, 2006 – and Qualcomm's

---

[5] Qualcomm's untimely production of documents in violation of discovery obligations is not limited to this litigation. For additional examples from other litigation, see Exhibits R, T-Y, and AA-DD.

1    expert submitted a detailed rebuttal report on September 1, 2006.  (Exs. G, I.)  Broadcom's

2    waiver theory clearly was in the case throughout discovery.

3              Second, Qualcomm suggests, as if relevant, that Ms. Raveendran and Ms. Irvine "were

4    first-time witnesses with no previous deposition experience."  (Opp. at 11.)

5    

6                                    It is insulting to the judicial process to suggest that there is a "free pass" to

7    give false testimony the first time a person is a witness.

8              Third, Qualcomm's claim that "[n]either had the benefit of any documents to refresh their

9    recollections on the matters for which they have now been accused of falsely testifying" is both

10   ironic and untrue.  (Opp. at 11.)  It is ironic because it is Qualcomm's failure to produce these

11   documents that deprived them of documents to refresh their recollection.  It is untrue because,



20             Next, Qualcomm seeks to excuse the false testimony of Ms. Irvine, its 30(b)(6) witness,

21   on the ground that "Broadcom asked QUALCOMM to cure its deficiency by producing another

22   Rule 30(b)(6) witness, which QUALCOMM did."  (Opp. at 12.)  But Qualcomm's replacement

23   witness *also* offered false testimony,

27             Finally, Qualcomm's claim that the testimony of its employees was nothing "other than an

28   innocent failure of memory on the deponent's part" is belied by the quantity and significance of

1   the late-produced documents.  (Opp. at 11.)



7     In sum, the most "rational explanation" for the false testimony is not, as Qualcomm

8   contends, "an innocent failure of memory."  (Opp. at 11.)  The Court should infer that

9   Qualcomm's employees gave false testimony in an attempt to hide its involvement in the JVT.

10  **D.  <u>Qualcomm Cannot Claim Its Counsel Acted "in Good Faith" while Hiding Behind
    the Attorney-Client Privilege.</u>**

11    Qualcomm repeatedly claims in its brief that its attorneys acted in good faith in the

12  collection and production of documents, and in the presentation of arguments and testimony.

13  (Opp. at 3, 6, 9.)  By making these claims, Qualcomm necessarily puts the conduct and intent of

14  its attorneys at issue.  Yet Qualcomm has provided no declaration, testimony, or other evidence of

15  its attorneys' good faith.  Instead, it has asserted the attorney-client privilege:  "The

16  circumstances surrounding the failure to produce discoverable documents necessarily implicate

17  attorney-client communications, and QUALCOMM is unable to explain these circumstances

18  without compromising the attorney-client privilege."  (Opp. at 6, n.3.)

19    But it is settled that Qualcomm cannot claim that its attorneys acted in good faith, then

20  hide behind the attorney-client privilege to prevent Broadcom from challenging that assertion.

21  "The attorney-client privilege was intended as a shield, not as a sword. . . .  [T]his means that

22  parties in litigation may not abuse the privilege by asserting claims the opposing party cannot

23  adequately dispute unless it has access to the privileged materials."  *Bittaker v. Woodford*, 331

24  F.3d 715, 719 (9th Cir. 2003).  By asserting that its attorneys acted in good faith, Qualcomm has

25  waived the attorney-client privilege because "under Federal common law, a litigant waives the

26  attorney-client privilege by putting the lawyer's performance at issue."  *Hamilton v. Willms*, 02-

27  ⁶ _____

28  ███████████████████████████████████████████

1   CV-6583, 2007 WL 707518, at *8 (E.D. Cal. Mar. 6, 2007).

2          Qualcomm also claims that "[t]he circumstances suggest that QUALCOMM and its

3   attorneys are not hiding acts of misconduct behind the attorney-client privilege," citing

4   Qualcomm's contributions to the community and the high caliber of its outside counsel.  (Opp. at

5   15.)  But whatever may be Qualcomm's reputation, it does not excuse its pattern of discovery

6   misconduct or immunize it from scrutiny.

7       E.  **The Concealed Documents Show Precisely What Qualcomm Claims They Do Not.**

8          Finally, Qualcomm seeks to minimize the importance of the concealed documents, by

9   claiming that the documents actually would have strengthened Qualcomm's waiver defense if

10  Qualcomm had located and produced them.[7]  (Opp. at 8.)  They do not.  Instead, their production

11  would have been devastating to the waiver defense – which is why Qualcomm's lead counsel and

12  General Counsel apologized to the Court and explained that the documents "appear to be

13  inconsistent with arguments that [Qualcomm] made at trial."  (Ex. FF.)

14         Qualcomm first argues that "[t]he newly discovered documents do not show efforts to

15  influence the developing H.264 standard before it was 'fixed' in December 2002 or adopted in

16  2003."  (Opp. at 7.)  This is not true.

