1    WILLIAM S. BOGGS (Bar No. 053013)
     BRIAN A. FOSTER (Bar No. 110413)
2    TIMOTHY S. BLACKFORD (Bar No. 190900)
     CHRISTOPHER J. BEAL (Bar No. 215679)
3    **DLA PIPER US LLP**
     401 B Street, Suite 1700
4    San Diego, CA  92101-4297
     Telephone:  (619) 699-2700
5    Facsimile:  (619) 699-2701

6    Attorneys for Plaintiff and Counterdefendant
     QUALCOMM INCORPORATED
7

8                    UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10   QUALCOMM INCORPORATED,              05 CV 1958 B (BLM)

11              Plaintiff,               **QUALCOMM INCORPORATED'S
                                         MEMORANDUM OF POINTS AND
12        v.                             AUTHORITIES IN OPPOSITION TO
                                         BROADCOM CORPORATION'S MOTION
13   BROADCOM CORPORATION,               FOR SANCTIONS**

14              Defendant.               **[REDACTED PUBLIC VERSION]**

15   ─────────────────────────          Date:    July 10, 2007
     BROADCOM CORPORATION,               Time:    10:30 a.m.
16                                       Ctrm:    2
                Counterclaimant,         Judge:   Hon. Barbara L. Major
17        v.

18   QUALCOMM INCORPORATED,

19              Counterdefendant.

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
  SAN DIEGO        GT\6536295.1                              05 CV 1958 B(BLM)

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. PROCEDURAL BACKGROUND ........................................................................2

III. BROADCOM AND THE COURT WERE NOT "FORCED TO ENDURE THE TIME AND EXPENSE OF A TRIAL" BECAUSE THE DOCUMENTS PRODUCED AFTER TRIAL WOULD NOT HAVE ENTITLED BROADCOM TO SUMMARY JUDGMENT ...............................................................................5

    A. Nothing in the Documents Produced After Trial Would Have Made QUALCOMM's Motion for Summary Judgment Frivolous ....................5

    B. Even with the Documents Produced After Trial, Broadcom Could Not Have Obtained a Summary Judgment on Its Affirmative Defense of Waiver, as Numerous Issues of Material Fact Required a Trial. ............6

    C. Nothing in the Newly-Produced Documents Shows That QUALCOMM's Infringement Action Was Frivolous or Brought in Bad Faith .................8

IV. IN ITS ZEAL TO PORTRAY QUALCOMM AND ITS ATTORNEYS AS UNTRUTHFUL, BROADCOM OVERSTATES THE INACCURACY OF WITNESS TESTIMONY AND ARGUMENTS BY COUNSEL ..................10

V. THERE IS NO EVIDENCE QUALCOMM AND ITS ATTORNEYS INTENDED TO MISLEAD THE COURT REGARDING THE NATURE AND EXTENT OF QUALCOMM'S INVOLVEMENT WITH THE JVT ..................................13

    A. Although QUALCOMM's Counsel Understated the Extent of QUALCOMM's Involvement in the JVT, There Is No Evidence They Took That Position in Bad Faith .................................................................13

    B. The Circumstances Surrounding the Discovery of the 21 Emails at Trial Do Not Establish Bad Faith or Intentional Misconduct by Counsel ...........14

    C. Broadcom Overreaches in Accusing QUALCOMM's Witnesses of Intentional Falsehoods Because Any Errors in Their Testimony Were the Product of Honest Misrecollection and Not an Intent to Deceive the Court .........15

    D. Conclusion: ..............................................................................................18

VI. LACKING EVIDENCE OR ANALYSIS THAT COULD REASONABLY LEAD TO A CONCLUSION THAT QUALCOMM INTENTIONALLY ENGAGED IN DISCOVERY ABUSE, BROADCOM INSTEAD RESORTS TO INFLAMMATORY RHETORIC AND MISLEADING ASSERTIONS ..................19

VII. BROADCOM PRESENTS NO CREDIBLE JUSTIFICATION FOR ITS REQUEST FOR BROAD, UNPRECEDENTED SANCTIONS ....................20

VIII. CONCLUSION.....................................................................................................25

DLA PIPER US LLP
SAN DIEGO

GT\6536295.1

-i-

## I.   INTRODUCTION

Broadcom would have this Court believe that what has occurred in this case is about intentional misconduct that goes far beyond a failure to produce documents.  Notwithstanding its inflammatory rhetoric, Broadcom is dead wrong.  What has occurred in this case is entirely about a failure to collect and produce discoverable documents, and how that failure led to certain inaccuracies in the testimony of some witnesses and some arguments by counsel.

QUALCOMM and its attorneys admittedly did not collect and produce a significant number of discoverable documents.  But QUALCOMM and its counsel have apologized, and have initiated an exhaustive search to uncover every potentially relevant document.  Unfortunately, discovery problems are not an uncommon event in today's litigation where millions of pages of electronic documents are regularly sought and produced.  Indeed, in this case alone, QUALCOMM did produce prior to trial over 2.1 million pages of documents before trial.  QUALCOMM's late production of documents may be noteworthy because it occurred after trial, but it is not indicative of an effort to deceive Broadcom or the Court.

Broadcom contends QUALCOMM engaged in "pervasive" efforts throughout the course of this litigation to "obstruct the production of documents" and to "present false testimony . . . and false argument by counsel."  But in its most recent brief submitted to Judge Brewster on June 19, 2007, Broadcom recognizes that QUALCOMM's failure to produce certain documents during discovery was actually the result of "a failure to recognize and abide by the duty to conduct a reasonable investigation," and not from some intentional obstruction or concealment.  QUALCOMM and its attorneys deny they failed to recognize or abide by any duty, but nevertheless acknowledge they did not collect and produce certain documents.

While long on rhetoric, Broadcom is short on evidence of intentional misconduct by QUALCOMM or its counsel.  Broadcom therefore resorts to mischaracterizing the newly-produced documents and their significance.  For instance, Broadcom asserts that if it had the new documents, it would have obtained summary judgment and avoided a trial.  Broadcom turns a blind eye to the numerous triable issues of fact that would have remained unaffected by the newly-produced documents, and which would have required a trial.  QUALCOMM's

1   infringement claims were not frivolous, the trial was not unnecessary, and—contrary to

2   Broadcom's contentions—QUALCOMM did not inflict harm on the Court or the "public trust in

3   the administration of justice." Nor did QUALCOMM's discovery lapse prejudice Broadcom at

4   trial, since it won the case anyway.

5   QUALCOMM acknowledges that it should be held accountable for its failure to collect

6   and produce the newly-discovered documents. But it should not be held accountable for what it

7   did not do—engage in pervasive efforts to conceal evidence, suborn perjury, and mislead the

8   Court. Broadcom seeks sanctions that are disproportionate, unprecedented and unjust. In

9   particular, in light of the ongoing litigation between the parties, Broadcom's request for leave to

10  conduct an invasive investigation of its litigation adversary and its counsel is highly suspect.

11  Contrary to Broadcom's assertions, there is no evidence of a systemic problem, active

12  concealment, or withholding of known documents. QUALCOMM's post-trial production may be

13  notable for its volume, but it is not notable for any indication of intentional misconduct by

14  QUALCOMM or its counsel. These facts may support an appropriate and reasonable monetary

15  sanction proportionate to Broadcom's additional legal expenses attributable to the untimely

16  production, but they do not support the wide-ranging and unprecedented sanctions requested by

17  Broadcom here.

18  **II.    PROCEDURAL BACKGROUND**

19  On October 14, 2005, QUALCOMM filed this lawsuit claiming that Broadcom infringed

20  two of its patents. These were known as the '767 and the '104 patents, and they related to video

21  compression technology. QUALCOMM alleged that Broadcom infringed these patents with

22  technology incorporated into its chips designed for cable and satellite set top boxes, multimedia

23  chips for cell phones, and other products.

