```
ROBERT S. BREWER, JR. (SBN 65294)
JAMES S. MCNEILL (SBN 201663)
MCKENNA LONG & ALDRIDGE LLP
750 B Street, Suite 3300
San Diego, CA  92101
Telephone: (619) 595-5400
Facsimile: (619) 595-5450

WILLIAM F. LEE (admitted pro hac vice)
JOHN J. REGAN (admitted pro hac vice)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000

MARK D. SELWYN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1117 California Avenue
Palo Alto, California 94304
Phone: (650) 858-6000
Fax: (650) 858-6100

Attorneys for Defendant/Counterclaim Plaintiff
BROADCOM CORPORATION
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>BROADCOM CORPORATION,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | [REDACTED PUBLIC VERSION]<br><br>Case No. 05 CV 01958 B (BLM)<br><br>**BROADCOM CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS**<br><br>Date: July 10, 2007<br>Time: 10:30 a.m.<br>Judge: Hon. Barbara L. Major |

*Contains Qualcomm Confidential Business Information – Subject to Protective Order*

05 CV 1958

# I. INTRODUCTION[1]

Qualcomm has admitted that it withheld from production a "significant number of discoverable documents" (approximately 46,000 emails and other electronic and hard copy documents[2]) that are "inconsistent with certain arguments" made by Qualcomm during the course of this litigation. (Opp. at 1; Saxton Decl.[3], Ex. H). Qualcomm has also admitted that it should be sanctioned for its litigation misconduct.[4] (Opp. at 2, 25.) Thus, the only question before this Court is the appropriate sanction for Qualcomm's admitted litigation misconduct. Qualcomm argues that because Broadcom "won at trial," the misconduct is harmless, and nothing beyond a "reasonable monetary sanction" is required to compensate Broadcom, the Court, and the public for Qualcomm's misconduct[5] (Opp. Br. at 25.) and deter similar conduct in the future.

Qualcomm's litigation misconduct is not, as Qualcomm argues, just an innocent and unintentional "failure to collect and produce discoverable documents," which is "not an uncommon event in today's litigation." (Opp. at 1.) Rather, Qualcomm's failure to produce these thousands of admittedly relevant, responsive, and requested documents during discovery, coupled with Qualcomm's presentation of misleading and inaccurate testimony and argument to the Court and jury and its post-trial delay in searching for and producing these documents, is serious misconduct that require serious consequences – beyond the mere "reasonable monetary sanction" suggested by Qualcomm.

Broadcom has therefore requested four specific remedies: (i) compensation to the Court by Qualcomm for its misconduct; (ii) a compliance program to ensure that Qualcomm complies

---

[1] For the convenience of the Court, Broadcom has attached as Exhibit A to the Supplemental Declaration of Kate Saxton in Support of Broadcom's Motion for Sanctions ("Saxton Supp. Decl.") the full transcript from the June 25, 2007 hearing before Judge Brewster regarding Broadcom's motion for attorneys' fees and the proper remedy for Qualcomm's waiver of the patents-in-suit, and incorporates the transcript by reference. Broadcom has attached as Exhibit Y to the Saxton Supp. Decl. copies of the demonstratives used during the June 25 Hearing.

[2] At the time Broadcom filed its Motion for Sanctions, Qualcomm had produced 35,005 documents, totaling 226,638 pages. Since then, Qualcomm has produced an additional 11,605 documents, bringing its post-trial production to date to 46,610 documents, totaling 332,101 pages. Broadcom understands that Qualcomm has not completed its review and production of documents, and expects to produce additional documents shortly.

[3] Unless otherwise noted, all Exhibits referenced in this Reply Memorandum were filed on May 29, 2007 with Ms. Saxton's Declaration and Broadcom's Motion for Sanctions.

[4] Notably, Qualcomm does not cite a single case (or any legal authority) in its Opposition to contend that such litigation misconduct is not sanctionable.

[5] Throughout its Opposition, Qualcomm refers to the number of pages of documents it *did* produce in this litigation, as well as other litigations between the parties. (Opp. at 1, 21 n.11, and 23). That information is entirely irrelevant to the issues before the Court – Qualcomm's admitted failure to locate and produce 46,000 relevant documents, and its presentation of inaccurate and misleading testimony and argument to the Court and jury.