17

18

19                                                          Thus, Qualcomm's assertion in its

20  opposition brief that the documents "do not suggest that QUALCOMM was 'participating' in the

21  JVT in the sense of actively trying to influence the developing standard before it was fixed in

22  December 2002" is squarely contradicted by the concealed documents.  (Opp. at 7.)

23         Qualcomm likewise claims that the concealed documents prove that Qualcomm was not

24  "'lying in the weeds' and scheming to avoid disclosing its IPR to the JVT" because, Qualcomm

25  now argues,                                                        (Opp. at 8.)

26  But the concealed documents show that

27  _____
    [7] Qualcomm has also tried to minimize the significance of the number of withheld documents by claiming that "over
    one-third were duplicates," and that Broadcom only cited 130 of the documents in its briefs.  (See Opp. at 8 n.6; Ex.
    RR.)  Broadcom cited and provided to the Court only a subset of the large number of relevant concealed documents,
28  so as not to overburden the Court with documents; many more than 130 documents were relevant.  Surely Qualcomm
    is not suggesting that failing to produce "only" 130 important documents is not misconduct.

*Contains Qualcomm Confidential Business
Information – Subject to Protective Order*                  - 8 -                          05 CV 1958



1
2
3
4
5
6 Qualcomm's attempts to minimize the significance of the concealed documents is
7 illustrative of its lack of respect for its discovery obligations.
8
9
10
11
12
13
14
15
16 Qualcomm's narrow view of its own discovery
17 obligations is not consistent with the obligations imposed by the Federal Rules, and reveals a
18 broad pattern of discovery misconduct.
19 II. **QUALCOMM'S EFFORTS TO ASSERT WAIVED PATENT RIGHTS – COMBINED
20 WITH ITS DISCOVERY MISCONDUCT – MAKE THIS AN EXCEPTIONAL CASE.**
21 Qualcomm misleadingly claims that Broadcom is seeking "an exceptional case finding
22 [8]
23
24 [9] Qualcomm also claims that "the JVT's paramount interest was not in designing around or avoiding patented
technology, but in obtaining FRAND [Fair, Reasonable, and Non-Discriminatory] licensing commitments." (Opp. at
25 21 n.15.) To the contrary,
26
27 [10]
28

1    merely because it prevailed on an affirmative defense." (Opp. at 17.)  Rather, it is Qualcomm's

2    assertion of patents for which it had waived the right to enforce, **combined** with its bad faith

3    litigation misconduct, that makes this case exceptional.  *See, Sensonics, Inc. v. Aerosonic Corp.*,

4    81 F.3d 1566, 1574 (Fed. Cir. 1996) ("Litigation misconduct and unprofessional behavior are

5    relevant to the award of attorney fees, and may suffice to make a case exceptional . . . .").

6           Qualcomm claims that Broadcom has put forth a "strained analogy between the Court's

7    waiver finding and a determination of inequitable conduct." (Opp. at 19.)  But Qualcomm

8    ignores the fact that, earlier in the case, it successfully argued that a finding of waiver by

9    nondisclosure to a standard-setting body was analogous to a finding of inequitable conduct:

10           Broadcom alleges that the patents in suit are unenforceable, not just against
             Broadcom, but against the world.  The Court should not allow such a challenge to
11           a patent right to be decided on less than the same clear and convincing evidence
             standard that exists in the case of validity **and inequitable conduct**.

12    (Doc. No. 477, at 2.)  On the basis of its analogy between waiver and inequitable conduct,

13    Qualcomm successfully obtained a jury instruction requiring Broadcom to prove Qualcomm's

14    waiver by clear and convincing evidence.  Now that Broadcom has met that high burden of proof,

15    Qualcomm should not be permitted to reverse its position.  (Opp. at 2, 19.)

16           Qualcomm itself acknowledged that waiver is only found in "exceptional" cases:

17           Unlike the affirmative defenses of estoppel and laches, courts and well known
             legal treatises have consistently held that **waiver is disfavored and should be**
18           **found only in exceptional circumstances**.

19    (Doc. No. 477, at 1 (citing 31 C.J.S. Estoppel and Waiver § 67 ("Waiver of rights is a serious

20    matter; it is not generally presumed and is of the strictest application.  Thus, a waiver is not

21    favored and should be found only in exceptional circumstances").)  As Qualcomm previously

22    recognized, the Court's and the jury's finding of waiver renders this an "exceptional" case.

23                                          **CONCLUSION**

24           For the foregoing reasons, and for the reasons stated in Broadcom's opening

25    memorandum, Broadcom respectfully requests that the Court grant Broadcom's motion.

26    Dated:     June 19, 2007          MCKENNA LONG & ALDRIDGE LLP

27                                      WILMER CUTLER PICKERING HALE AND DORR LLP

28                                      By: _____
                                            Attorneys for Broadcom Corporation