24  As to one of its claims of infringement, claim 59 of the '104 patent, QUALCOMM

25  asserted its technology was incorporated into a video compression standard known as H.264, and

26  that Broadcom necessarily infringed claim 59 by practicing the H.264 standard in its video

27  compression products. QUALCOMM asserted different grounds for its infringement claims as to

28  the '767 patent and the other claims in the '104 patent. It also asserted an alternative basis for its

1    infringement claim as to claim 59 of the '104 patent.

2         Broadcom asserted at trial that QUALCOMM waived its infringement claims against

3    Broadcom by failing to satisfy certain patent disclosure rules for the Joint Video Team ("JVT"), a

4    technology standards-setting organization.  The JVT was a project created by its two parent

5    organizations to settle on a new video compression standard, and it created the H.264 standard.

6         In its initial and amended answers,  Broadcom pleaded an affirmative defense that

7    QUALCOMM's patents were unenforceable "because of laches, waiver, or other applicable

8    equitable defenses."  (Dkt. Nos. 10 and 370 at ¶ 19.)  While Broadcom did not allege any specific

9    facts to support a waiver, it has acknowledged that it based its original waiver defense theory on

10   QUALCOMM's alleged delay in pursuing its infringement claims against Broadcom.  (Beal Decl.

11   Ex. A, 78:20-25; 79:11-18, Dec. 5, 2006 Sum. Judg. Hearing Tr.)

12        In September 2006—after the close of discovery—Broadcom amended its responses to

13   interrogatories.  It contended for the first time that QUALCOMM failed to timely disclose the

14   patents-in-suit to the JVT, and was therefore barred from asserting its patents against Broadcom

15   by the doctrines of equitable estoppel, common law fraud, unclean hands, and breach of contract:

> 16   Broadcom states that Qualcomm and/or its employees or agents
> 17   were members of the Joint Video Team (JVT), the International
>      Telecommunications Union (ITU), and/or the International
> 18   Organization for Standardization/International Electrotechnical
>      Commission (ISO/IEC).  Broadcom further states that Qualcomm
> 19   and/or its employees or agents participated in the standard-setting
>      process of the JVT, beginning in at least as early December 2002.
> 20   Broadcom contends that, as a result of its membership and/or
>      participation in the JVT, ITU, and ISO/IEC, Qualcomm had an
> 21   obligation to disclose the patents-in-suit to the JVT, ITU, and
>      ISO/IEC prior to October 14, 2005, and that Qualcomm did not do
> 22   so.

23   (Beal Decl. Ex. B, 9:22-10:2, Broadcom's Third Supplemental Responses to Interrogatories.)

24        Until it served its post-discovery amended interrogatory response, Broadcom had never

25   asserted any theory that QUALCOMM could not enforce its patents based on a purported failure

26   to disclose its patents to the JVT.  Thus, when Broadcom took the depositions in July and August

27   2006 of QUALCOMM employees Viji Raveendran, James Determan and Chris Irvine—people

28   whom Broadcom now claims testified falsely regarding QUALCOMM's JVT involvement—

1   Broadcom's later-raised theory of JVT-related waiver, and QUALCOMM's contention it was not

2   involved in the early years of the JVT, were not yet in the case.

3       As the trial came to a conclusion, while Ms. Raveendran was testifying as a rebuttal

4   witness, Broadcom learned of the existence of 21 emails QUALCOMM had not previously

5   produced.  Broadcom demanded and was promptly given the 21 emails.  Broadcom further cross-

6   examined Ms. Raveendran regarding the emails, and it argued the late production of the emails

7   during its closing.  Thereafter, Broadcom learned from QUALCOMM that QUALCOMM and its

8   attorneys had failed to search for certain documents related to QUALCOMM's involvement with

9   the JVT.   Broadcom requested that QUALCOMM search various email archives using certain

10   broad search terms.  Since Broadcom's request, QUALCOMM has undertaken an exhaustive

11   investigation to locate and produce those documents.[1]

12       In addition to this motion asking for the imposition of broad and unprecedented discovery

13   sanctions, Broadcom has filed a separate motion with Judge Brewster seeking an exceptional case

14   determination under 35 U.S.C. § 285, which is set for hearing on June 25, 2007.  That motion

15   asks the Court to award Broadcom all of its attorneys fees in this action, based on the same facts

16   as this motion.  QUALCOMM has advised Judge Brewster that Broadcom's Motion for

17   Attorneys' Fees is based upon the same facts as Broadcom's Motion for Sanctions, and has

18   suggested to Judge Brewster that the Court consider ways to achieve consistency and judicial

19   efficiency in the disposition of all of Broadcom's motions.  For example, the issue of whether

20   summary judgment would have been granted is an issue more appropriate for determination by

21   Judge Brewster, who presided over the summary judgment hearing and trial.  To avoid potential

22   inconsistency and achieve judicial efficiency, this Court may wish to postpone the hearing on

23   Broadcom's Motion for Sanctions until the Court and the parties have received Judge Brewster's

24   [1] Broadcom has asserted in related briefs submitted to Judge Brewster that "Qualcomm repeatedly resisted
25   Broadcom's request to search for and produce additional JVT-related documents." (Beal Decl. Ex. K at 2:12-13, Broadcom's Reply in Support of Motion for Attorney Fees.) But Broadcom's own exhibits tell a different story.
Broadcom's written request that QUALCOMM search for additional documents was made on March 5, 2007, and
26   QUALCOMM agreed to do so in writing two days later, on March 7, 2007. (Saxton Decl. Ex. F & G.)  Broadcom
also disputes that QUALCOMM conducted searches beyond those requested by Broadcom. Again, Broadcom is
27   simply wrong. QUALCOMM has now searched the files of 29 document custodians. Of these, fewer than 10 were
"involved in any way in standard-setting for video compression," which is the search Broadcom requested. (Saxton
28   Decl. Ex. F.)

1    rulings on Broadcom's Motion for Attorneys' Fees.

2         As the Court may be aware, Broadcom has pursued broad-based litigation against

3    QUALCOMM on state, federal, and international fronts.  In the latest chapter, Broadcom has

4    filed an action in Orange County Superior Court that, at least in part, focuses on the very same

5    JVT conduct at issue in this case.[2]  This Court should weigh Broadcom's accusations regarding

6    purported bad acts and false testimony in light of this larger litigation context.  QUALCOMM

7    believes that this motion and the wide-ranging sanctions it seeks are largely driven by

8    Broadcom's strategic objectives in this related litigation.

9    **III.    BROADCOM AND THE COURT WERE NOT "FORCED TO ENDURE THE**

10   **TIME AND EXPENSE OF A TRIAL" BECAUSE THE DOCUMENTS PRODUCED**

11   **AFTER TRIAL WOULD NOT HAVE ENTITLED BROADCOM TO SUMMARY**

12   **JUDGMENT**

13        Broadcom erroneously claims the Court and Broadcom have been harmed by

14   QUALCOMM's failure to produce discoverable documents because they were "forced" to bear

15   the time and expense of a jury trial.  Broadcom argues it would somehow have been "entitled" to

16   summary judgment if QUALCOMM had produced the newly-discovered documents during

17   discovery.  (Brief at 1:14-16; 13:9-17, 20-23; 19:27-20:5.)  These assertions lack substance, as

18   there is nothing in the documents QUALCOMM produced after trial that would have obviated the

19   need for a trial.