with future discovery obligations; (iii) correction of the record; and (iv) discovery and an evidentiary hearing concerning the circumstances surrounding Qualcomm's misconduct.[6] These remedies, discussed in detail below, are necessary to correct the very serious harm caused by Qualcomm's litigation misconduct to Broadcom, the Court, and the public interest.

# ARGUMENT

## II. SANCTIONS BEYOND A "REASONABLE MONETARY SANCTION" ARE NECESSARY.

In challenging the propriety of the sanctions requested by Broadcom, Qualcomm asserts that its admitted failure to produce the 300,000+ pages during discovery was innocent, unintentional, and the type of conduct that is common in today's litigation. This characterization is unsupportable. Qualcomm's failure to produce this substantial volume of responsive and relevant documents, and its presentation of erroneous testimony and argument, reflect, at a minimum, a reckless disregard and gross indifference to its fundamental discovery obligations. (*See* Saxton Supp. Decl., Ex. A at 127-28 (claiming that Qualcomm's "failure" to produce these documents is excusable because "only nine of 116 [requests] related to JVT issues, 107 related to other issues;" *see also* 164-65, Court's questions regarding the number of "blind people" on Qualcomm's legal team and the admitted lack of communication among counsel).

### A. Qualcomm Should Be Required To Pay A Sanction To The Court.

Qualcomm asserts that any monetary sanction payable to the Court is unnecessary because, regardless of these withheld documents and its presentation of inaccurate and misleading testimony and argument, "there still would have been both an infringement trial and a trial on Broadcom's waiver defense." This is not correct. (Opp. at 21, 5-10.)

*First*, Qualcomm's argument ignores the fact that the central premise of Qualcomm's infringement theory was the relationship of the patents-in-suit to the H.264 standard. Qualcomm

---

[6] In its Opening Brief regarding its Motion for Sanctions, Broadcom requested that the Court award it any fees and expenses not awarded pursuant to its petition under 35 U.S.C. § 285. (*See* Broadcom Memorandum in Support of Its Motion for Sanctions at 25.) To the extent Broadcom prevails on its attorneys' fees motion under §285, Broadcom does not intend to seek duplicative relief in its Motion for Sanctions. To the extent, however, that Broadcom does not prevail on its attorneys' fees motion under § 285, Broadcom would nonetheless be entitled to attorneys' fess and expenses as a sanction, for the reasons stated in its Opening Brief.

asserted this theory during fact and expert discovery, during the summary judgment and pretrial proceedings leading up to trial, and during trial:

- In its First and Second Supplemental Disclosure of Asserted Claims, Accused Products, And Infringement Contentions Relating to U.S. Patent Nos. 5, 576,767 and 5,452,104 (respectively dated July 26, 2006 and Aug. 23, 2006). (*See* Saxton Supp. Decl., Ex. Nos. B and C.)

- In its First Supplemental Declaration of Dr. Iain Richardson Regarding Broadcom's Infringement of U.S. Patent Nos. 5, 576,767 and 5,452,102 (dated November 10, 2006), ███████████████████████████████████████████ (*See* Beal Decl., Ex. M at 4-17.)

- In its Opposition to Broadcom's Motion for Summary Judgment, its Memorandum of Contentions of Law and Fact, and its Rebuttal Memorandum of Contentions of Law and Fact. (Saxton Supp. Decl., Ex. Nos. D, E, and F.)

- In the direct testimony of its key technical expert, Dr. Richardson, during the January 2007 trial. (*Id.* at Ex. G.)

Thus, Qualcomm's effort to walk away from its H.264 standards-based infringement claim is not credible. During the December 2006 pretrial hearings, in response to Qualcomm's efforts to exclude evidence regarding its JVT participation, Qualcomm was offered the opportunity by Judge Brewster to abandon its H.264 standards-based infringement claim – in exchange for the exclusion of Broadcom's H.264 standards-based defense. Qualcomm specifically chose not to do so. The Court informed Qualcomm that it could either proceed with its H.264 standards-based infringement allegations, in which case Broadcom would be allowed to present evidence regarding Qualcomm's JVT participation and its failure to disclose its IPR to the JVT, or Qualcomm could drop its H.264 standards-based infringement allegations entirely, and try only the asserted claims of the patents-in-suit against Broadcom's products. (*See* Saxton Supp. Decl., Ex. H, Pretrial Conference Tr., Dec. 19, 2006, at 319-24.) In response, Qualcomm informed the Court that it was unwilling to abandon its H.264 standards -based infringement allegations, and that it intended to proceed to trial on that theory. (*See* Saxton Supp. Decl., Ex. I, Pretrial Conference Tr., Dec. 20, 2006, at 18.) Therefore, the Court should reject Qualcomm's revisionist claim in its Opposition that its infringement case was not premised on the relationship between the patents-in-suit and the H.264 standard.