20        **A.    Nothing in the Documents Produced After Trial Would Have Made**

21   **QUALCOMM's Motion for Summary Judgment Frivolous.**

22        Following the close of discovery, QUALCOMM brought a motion for summary

23   adjudication, seeking to have adjudicated certain of Broadcom's equitable and legal defenses.

24   Broadcom erroneously contends the newly-discovered documents show QUALCOMM brought

25   its motion in bad faith.  This contention is frivolous.

26        First, QUALCOMM prevailed on its motion as to a number of Broadcom's defenses

27   _____

28   [2] The case is *Broadcom v. QUALCOMM,* Orange County Superior Court, Case No. 07 CC 01249.

1    (equitable estoppel, implied license, fraud, unclean hands and breach of contract), and Broadcom

2    makes no suggestion that this result would have been affected by the newly-produced documents.

3    (Beal Decl. Ex. C, Qualcomm Motion for Sum. Adj.)   QUALCOMM prevailed on its motion on

4    the ground that Broadcom failed to timely and fully plead these defenses. [3]   (Beal Decl. Ex. A,

5    208:13-19, 209:24-210:2, Dec. 5, 2006 Sum. Judg. Hearing Tr.)   This result had nothing to do

6    with the facts concerning QUALCOMM's involvement with JVT prior to the adoption of the

7    H.264 standard, and the newly-discovered documents would not have changed this outcome.

8            Second, the documents produced after trial would have, at most, undercut one of the

9    grounds for QUALCOMM's motion for summary adjudication of Broadcom's affirmative

10   defense of waiver.  Among other points, QUALCOMM argued as a basis for its motion that

11   because it submitted no technical proposal to the JVT before the H.264 standard was published

12   and adopted in 2003, QUALCOMM had no duty under the JVT's written rules to identify its

13   patents-in-suit to the JVT.  (Id. at 25:21-26:9, 28:23-29:23.)  Broadcom, on the other hand, argued

14   that the *conduct* of the JVT participants imposed additional mandatory duties of disclosure,

15   outside and beyond JVT's written rules.  The Court ultimately concluded there existed a triable

16   issue of fact as to the scope of QUALCOMM's duties to disclose its IPR, and it denied

17   QUALCOMM's motion as to Broadcom's affirmative defense of waiver.  But there is nothing in

18   the documents produced after trial that bear on that issue of fact, i.e., whether the JVT members

19   treated the JVT rules as imposing a mandatory duty for disclosing IPR.  Broadcom's argument

20   that QUALCOMM's motion was made in bad faith is simply wrong.

21           **B.      Even with the Documents Produced After Trial, Broadcom Could Not Have**

22   **Obtained a Summary Judgment on Its Affirmative Defense of Waiver, as Numerous Issues**

23   **of Material Fact Required a Trial.**

24           Not only does Broadcom argue QUALCOMM should not have brought its own motion

25   (upon which QUALCOMM largely prevailed), Broadcom argues it would have brought and won

26   _____

27   [3] Broadcom's late introduction of these affirmative defenses through supplemental discovery responses ran afoul of the Court's Case Management Conference Order, which imposed a much earlier March 20, 2006 deadline for

28   amending the pleadings.

1   its own summary judgment motion on its waiver defense if it had the newly-discovered

2   documents. But Broadcom offers no analysis for this conclusory contention.

3          As Judge Brewster instructed the jury, and as the Court's Order reflects, Broadcom's

4   waiver defense required that it prove by clear and convincing evidence that "Qualcomm, with full

5   knowledge of the material facts, intentionally relinquished its rights to enforce the 104 and 767

6   patents." (Saxton Decl. Ex. C at 17:3-6; March 21, 2007 Order (the "Order").) As the Order

7   makes clear, this required a trial on various factual issues, which included the following:

8   •   Whether the participants in JVT "as a whole consider[ed] the standards setting body to

9        impose such a duty [to disclose relevant patents], even if the duty to disclose is not

10       expressly stated in the written policies of the standards setting body." (Order at 17:8-10.)

11  •   Whether "Qualcomm had knowledge that the '104 and '767 patents may reasonably be

12       essential to the practice of the H.264 standard while it was a member of the JVT" (Order

13       at 27:18-20.)

14         As to the first issue, the Court acknowledged the written rules require disclosure only

15  upon submission of a technical proposal: "the JVT IPR Policy and Guidelines provide no express

16  requirement to disclose patents unless a member submits a technical proposal." (Order at 17:24-

17  25.) Broadcom argued at the summary judgment hearing that there was a triable issue of fact

18  whether a duty of disclosure exists beyond the written rules.

19              MR. REGAN: But whether there is or isn't a duty
                in this case, given the fact that it's based on conducts [sic] of
20              the standard-setting organizations, underlying that is a
                factual question. All the things we've been talking about
21              here for several hours, those are facts. Those facts have
                to be evaluated, and then a conclusion has to be reached
22              about whether there's a duty or not.

23  (Beal Decl. Ex. A, 129:24-130:5, Dec. 5, 2006 Sum. Judg. Hearing Tr.) The Court agreed.

24  Contrary to Broadcom's suggestion now, there is nothing in the newly-discovered documents that

25  would have obviated the need for a trial on whether "JVT members treated the JVT IPR Policy as

26  imposing a duty of disclosure." (Order at 20:25-26.)

27         Similarly, the newly-discovered documents do not dispose of the second triable issue of

28  fact:  whether QUALCOMM believed it had IPR that may reasonably be necessary to practice the

1  standard.  In fact, as Broadcom notes elsewhere, around the time the H.264 standard was finalized

2  and adopted, QUALCOMM's engineers stated either that H.264 *was not* infringing

3  QUALCOMM's patents or that QUALCOMM *had no IPR* in any of the video codecs.  (See

4  Saxton Decl. Ex. A, Tab 102 ["didn't we kind of conclude that they are not infringing our

5  ABSDCT"] and 123 ["We have no IPR in any of the video codecs."].)  Thus, even with the new

6  documents, there remained a triable issue of fact whether QUALCOMM was aware it had any

7  IPR arguably necessary to practice the evolving H.264 standard, and therefore whether it had any

8  disclosure obligation to the JVT.

9      **C.    Nothing in the Newly-Produced Documents Shows That QUALCOMM's**

10  **Infringement Action Was Frivolous or Brought in Bad Faith**

11      Broadcom contends that QUALCOMM's infringement claim was frivolous, and that with

12  access to the documents produced after trial, Broadcom could have brought and been successful

13  on a summary judgment motion as to this claim.  But Broadcom's own moving papers put the lie

14  to that contention.  When Broadcom argues the infringement claim was frivolous, it asserts that

15  "Qualcomm's most senior employees knew . . . of the *inapplicability* of the patents-in-suit to the

16  standard."  (Brief at 13:14-16.)  On the other hand, when Broadcom argues for the existence of a

17  duty of disclosure, it asserts that the patents-in-suit *were* related to the standard, and that

18  numerous QUALCOMM employees (including the very same "most senior employees") were

19  aware of it.  (Brief at 10:15-19.)  Broadcom cannot have it both ways—at worst, Broadcom's own

20  citations establish the existence of a triable issue of fact regarding infringement.