*Second*, the withheld documents not only refute Qualcomm's "no participation" theory (as Qualcomm admits), but also contain critical information concerning the two key facts that Qualcomm contends would have still required a trial on Broadcom's waiver defense: (1) whether JVT participants considered there to be a duty to disclose relevant IPR; and (2) whether Qualcomm had knowledge that the patents-in-suit were "reasonably essential" to the developing H.264 standard. (Opp. at 7.) Qualcomm's withheld documents demonstrate that Qualcomm engineers ███████████████████████████████████████████████████████ ███████. (*See* Saxton Decl., Ex. A, Tabs 3, 12, and 52.) Qualcomm's withheld documents also demonstrate that the Qualcomm engineers ████████████████████████ ██████████████████████████████████████████████████████. (*See id.* at Tabs 28-32.)[7]

*Third*, although Qualcomm accused Broadcom of trying to "have it both ways," in truth it is Qualcomm who wants to "have it both ways." (Opp. at 8.) Either Qualcomm's engineers believed ████████████████████████████████████████ (*see* Saxton Decl., Ex. A, Tabs 102, 118, 120), in which case Qualcomm was required to disclose the patents-in-suit, *or* Qualcomm ████████████████████████████████████████████████ (*see id.* at Tabs 98, 102), in which case Qualcomm's infringement case was without merit. Whichever of these positions of Qualcomm is "correct," there would not have been a trial in this matter.

*Finally*, Qualcomm's suggestion that there is "no justification" for requiring it to compensate the Court is incorrect. Courts have responded to litigation abuse by imposing substantial sanctions, including fines payable to the court, because "it is essential that such conduct be deterred, that the corporate and legal community understand that such conduct will not be tolerated, and that the amount of the monetary sanction ***fully reflect the reckless disregard and gross indifference*** displayed by [culpable parties] toward their discovery and document preservation obligations." *United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 26 (D.D.C. 2004) (imposing $2.75 million fine for corporation failure to comply with document retention obligations) (emphasis added); *see also In re Prudential Insurance Company of*

---

[7] Qualcomm also asserts that, regardless of these withheld documents, it still would have been entitled to summary judgment on a "number of Broadcom's defenses." Qualcomm's claim is without merit. Had Qualcomm properly produced these documents during fact discovery, Broadcom could have moved for leave to amend its pleadings to specifically allege equitable estoppel, implied license, fraud, unclean hands and breach of contract.

*America Sales Practices Litigation*, 169 F.R.D. 598, 617 (D.N.J. 1997) (imposing $1 million fine on corporation for failure to prevent unauthorized document destruction); *cf. Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410-15 (9th Cir. 1990) (affirming $8.3 million default judgment for counterclaimant under Rule 37 based on failure to comply with court-ordered production of documents); *Wanderer v. Johnston*, 910 F.2d 652 (9th Cir. 1990) (affirming $25 million default judgment for plaintiffs under Rule 37 based on, *inter alia*, noncompliance with orders to produce documents); *American Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521 (S.D.N.Y. 1999) (entering $108 million default judgment for counterclaimant under Rule 37 based on failure to comply with discovery obligations), *aff'd*, 210 F.3d 354 (2d Cir. 2000); *In re September 11th Liability Ins. Coverage Cases*, Civil Action No. 03-332 (AKH) (S.D.N.Y. June 18, 2007) (imposing $1.25 million fine against defendant (approximately $375,000 of which was payable directly to the court) under Rules 11 and 37 for failing to timely produce documents).[8]

A significant sanction payable to the Court is necessary to remedy Qualcomm's serious misconduct, and to send a message to Qualcomm and other litigants that such misconduct will not be tolerated. In determining the exact amount of the sanction, the Court, in its discretion, should consider, at least, the magnitude of Qualcomm's litigation misconduct as well as Qualcomm's corporate structure, market capitalization, and financial status. (Saxton Supp. Decl., Tab Z.)