21      Broadcom's contention that QUALCOMM's infringement action was "meritless" because

22  some QUALCOMM engineers concluded in 2003 that QUALCOMM "had no IPR in the

23  standard," suffers from a number of obvious flaws.  Relying on scant evidence, Broadcom argues

24  without analysis that the case "should have been resolved at summary judgment."  (Brief at

25  13:22-23.)  Broadcom implies that QUALCOMM's entire infringement case was dependent upon

26  its patents' relationship to the H.264 video compression standard.  But Broadcom's argument

27  misstates QUALCOMM's actual infringement theory, which in many respects did not depend on

28

the patents' relationships to the standard[4]:

    &bull;  Broadcom treats the two patents-in-suit identically.  But QUALCOMM's infringement theories for the two patents—known as the '767 and '104 patents—were actually quite different.

    &bull;  As to the '767 patent, Broadcom contends that QUALCOMM understood it was "inapplicable" to the H.264 standard, and that QUALCOMM's claim was therefore frivolous. But QUALCOMM's did not contend at trial that the '767 patent is essential to the H.264 standard, or that Broadcom necessarily infringed the patent because it practiced the H.264 standard.  Rather, QUALCOMM alleged that Broadcom's product software design infringed the '767 patent.  (Beal Decl. Ex. M, pp. 85-131; 1st Supp. Decl. of Dr. Iain Richardson.)

    &bull;  QUALCOMM alleged Broadcom infringed the '104 patent based on numerous patent claims, only one of which it asserted to be essential to the H.264 standard.  While QUALCOMM argued claim 59 of the '104 patent (an independent claim covering a decoder) was essential to H.264, it relied on an analysis of Broadcom software to prove that the additional limitations of claim 60 (a decoder claim that depended from claim 59) were satisfied.  Finally, QUALCOMM did not argue that the asserted '104 encoder claims (3, 4, 5, 7, and 13) were H.264 essential, although it did argue it was difficult to imagine a practical commercial implementation of an H.264 encoder that would not practice those encoder claims.  (Id., pp. 27-82.)

    &bull;  Even as to claim 59 (which QUALCOMM argued was H.264 essential), QUALCOMM asserted an alternative infringement theory, contending both that (a) H.264 decoding could not be practiced without infringing claim 59, and (b) in any event, QUALCOMM's expert, Dr. Iain Richardson, analyzed Broadcom's source code and confirmed that Broadcom's products infringe the '104 patent.  (Id., pp. 51-51.)

    Additionally, the comments in the emails upon which Broadcom relies were made

---

[4]In its preliminary infringement contentions, QUALCOMM was more heavily reliant on an asserted relationship between its patents and the H.264 standard.  But following the Markman hearing, and by the exchange of expert reports, QUALCOMM's infringement contentions evolved to those set forth here.  In any event, Judge Brewster's March 31 Order undercuts any argument that QUALCOMM's H.264 essentiality claim was meritless.  Judge Brewster's finding that "practicing the H.264 standard necessarily reads on the '104 patent" is fatal to Broadcom's contention that it could have prevailed at summary judgment. (Order at 21:13-15.)

-9-

1    engineers, not by attorneys. These engineers were unfamiliar with the law of patent claim

2    construction, concepts like the doctrine of equivalents, and the patents' prosecution histories.

3    These engineers were also working without the benefit of the Court's patent claims construction.

4    For example, during the Markman hearing the Court construed "adaptive block size compression

5    system" broadly to mean "an apparatus capable of use in compressing data organized in different

6    block sizes," a definition met by the H.264 standard.

7          Given all of these facts, Broadcom's contention it would have prevailed at summary

8    judgment on QUALCOMM's infringement claim if it had the newly-produced documents is itself

9    meritless.

10   **IV.    IN ITS ZEAL TO PORTRAY QUALCOMM AND ITS ATTORNEYS AS**

11   **UNTRUTHFUL, BROADCOM OVERSTATES THE INACCURACY OF WITNESS**

12   **TESTIMONY AND ARGUMENTS BY COUNSEL**

13         As QUALCOMM has acknowledged, it produced after trial a number of discoverable

14   documents it would have produced during discovery had their existence been known.  From that

15   basic uncontested premise, however, Broadcom extrapolates to extreme and unfounded

16   accusations of intentional misconduct.  Indeed, Broadcom makes outright misrepresentations

17   concerning supposed inconsistencies between the testimony of QUALCOMM witnesses and what

18   the newly-produced documents purport to show.  Broadcom's charges of intentional wrongdoing

19   are unwarranted and unsustainable, and QUALCOMM encourages the Court to review the record

20   to determine what the late-produced documents show.

21         Broadcom identifies eight "fundamental" claims purportedly made by QUALCOMM's

22   witnesses and counsel before and during trial, now purportedly proven false by the documents

23   produced after trial.  But most of the "fundamental" claims were not erroneous at all, and

24   Broadcom has had to contort the evidence to level these charges.  The deposition transcripts

25   relied upon by Broadcom reveal no "knowingly false testimony" by witnesses.  Indeed, in many

26   instances, these QUALCOMM witnesses never said what Broadcom now contends:

27         •   Broadcom claims QUALCOMM employees Viji Raveendran and James Determan

28   testified that "Qualcomm employees were not aware of the JVT's work on H.264 prior to

September 2003." (Brief at 8:11-13.)  Tellingly, Broadcom provides no precise citation to where in their depositions these two engineers purportedly made such a claim, because they did not so testify. ███████████████████████████████████████████████████████

- Broadcom similarly takes Ms. Raveendran, Chris Irvine, and Scott Ludwin to task for purportedly testifying that "QUALCOMM employees were not JVT members during the JVT's work on H.264." (Brief at 8:15-17.)  But, there was nothing erroneous about these statements—indeed, the JVT did not have any membership.  As explained by the chair of the JVT, Gary Sullivan, during his deposition, "the JVT itself doesn't have members, member organizations." (Beal Decl. Ex. E, 19:14-15, Sullivan Depo.)  Rather, since the JVT is "a joint organization of MPEG and VCEG," anyone who is qualified to participate in either one of those organizations is also considered qualified to participate in the JVT. (Id. at 16:13-17:2.)  Because QUALCOMM is a member organization of the ITU, it is allowed to participate in the JVT. (Id. at 19:13-24.)

- Broadcom charges that counsel erroneously asserted "Qualcomm never engaged in email communications with the JVT related to H.264 prior to September 2003." But the evidence cited by Broadcom does not refute QUALCOMM's point—that QUALCOMM employees were not involved in a substantive dialogue with the JVT.  Broadcom refers to documents that show a QUALCOMM consultant forwarded emails from the JVT reflector to certain employees, and that certain employees received emails from the JVT ad hoc email lists—emails not personally addressed to these employees.  But the mere fact that some employees received emails from JVT email reflectors does not mean they were having substantive communications with the JVT.

- Broadcom again cites Ms. Raveendran and Mr. Determan for the purported claim they erroneously testified that "Qualcomm employees never received any reports of JVT meetings." (Brief at 9:14-15.)  Again, neither engineer made this claim. ████████████████████████████████████████████████

DLA PIPER US LLP
SAN DIEGO

GT\6536295.1

05 CV 1958 B(BLM)

1           By contrast, Ms. Raveendran was not asked whether she ever received any reports

2   of JVT meetings and her testimony is simply unfairly characterized.

3

4

5

6

7

8

9

10          Contrary to

11  Broadcom's suggestion otherwise, Ms. Raveendran was not asked whether she, or any other

12  QUALCOMM employee, had ever received any reports regarding early JVT meetings.  If

13  Broadcom had wanted an answer to that question, it should have asked it.

14        •   Broadcom similarly misrepresents Ms. Raveendran's and Mr. Determan's

15  testimony when it contends they erroneously testified "Qualcomm employees did not know the

16  rules requiring disclosure of IPR to the JVT."  (Brief at 17-18.)  Again, neither engineer testified

17  as such.  In fact, Ms. Raveendran was not even asked if she knew the disclosure rules of the JVT.