### B. A Compliance Program Is Necessary To Ensure That Qualcomm Complies With Its Discovery Obligations.

A discovery compliance program is not, as Qualcomm suggests, a "novel and unprecedented discovery sanction," (Opp. at 21). Rather, it is a necessary and proportional response to: (i) Qualcomm's failure to produce 46,000 relevant and discoverable emails and electronic documents; (ii) Qualcomm's presentation of misleading and inaccurate testimony and

---

[8] In *In re September 11th Liability Insurance Coverage Cases*, Zurich American Insurance Co. ("Zurich") failed to produce certain insurance coverage related documents until nearly a year after they were due. (*Id.* at 13-14). Zurich claimed that it had "'mistakenly not previously produced [these documents] due to counsel's inadvertence.'" *Id.* at 14. In recounting the factual underpinnings supporting its sanctions decision, the Court specifically noted that "[b]ut for the persistent inquiries by [plaintiffs], it appears these important documents would not have been produced at all." *Id.* The same is true of Broadcom's pursuit of the withheld Qaulcomm documents.

The Court further noted that: "[d]iscovery is largely run by attorneys, and *the court and the judicial process depend upon honesty and fair dealing among attorneys*. Thus the court may impose appropriate sanctions on a party that, without substantial justifications, fails to disclose information required by Rule 26(a) or 26(e)(2). See Fed. R. Civ. P. 37 (c)(1). A failure to disclosure under Rule 37 encompasses both the destruction of evidence, or spoliation, and untimely production of documents and information required to be produced." *Id.* at 19 (emphasis added).

argument during pretrial, trial and post-trial proceedings; and (iii) Qualcomm's refusal, upon learning of the additional 21 emails, to immediately produce them to Broadcom, to voluntarily take all necessary steps to locate and produce any other responsive documents, and to correct its inaccurate and misleading statements and testimony.

Qualcomm seeks to minimize its discovery misconduct by arguing that it this was an isolated event, and that there is "no evidence" that Qualcomm has engaged in "systemic misconduct." (Opp. at 21-22.) But the facts show that Qualcomm's discovery misconduct is indeed systemic. *First*, Qualcomm has admitted that, during discovery in this case, Qualcomm did not search the local email archives of any of its employees for JVT-related documents. (*See* Saxton Decl., Ex. D.) Email archives are a well-known source of discoverable documents. *See, e.g., Metro Wastewater Recl. Dist. v. Alfa Laval, Inc.*, 2007 WL 1160012 (D. Colo. Apr. 19, 2007). Qualcomm's failure to conduct this basic search for any of its employees is inexcusable.

*Second*, as Qualcomm revealed for the first time two weeks ago, its discovery failures were not limited to email. It also failed to produce hard-copy documents from **sixteen** Qualcomm employees, many of whom participated in the H.264 standard-setting process and some of whom were called as witnesses by Qualcomm at trial. (*See* Saxton Decl., Ex. J.)[9] Further, these withheld documents reveal that there were numerous Qualcomm employees who participated in the H.264 standards-setting process, but who were never disclosed in response to Broadcom's Interrogatory No. 13, which sought precisely this information. (Saxton Supp. Decl., Ex. K.)

*Third*, contrary to Qualcomm's assertions, upon learning of the 21 Raveendran emails, Qualcomm did not take any remedial steps to address its obvious discovery failure. Instead, up until the last day of trial, Qualcomm expressly and inaccurately represented to the Court that no such emails existed. (*See* Saxton Decl., Ex. NN, at 92:6-8; Doc. No. 479, at 11:4-5.) Qualcomm now claims that "[t]here is no indication that, at the time [Qualcomm] asserted [its JVT participation] theory, counsel knew the true facts about QUALCOMM's monitoring of JVT activities and its presence at some of those meetings." (Attorneys' Fees Opp. at 14.) This is not true: Qualcomm admittedly learned of the emails from the JVT email reflector to Ms.

---

[9] Qualcomm's untimely production of documents in violation of discovery obligations is not limited to this litigation. For additional examples from other litigation, see Saxton Supp. Decl., Ex. Nos. L through V.