18

19

20          but was not asked for her or other

21  QUALCOMM employees' understanding of the IPR disclosure rules.  (Saxton Decl. Ex. V, 76:5-

22  10, Raveendran Depo.)

23

24          Mr. Determan was never even asked

25  if he was familiar with the JVT's disclosure rules, much less whether any QUALCOMM

26  employees were familiar with those rules.  (Beal Decl. Ex. D, Determan Depo. 57:12-58:5.)

27        •   Broadcom contends counsel's argument at summary judgment that QUALCOMM

28  employees did not know that the patents-in-suit potentially applied to the H.264 standard has been

1  proven wrong by the documents produced after trial. ████████████

2  ████████████████████████████████████████████

3  ████████████████████████████████████████████

4  ████████████████████████████████████████████

5  ████████████████████████████     The newly-discovered documents do

6  not show that any witness testified erroneously, much less intentionally falsely, regarding whether

7  QUALCOMM employees understood any relationship between QUALCOMM's patents-in-suit

8  and the H.264 standard.

9       These examples illustrate how Broadcom has mischaracterized the evidence to argue that

10  QUALCOMM and its counsel "worked a deception on the Court, on the jury, and on Broadcom,

11  and constituted a significant abuse of the judicial process." (Brief at 14:5-6.) This accusation is

12  at odds with the facts.  Indeed, of Broadcom's eight "fundamental" points, Broadcom is correct

13  only in observing that QUALCOMM erroneously asserted before and during trial that before the

14  H.264 standard was published and adopted, QUALCOMM "never participated in JVT activities"

15  and "never attended any JVT meeting." (Brief at 8:19-21; 9:2-4.)  As developed below, these

16  assertions merely reflect the obvious—that without the aid of the documents discovered and

17  produced after trial, QUALCOMM and its counsel could not take advantage of those documents

18  to formulate their positions at trial, and to refresh the recollections of QUALCOMM witnesses.

19  **V.     THERE IS NO EVIDENCE QUALCOMM AND ITS ATTORNEYS INTENDED**

20  **TO MISLEAD THE COURT REGARDING THE NATURE AND EXTENT OF**

21  **QUALCOMM'S INVOLVEMENT WITH THE JVT**

22       **A.     Although QUALCOMM's Counsel Understated the Extent of**

23  **QUALCOMM's Involvement in the JVT, There Is No Evidence They Took That Position in**

24  **Bad Faith**

25       As Broadcom notes, QUALCOMM contended during several proceedings and in filed

26  documents that it had no involvement in the JVT before the publication and adoption of the H.264

27  standard.  And, as noted in Section IV, *supra*, QUALCOMM's "no involvement in JVT" position

28  was erroneous.  Broadcom fails, however, to demonstrate that this erroneous position was taken

-13-

1    with any intent to deceive.

2           There is simply no indication that when they asserted the "no involvement" theory,

3    counsel knew the true facts about QUALCOMM's monitoring of JVT activities and its presence

4    at some of those meetings in 2002 and 2003. Thus, the overwhelmingly likely explanation for the

5    inaccurate testimony and argument of counsel regarding QUALCOMM's involvement in the JVT

6    in 2002 and 2003, is that these were a natural consequence of not identifying and collecting

7    relevant documents, and counsel's consequent inability to use them to learn the facts and refresh

8    their deponents' memories. Although Broadcom also takes QUALCOMM's counsel to task

9    because the newly-discovered documents are inconsistent with QUALCOMM's "no involvement

10   in JVT" theory, Broadcom fails to explain how this contradiction reveals anything other than

11   what is a frequent event at trial—one side's version of the facts is shown to be incorrect. Most

12   importantly, nothing in this record suggests any bad faith, intentional misconduct, or intentional

13   discovery abuse on the part of QUALCOMM or its attorneys.

14          **B.     The Circumstances Surrounding the Discovery of the 21 Emails at Trial Do**

15   **Not Establish Bad Faith or Intentional Misconduct by Counsel.**

16          Broadcom offers a slanted version of the facts surrounding the discovery of the 21

17   Raveendran emails at trial, but fails to offer any analysis that would lead to a conclusion of

18   intentional misconduct. Certain of QUALCOMM's counsel first learned of the 21 emails on

19   January 14, 2007, while preparing Ms. Raveendran for her trial testimony.[5] At that time, counsel

20   exercised their judgment and determined the emails were not responsive to the narrowed scope of

21   Broadcom's discovery requests.[6] (Saxton Decl. Ex. D; Beal Decl. Ex. F.) After Broadcom rested

22   its case without calling Ms. Raveendran, on January 24, 2007, she testified as QUALCOMM's

23   rebuttal witness. During her direct examination, she was asked whether she had sent email to the

24   ───────────────────
     [5] Broadcom had listed Ms. Raveendran as a witness to be called during its defense case. Broadcom elected to instead
25   read from her deposition rather than call her to testify.
     [6] Broadcom disputes that there was any agreement narrowing the scope of its document requests. But, in
26   QUALCOMM's response to Broadcom's requests, QUALCOMM made substantial objections and agreed only to
     make a more limited production, more reasonable in scope than Broadcom's requests. Broadcom neither objected to
27   QUALCOMM's response, nor moved to compel a broader production than QUALCOMM indicated it would make.
     Pursuant to the Court's February 17, 2006 Case Management Conference Order regulating discovery and other
28   pretrial proceedings, Broadcom was required to challenge the adequacy of QUALCOMM's response within 30 days.
     Broadcom failed to do so.

1    JVT ad hoc group reflector or whether she had ever "read mail that came back to you from this

2    email list."[7]  (Beal Decl. Ex. G, 46:16-17, Jan. 24, 2007 Trial Tr.)   When Ms. Raveendran was

3    subsequently asked on cross-examination whether she had ever received emails from a JVT ad

4    hoc committee reflector, she testified truthfully and answered that during her trial preparation,

5    emails from the reflector in question had been pulled out of her email archive.  (Id. at 53:13-24.)

6         Broadcom's accusations concerning these events cannot explain why, if QUALCOMM

7    sought to hide these emails, it would ever have called Ms. Raveendran as a witness.  Had

8    QUALCOMM intended to conceal the existence of these emails, it would not have risked their

9    disclosure by putting Ms. Raveendran on the stand when there was no compelling need.  Any

10   inference of bad faith or intentional misconduct, under these circumstances, lacks plausibility—if

11   there was a cover-up Ms. Raveendran would not have testified truthfully about the documents.

12   **C.      Broadcom Overreaches in Accusing QUALCOMM's Witnesses of Intentional**

13   **Falsehoods Because Any Errors in Their Testimony Were the Product of Honest**

14   **Misrecollection and Not an Intent to Deceive the Court.**

15        Broadcom misconstrues the evidence to attack the honesty of Ms. Raveendran and Ms.

16   Irvine.  Broadcom relies heavily on a February 26, 2002 email, contending it shows

17

18

19

20                          But this email did not refer to a meeting held by the JVT itself.  In fact, there was

21   no meeting of the JVT on or about February 26, 2002.  There was a JVT meeting in Geneva,

22   Switzerland from January 29 – February 1, 2002, and a following meeting of the JVT in Fairfax,

23   Virginia from May 6-10, 2002.  (Beal Decl. Ex. H, 11:18-12:16.)

24

25

26   _____

[7] Broadcom contends this was a "carefully-crafted" examination meant to conceal the existence of the 21 emails.  In

27   fact, the examination actually assumes that Ms. Raveendran received email from the reflector, albeit tacitly.  Perhaps

this direct examination, which only implicitly referred to the existence of the emails that have "come back to [her]

from this email list," in hindsight was not the best examination technique.  But it is not evidence of intentional

28   misconduct by counsel.