Raveendran *by January 14*, but after that discovery still pursued its "no participation" theory in its motion for judgment as a matter of law, in its closing argument, and at the post-trial hearing on Broadcom's waiver defense. (Doc. No. 479, at 11:4-5; Saxton Decl., Ex. PP, at 125:18-20.)

*Finally*, even after it produced the 21 Raveendran emails on the last day of trial, Qualcomm failed to search for any other responsive documents. It was only after Broadcom requested that Qualcomm search the email archives of all Qualcomm employees involved in video compression (*see* Saxton Decl., Ex. F)—a request that Qualcomm initially rejected (*see id.* at Ex. G)—and Broadcom told Qualcomm that it intended to file motions for fees and sanctions, that Qualcomm finally agreed to search the archives of all of its video standard-setting employees, as Broadcom had weeks before requested. (*See* Saxton Supp. Decl., Ex. W.)

Such a pattern and practice of misconduct hardly suggests that, absent intervention by the Court, Qualcomm can be trusted to voluntarily comply with its discovery obligations in future litigation. For the reasons and authority set forth in Broadcom's Opening Brief, a compliance program is regularly ordered when corporate misconduct is significant and systemic.

### C. Qualcomm Should Be Required to Correct The Record.

Qualcomm admits that it has offered evidence and argument that are "inconsistent" with the evidence contained in these 46,000 withheld documents. But Qualcomm inexplicably asserts that, because its misleading and inaccurate testimony and statements were innocent and unintentional, it has no obligation to correct the record in this litigation.[10] Qualcomm's argument should be rejected for at least two reasons.

*First*, Qualcomm has stated on the record that it intends to pursue an appeal of this litigation, including the Court's finding that Qualcomm waived its right to assert the patents-in-suit. (*See* Saxton Supp. Decl., Ex. A at 117-18). Identification and correction of Qualcomm's inaccurate evidence and argument are necessary to ensure that the Federal Circuit has an accurate record for consideration of any appeal brought by Qualcomm, particularly given that these withheld documents directly contradict Qualcomm's "no participation" theory presented during

---

[10] This is not, as Qualcomm suggests, a situation where Qualcomm presented a "version of the facts that was not believed by the jury." (Opp. At 22). Rather, Qualcomm presented evidence and argument that Qualcomm itself now admits are contradicted by and quite inconsistent with documents withheld by Qualcomm.

trial. Without such correction, the Federal Circuit will be presented with a record that Qualcomm itself has conceded is incorrect, and which is different from what the withheld documents prove regarding (i) Qualcomm's early and continued participation in the JVT; (ii) Qualcomm's knowledge of the patents-in-suit and their potential applicability to the H.264 standard; (iii) Qualcomm's knowledge regarding the JVT's IPR disclosure practices, policies, and procedures; and (iv) Qualcomm's ultimate conclusion that the patents-in-suit did not read on the H.264 standard.

*Second*, although Qualcomm seeks to persuade the Court that Broadcom has "contort[ed]" the evidence to support its claim that Qualcomm witnesses gave knowingly false testimony, it is Qualcomm that seeks to "contort" the testimony of its witnesses in an attempt to avoid the consequences of their misstatements. (Opp. at 10). Qualcomm does not deny, because it cannot, two of the most important inconsistencies identified by Broadcom: that Qualcomm ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, and that Qualcomm ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. These two assertions were essential to Qualcomm's "no participation" defense to Broadcom's waiver defense.

As to the remaining inconsistencies, Qualcomm is also wrong. For example:

- Qualcomm claims that Broadcom mischaracterized the testimony of Ms. Raveendran and Mr. Determan that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (Opp. at 10-11.) This is not the case. When asked under oath when she had first learned of the JVT, Ms. Raveendran ▉▉▉▉▉▉▉▉▉▉▉ She further testified that she ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (*See* Saxton Decl., Ex. V, at 37:3-11.) Similarly, Mr. Determan testified that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (*See id.*, Ex. Y, at 27:4, 29:13-19.) The withheld documents demonstrate that ***both*** Ms. Raveendran and Mr. Determan ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. (*See id.*, Tabs 2 through 5, 9 through 11).