1    ██████████████████████[8]   Broadcom knows when these JVT meetings were and where

2    they took place, and it knows that this email did not refer to a meeting actually held by the JVT.

3    (See Saxton Decl. Ex. V, 41:5-12)  It is surprising that in accusing QUALCOMM of "working a

4    deception," Broadcom would knowingly misrepresent this evidence to attack the honesty of

5    QUALCOMM's witnesses.

6         Broadcom specifically accuses Ms. Raveendran of "intentional" misrepresentations,

7    ████████████████████████████████████████████████████████

8    ████████████████████████  (Brief at 11:7-18.)  Broadcom contends Ms. Raveendran's

9    statement must be untruthful because the newly-discovered documents contain "hundreds of

10   emails" related to the JVT and H.264 that she sent to and received from other QUALCOMM

11   employees beginning in 2002.  But Ms. Raveendran testified at deposition entirely from memory

12   unrefreshed by the newly-discovered documents.  Witnesses commonly misremember dates, or

13   the order of events, particularly where, as here, the events are three or four years old and they do

14   not have the benefit of documents to refresh their recollection.  Broadcom provides no reason or

15   explanation why Ms. Raveendran would have lied, and it is more reasonable to assume that she

16   misremembered when she said she first learned of the JVT in 2003 instead of 2002.  Indeed, her

17   answer itself—██████████████—displays a degree of uncertainty.

18        Broadcom also erroneously points to Ms. Raveendran's resume as purported

19   circumstantial evidence that she misrepresented the facts concerning her involvement with the

20   JVT.████████████████████████████████████████████

21   ████████████████  (Brief at 11:18-20.)  But Broadcom's suggestion is terribly misleading.

22   ████████████████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████████████████████████████████████████████

26   ████████████████████████████████████████████████

27   _____

28   [8] ████████████████████████████████████████

1
2          ████████████████████████████████████████ Broadcom cites no other evidence from the

3    newly-discovered documents, including the "hundreds of emails" to and from Ms. Raveendran,

4    from which the Court could reasonably conclude that Ms. Raveendran was actively involved in

5    the JVT proceedings during the formation of the H.264 standard before it was published and

6    adopted in 2003.

7          Broadcom is equally accusatory regarding Ms. Irvine's testimony. But while Ms. Irvine's

8    testimony was mistaken in certain respects, Broadcom was well aware of that when it deposed

9    her. Indeed, Broadcom complained during and after Ms. Irvine's deposition that she was not

10   sufficiently prepared to speak as QUALCOMM's 30(b)(6) witness regarding its involvement in

11   the JVT. In a July 14, 2006 letter to counsel, three days after the Irvine deposition, Broadcom

12   detailed numerous areas where it contended Ms. Irvine had given erroneous testimony during her

13   Rule 30(b)(6) deposition:

14         • Ms. Irvine was unfamiliar with the JVT and testified (erroneously)
             that she believed that the JVT was composed of the JPEG and
15           MPEG standards bodies. . . .

16         • Ms. Irvine testified (again, erroneously) that Qualcomm was not a
             member of the JVT and further testified that Qualcomm was not
17           aware of any Qualcomm employee attending any JVT meetings or
             paying dues to the JVT . . .
18
19         • Ms. Irvine testified (erroneously) that Qualcomm had not hosted
             any JVT meetings . . .
20
           • Ms. Irvine testified (erroneously) that Qualcomm had not made any
21           submissions to the JVT. . . .

22   (Beal Decl. Ex. I, Jul. 14, 2006 Ltr. from Ms. Saxton to Mr. Leung.) Thus, Broadcom was

23   certainly not misled by her testimony.

24         In its July 14 letter to counsel, Broadcom specifically enumerated how Ms. Irvine was not

25   adequately prepared to testify as a 30(b)(6) witness. Broadcom noted that: (1) she saw the Rule

26   30(b)(6) Notice for the first time the day before her deposition; (2) other than counsel, she spoke

27   to no one regarding QUALCOMM's involvement in the JVT; and (3) other than Broadcom's

28   deposition notice, she reviewed no documents in preparation for her deposition with respect to

1    QUALCOMM's involvement in the JVT. (*Id.* at p.2.)  After the deposition, instead of seeking

2    sanctions, Broadcom asked QUALCOMM to cure its deficiency by producing another Rule

3    30(b)(6) witness, which QUALCOMM did.

4            Moreover, though Broadcom now suggests that QUALCOMM sought to mislead the

5    Court through Ms. Irvine's testimony, it was *Broadcom*—not QUALCOMM—that offered this

6    testimony into evidence at trial for its own tactical purpose of attacking QUALCOMM's

7    credibility.[9]  Broadcom now accuses QUALCOMM of litigation misconduct for testimony that

8    Broadcom—not QUALCOMM—put before the Court and the jury.  In light of these

9    circumstances, Broadcom cannot credibly argue that Ms. Irvine's testimony should now provide a

10   basis for imposing the wide-ranging sanctions it requests.

11           **D.    Conclusion:**

12           Broadcom has not demonstrated that the testimony it has identified was intentionally false,

13   or anything other than an innocent failure of memory on the part of QUALCOMM's witnesses.

14   These witnesses, Irvine, Raveendran, and Determan, were all engineers who were testifying about

15   the activities of a disbanded business unit.  (Beal Decl. Ex. J, Aug. 21, 2003 QUALCOMM Press

16   Release.)  None had the benefit of any documents to refresh their recollections on the matters for

17   which they have now been accused of falsely testifying.

18           Moreover, QUALCOMM's witnesses and counsel had no reason to knowingly give false

19   testimony or argument.  QUALCOMM's video compression technology was not a core

20   technology then or now, and these employees had nothing personally at stake in this case.  (Beal

21   Decl. Ex. L, 48:8-14; 167:13-168:4, Jan. 10, 2007 Trial Tr.)  Similarly, QUALCOMM's counsel

22   had no motive to conceal the recently-produced documents or present false argument—indeed,

23   knowledge of the newly-discovered documents would have allowed them to present more

24   accurate and credible positions at trial.  Moreover, QUALCOMM's counsel are respected

25   attorneys who have regularly represented QUALCOMM, and would continue to do so whether or

26   not they won this case.  They had nothing to gain by deceiving the Court and everything to lose.

27   _____

28   [9] Based upon the Court's March 21, 2007 Order, it appears Broadcom achieved that objective and damaged QUALCOMM's credibility with Ms. Irvine's unrefreshed testimony.