- Qualcomm claims that Broadcom "erroneously asserted 'that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Opp. at 11: 16-19 (emphasis added).) This ▉▉▉▉▉▉▉▉▉▉▉" claim is a new (and irrelevant) argument. It is indisputable that Qualcomm ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

*Contains Qualcomm Confidential Business Information – Subject to Protective Order*

- 8 -

05 CV 1958

▪ ███████. (See e.g., Ex. A, Tabs 18 (Qualcomm ██████████ VT . . ."), 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31.)

▪ Qualcomm claims that Broadcom erroneously argues ███████. This argument, too, is contradicted by Qualcomm's withheld documents. When Ms. Raveendran testified ██████ (see Saxton Decl., Ex. A, Tabs 3 and 5), and that she ███████ (see Saxton Decl., Ex. A, Tabs 74 and 75).

▪ Qualcomm claims that Broadcom erroneously asserts ████████. Qualcomm undeniably asserted that there was no evidence that any Qualcomm employee attending JVT meetings knew of the patents-in-suit. (See Saxton Decl., Ex. Nos. FF and Ex. II.) It is now clear that ██████d (see id., Ex. A, Tabs 28, 29, 30, 31, 32, and 120), ███████. (See id. at Tabs 98, 120.)

### D. An Evidentiary Hearing May Be Necessary To Determine The Circumstances Surrounding Qualcomm's Misconduct.

Qualcomm has repeatedly claimed in its Opposition to this Motion, as well as in briefing regarding Broadcom's Motion for Attorneys' Fees, that its attorneys acted in good faith in the collection and production of documents, and in the presentation of arguments and testimony. (Opp. at 22-24; Attorneys' Fees Opp. at 3, 6, 9.) By making these claims, Qualcomm has necessarily put the conduct and intent of its attorneys at issue. Yet Qualcomm has provided no declaration, testimony, or other evidence of its attorneys' good faith. Instead, it offered "facts" from its new litigation counsel purportedly explaining its conduct with no declaration support, and then has asserted the attorney-client privilege: "The circumstances surrounding the failure to produce discoverable documents necessarily implicate attorney-client communications, and QUALCOMM is unable to explain these circumstances without compromising the attorney-client privilege." (Attorneys' Fees Opp Opp. at 6, n.3.)[11]

---

[11] See also Saxton Supp. Decl., Ex. A at 157-58 "If you want Jim Batchelder right here right now to make an officer of the court representation to you, I'll have him do that. But what I'm worried about is this good capable trial lawyer

But it is well-settled that Qualcomm cannot claim that its attorneys acted in good faith, then hide behind the attorney-client privilege to prevent Broadcom from investigating that assertion. "The attorney-client privilege was intended as a shield, not as a sword. . . . [T]his means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). By asserting that its attorneys acted in good faith, Qualcomm has waived the attorney-client privilege because "under Federal common law, a litigant waives the attorney-client privilege by putting the lawyer's performance at issue." *Hamilton v. Willms*, 02-CV-6583, 2007 WL 707518, at *8 (E.D. Cal. Mar. 6, 2007).

Because Qualcomm has refused to fully and voluntarily explain the circumstances regarding its substantial discovery failures, its presentation of inaccurate and misleading testimony and evidence during trial and at the post-trial equitable hearing, and its post-trial refusal to affirmatively search for additional responsive documents, the Court cannot and should not accept Qualcomm's new counsel's explanation of its actions. If the Court believes that further information is needed for it to determine appropriate remedies, it should permit Broadcom to conduct further discovery (as set forth in Broadcom's Motion for Sanctions at 24), and to then schedule an evidentiary hearing to determine the circumstances surrounding, and full scope of, Qualcomm's misconduct, and how best to sanction, deter, and prevent future misconduct.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Broadcom's opening memorandum, Broadcom respectfully requests that the Court grant Broadcom's Motion for Sanctions and enter an Order with the relief requested by Broadcom.

Dated:   June 29, 2007           MCKENNA LONG & ALDRIDGE LLP

WILMER CUTLER PICKERING HALE AND DORR LLP

By: _____
Attorneys for Defendant/Counterclaim Plaintiff
Broadcom Corporation

---

sitting to my left is going to say, ah-ha, waive the attorney/client privilege. I do not want to waive any attorney/client privilege. . . ."; *see also* 164-65.

*Contains Qualcomm Confidential Business Information – Subject to Protective Order*      - 10 -                    05 CV 1958