**VI.    LACKING EVIDENCE OR ANALYSIS THAT COULD REASONABLY LEAD TO A CONCLUSION THAT QUALCOMM INTENTIONALLY ENGAGED IN DISCOVERY ABUSE, BROADCOM INSTEAD RESORTS TO INFLAMMATORY RHETORIC AND MISLEADING ASSERTIONS**

Ironically, though Broadcom accuses QUALCOMM of "conduct [that] worked a deception on the Court," it shows little restraint in making unfounded assertions or engaging in inflammatory hyperbole itself.  For instance, Broadcom misleads the Court in wrongly asserting that its waiver defense was "one of Broadcom's primary defenses throughout the litigation," and that it "pled its waiver defense in its Answer."  (Brief at 3:24-28.)  In fact, as noted above, Broadcom did not even articulate that theory until after the close of discovery, when it amended its responses to interrogatories in September 2006.[10]

Broadcom not only repeatedly mischaracterizes the content and significance of the newly-discovered documents, it also charges QUALCOMM, with no basis whatsoever, with concealing or withholding them in order to proffer perjurious testimony.  Broadcom also unfairly accuses some QUALCOMM witnesses of perjury simply because in some instances these witnesses made mistakes in their testimony regarding QUALCOMM's early JVT involvement.  (Brief at 18:27-19:6 (citing cases regarding perjured testimony).)  Over the years, this Court has been an observer of how witnesses can make mistakes.  While mistakes in testimony and QUALCOMM's inadvertent discovery lapse should not be minimized, neither should they be exaggerated and characterized as intentional misconduct when there is no persuasive evidence of such intent.  Broadcom crosses the line of fair argument into unfounded and incendiary accusations.

Indeed, Broadcom rarely hesitates to accuse QUALCOMM of nefarious purposes with respect to the newly-discovered documents and intentional misconduct at trial.  For example,

[10] Even in these September 2006 amended responses, Broadcom did not contend that QUALCOMM's purported failure to disclose its patents to the JVT supported its waiver defense.  Instead, Broadcom alleged this purported non-disclosure theory only in support of its newly asserted defenses of "equitable estoppel, common law fraud, unclean hands, and breach of contract."  (Beal Decl. Ex. B, 9:20-21.)  Broadcom's theory of waiver based on non-disclosure did not fully emerge until the December 5, 2006 summary judgment hearing.  Broadcom asserts in its related briefs submitted to Judge Brewster that it submitted an expert report "explaining its waiver theory" on August 10, 2006.  (Beal Decl. Ex. K, 5:26-27.)  But—just as in its supplemental interrogatory responses—the word "waiver" appears nowhere in the report of Broadcom's expert, Dr. Cliff Reader.  Moreover, the key depositions of QUALCOMM witnesses took place before Dr. Reader delivered his report.

Broadcom accuses QUALCOMM of:

- "offering false and misleading testimony and argument" (Brief at 3:2),

- making "obvious misrepresentations" to Broadcom and the Court (Brief at 9:24),

- "work[ing] a deception on the Court, on the jury, and on Broadcom" (Brief at 14:5-6),

- "affirmatively present[ing] false and misleading sworn testimony and legal argument" (Brief at 18:7),

- engaging in "a course of conduct that included efforts to obstruct production of documents and to present false testimony by multiple witnesses at deposition, false testimony by witnesses at trial, and false argument by counsel" (Brief at 21:16-18),

- exhibiting a "willingness to present false argument and testimony" (Brief at 22:4).

Broadcom cites no evidence to supports these provocative accusations, beyond the fact that QUALCOMM failed to collect and produce a number of discoverable documents. But one cannot reasonably infer from that discovery lapse that QUALCOMM attempted to commit a fraud on the Court.

Likewise, Broadcom repeatedly refers to the "harm" QUALCOMM purportedly caused to the judicial process. (See, e.g., Brief at 19:19-20:5.) Contrary to these conclusory assertions, neither Broadcom nor the Court was forced to endure the time and expense of pretrial, trial, and post-trial proceedings because of QUALCOMM's discovery lapse. As discussed above, nothing in the newly-discovered documents would have entitled Broadcom to summary judgment in this matter. And despite QUALCOMM's late discovery of documents, Broadcom won at trial. Broadcom's contention that  QUALCOMM's discovery lapse constituted an "offense" against the "public trust in the administration of justice" is pure hyperbole. (See Brief at 18:8-10.)

## VII.    BROADCOM PRESENTS NO CREDIBLE JUSTIFICATION FOR ITS REQUEST FOR BROAD, UNPRECEDENTED SANCTIONS

Admittedly, the failure to collect and  produce discoverable documents may be subject to monetary sanctions under the Federal Rules of Civil Procedure, even when inadvertent as here. But Broadcom presents no compelling evidence or argument warranting the imposition of the

1  additional, wide-ranging sanctions that it requests.

2       **No Justification for Paying a Penalty to the Court.** Broadcom's contention

3  QUALCOMM should pay a fine to the Court is based on the erroneous premise that if

4  QUALCOMM had produced the newly-discovered documents and "produced witnesses who

5  testified truthfully in depositions," Broadcom would have prevailed on its motion for summary

6  judgment. (Brief at 19:27-20:5.) But as shown in Section III, *supra*, even had the late-discovered

7  documents been produced in discovery, there still would have been both an infringement trial and

8  a trial on Broadcom's waiver defense.

9       **No Basis to Impose a "Discovery Compliance Program."** Broadcom asks the Court to

10  impose on QUALCOMM a novel and unprecedented discovery sanction in the form a "discovery

11  compliance program." Broadcom cites no case where a court has imposed anything akin to a

12  "discovery compliance program," nor is QUALCOMM aware of any similar discovery sanction.

13  Instead, in arguing the propriety of such a sanction, Broadcom tries to analogize discovery

14  failures to "systemic violations of the securities laws and the Foreign Corrupt Practices Act,"

15  where the Securities and Exchange Commission has required companies to implement certain

16  compliance programs to remedy violations of those laws. (Brief at 22:8-11.) The analogy simply

17  has no merit.

18       Moreover, there is no basis for Broadcom's accusation that the facts show "efforts to

19  *obstruct* production of documents" or "*willingness* to present false argument and testimony," or

20  which "suggest that  [QUALCOMM] cannot, as an institution, be relied upon to take its discovery

21  obligations seriously."[11]  (Brief at 21:16-17; 22:4-5.) Broadcom cites no evidence that that

22  indicates QUALCOMM intentionally "obstructed" producing the newly-discovered documents,

23  or actively "concealed" or "withheld" them. Nor does Broadcom cite any persuasive evidence

24  that QUALCOMM knowingly or intentionally presented false testimony or argument.

25       Further, other evidence that Broadcom cites in support of this unprecedented sanction

---

[11] Since 2005, Broadcom has brought numerous cases against QUALCOMM seeking hundreds of millions of dollars. Even in this onslaught of litigation, what occurred in this case is not representative of QUALCOMM's conduct in discovery. Since 2005, QUALCOMM has produced to Broadcom alone over 9,830,000 pages, comprising over 1,015,000 documents—including over 2,140,000 pages in this case alone.

1    actually undermines its assertion of "systemic misconduct." As Broadcom notes, QUALCOMM

2    is a frequent, and sometime reluctant, litigant in the Southern District of California. Although

3    Broadcom lists some of those cases, it does not cite any similar example of the kinds of discovery

4    misconduct of which it accuses QUALCOMM here (i.e., intentionally concealing documents,

5    suborning perjury, intentionally deceiving the court, etc.)—because no such example exists. Nor

6    does it cite a similar example involving QUALCOMM of what really happened in this case—a

7    failure to collect and produce certain discoverable documents before trial.[12] It is not reasonable

8    on this record to contend QUALCOMM has some "systemic" problem fulfilling its discovery

9    obligations, much less to contend it engages in "systemic misconduct." There is nothing in this

10   record that would warrant the imposition of an extraordinary discovery compliance program.

11        **No Further Need to Correct Innocent and Unintentional Testimonial Errors and**

12   **Argument by Counsel.** Broadcom also asks the Court to require QUALCOMM to identify and

13   correct its "false" statements and testimony. But QUALCOMM has already admitted that it took

14   an erroneous "no involvement in the JVT" position both before and during trial. None of the

15   authorities cited by Broadcom require a party to do what Broadcom appears to suggest—i.e.,

16   make line-by-line corrections to the record. More importantly, no authority suggests a party must

17   correct innocent and unintentional misstatements by witnesses or counsel where they do not have

18   the potential to mislead the Court or the jury—otherwise every trial would involve post-trial

19   motions to force the losing party to "correct the record" merely on the basis that the losing party's

20   version of the facts was not believed by the jury.

21        **No Justification for an Invasive Investigation.** Broadcom seeks discovery and an

22   evidentiary hearing to determine whether QUALCOMM should be subject to additional

23   sanctions. Broadcom purports to justify its request to prolong these proceedings by contending

24   QUALCOMM "has not explained how it failed to locate the more than 35,000 concealed

25   documents, and why it allowed false testimony and argument to be presented to the Court and the

---

26   [12] Certainly, Broadcom could find examples of discovery disputes, as such disputes are a common occurrence in
27   nearly every litigation. But discovery disputes and lapses do not lead to the imposition of a "discovery compliance
     program." Further, a "discovery compliance program" already exists in federal litigation. It is called the Federal
     Rules of Civil Procedure. Parties' conduct under those rules is "policed," as here, by federal Magistrates, Judges, and
28   special masters.

1   jury." (Brief at 24:9-11.)  Essentially, Broadcom asks the Court to empower it to conduct an

2   investigation of its litigation adversary and opposing counsel for allegedly perpetrating a fraud on

3   the Court.  That request is extraordinary and completely unwarranted on this record.

4          In fact, as the "Factual Background" section of Broadcom's moving papers reveal,

5   QUALCOMM has already provided to Broadcom many details surrounding the failure to search

6   for and produce discoverable documents, as well as the circumstances of the discovery of the 21

7   emails during trial.  (See Brief at 6:9-17; 7:1-12, 19-26.)  As Broadcom itself has noted, the

8   failure to collect and produce these documents was a result of never having "performed manual or

9   keyword searches of the archives of any of the other Qualcomm employees connected with the

10  JVT." (Brief at 7:5-6.)  Broadcom is also aware the delay in producing the 21 emails discovered

11  during trial was the result of a determination by counsel that the emails were not responsive to the

12  narrowed scope of Broadcom's discovery requests.  (Saxton Decl. Ex. D; Beal Decl. Ex. H.)

13         Indeed, QUALCOMM has explained here and in briefing before Judge Brewster that,

14  based on the evidence in this record, the testimony and arguments of counsel were uninformed by

15  the contents of the newly-discovered documents.  In arguing the testimony and arguments must

16  have been "intentionally false,"  Broadcom fails to acknowledge these natural and obvious

17  consequences of the failure to timely discover and produce the documents.  While Broadcom may

18  be unwilling to accept this explanation, it has failed to meet its burden of showing that

19  QUALCOMM or its witnesses intentionally misled the Court or Broadcom.

20         Broadcom's demand for a further explanation of the circumstances surrounding the failure

21  to produce documents, which necessarily implicates attorney-client communications, is simply

22  unjustified on the record before this Court, which includes:

23         •   QUALCOMM has produced over 2.1 million pages of documents to Broadcom,

24  not counting the newly-produced 300,000-plus pages of documents;

25         •   QUALCOMM called Ms. Raveendran on the last day of trial, though it was not

26  necessary to do so;

27         •   QUALCOMM produced the 21 emails when requested by Broadcom;

28         •   QUALCOMM explained the circumstances of finding and not initially producing

1    the 21 emails;

2         •   QUALCOMM retracted and apologized for its erroneous sidebar statement that

3    was inconsistent with the existence of the 21 emails;

4         •   QUALCOMM searched for additional documents;

5         •   QUALCOMM explained to Broadcom that it failed to search for and locate the

6    discoverable documents before trial;

7         •   When it found the newly-discovered documents QUALCOMM acknowledged the

8    error, and both the company (through its General Counsel) and its trial counsel apologized in

9    writing for taking certain positions before and during trial which appeared inconsistent with the

10   documents;

11        •   QUALCOMM conducted additional searches beyond those requested by

12   Broadcom; and

13        •   Broadcom has made no contention that the recent productions are anything less

14   than thorough.

15        These undisputed facts show no intent by QUALCOMM or its counsel to conceal

16   documents, offer perjurious testimony, or mislead the Court and Broadcom.  Quite the contrary:

17        •   QUALCOMM did not need to call Ms. Raveendran on the last day of trial, but did;

18        •   Ms. Raveendran could have lied about the emails, but did not;

19        •   QUALCOMM could have secreted the 21 emails, but did not;

20        •   There is no mistaken testimony or argument by counsel to which Broadcom can

21   point that cannot be explained as the natural, and perhaps inevitable, consequence of the failure to

22   collect and produce discoverable documents; and

23        •   Most of Broadcom's assertions regarding "concealed" documents and perjurious

24   testimony relate to the single issue of QUALCOMM's involvement in the JVT, an issue which

25   QUALCOMM did not have to win to defeat Broadcom's affirmative defense of waiver.

26        Broadcom seeks to prolong this litigation with an invasive investigation into the litigation

27   conduct of QUALCOMM and its counsel, despite the absence of any indication of bad faith or

28   intentional misconduct.  Broadcom's motives are suspect.  The trial in this case is over and

1    Broadcom has prevailed on non-infringement and waiver defenses.  It is apparent, therefore, that

2    Broadcom's request to investigate QUALCOMM and its counsel is part of its broader litigation

3    agenda.  As noted above, Broadcom's Orange County lawsuit against QUALCOMM focuses, at

4    least in part, on the very JVT-related conduct at issue in this case.  In the guise of taking

5    discovery on the purported "bad faith" or intentional misconduct of counsel—based on mere

6    suspicion—Broadcom seeks leave to conduct discovery into privileged matters in this case that it

7    cannot otherwise obtain in the Orange County case.

8         Broadcom's inflammatory attacks on QUALCOMM's discovery lapses, and the baseless

9    conclusions it draws from those lapses, do not warrant the wide-ranging remedies it seeks.

10   Admittedly, some reasonable sanction would be appropriate for not locating and producing the

11   newly-discovered documents.  But Broadcom fails to present any reasoned argument or analysis

12   that would support its additional requests.

13   **VIII.   CONCLUSION**

14        Notwithstanding its incendiary charges of intentional misconduct, Broadcom points to no

15   real evidence that would support the accusations leveled against QUALCOMM, its counsel, or its

16   employees.  While the failure to collect and produce a significant number of discoverable

17   documents may be the basis for an appropriate and reasonable monetary sanction commensurate

18   with Broadcom's additional legal expenses attributable to the untimely production, it is not a

19   proper basis for the wide-ranging, novel, and unprecedented sanctions requested by Broadcom.

20   For all the reasons set forth above, QUALCOMM respectfully requests that the Court deny

21   Broadcom's overreaching requests for sanctions beyond any reasonable monetary sanction.

22
23   Dated:  June 22, 2007                          DLA PIPER US LLP

24                                                  By /s/ William S. Boggs

25                                                      Attorneys for Plaintiff and Counterdefendant
26                                                      QUALCOMM Incorporated
                                                        william.boggs@dlapiper.com
27
28

DLA PIPER US LLP
SAN DIEGO

GT\6536295.1

-25-

05 CV 1958 B(BLM)