# Exhibit B

1  David E. Kleinfeld (Bar No. 110734)
   Barry J. Tucker (Bar No. 164163
2  HELLER EHRMAN LLP
   4350 La Jolla Village Drive, 7th Floor
3  San Diego, CA 92122
   Telephone: (858) 450-8400
4
   Robert T. Haslam (Bar No. 71134)
5  Nitin Subhedar (Bar No. 171802)
   HELLER EHRMAN LLP
6  275 Middlefield Road
   Menlo Park, CA 94025
7  Telephone: (650) 324-7000
8  James R. Batchelder (Bar No. 136347)
   DAY CASEBEER MADRID & BATCHELDER LLP
9  20300 Stevens Creek Blvd., Suite 400
   Cupertino, CA 95014
10 Telephone: (408) 873-0110
11 Louis M. Lupin (Bar No. 120846)
   Alexander H. Rogers (Bar No. 131879)
12 Roger Martin (Bar No. 195003)
   QUALCOMM INCORPORATED
13 5775 Morehouse Drive
   San Diego, CA 92121
14 Telephone: (858) 658-1121
15 Attorneys for Plaintiff and Counterdefendant
   QUALCOMM INCORPORATED
16

17                    UNITED STATES DISTRICT COURT

18                  SOUTHERN DISTRICT OF CALIFORNIA

19 QUALCOMM INCORPORATED,            05 CV 1958 B (BLM)

20              Plaintiff,            **QUALCOMM INCORPORATED'S CORRECTED
                                      SUPPLEMENTAL PRELIMINARY DISCLOSURES
21      v.                            OF ASSERTED CLAIMS, ACCUSED PRODUCTS, AND
                                      INFRINGEMENT CONTENTIONS RELATING TO
22 BROADCOM CORPORATION,             U.S. PATENT NOS. 5,576,767 AND 5,452,104**

23              Defendant.

24 BROADCOM CORPORATION,

25              Counterclaimant,

26      v.

27 QUALCOMM INCORPORATED,

28              Counterdefendant.

---

385331_2.doc

QUALCOMM'S CORR SUPP PRELIM DISCLOSURES        CASE NO. 05CV1958 B (BLM)
OF ASSERTED CLAIMS, ACCUSED PRODUCTS, &
INFRINGEMENT CONTS RE '767 & '104 PATENTS

                        **Exhibit B-1**

1    Pursuant to the Court's Case Management Conference Order Regulating Discovery and

2    Other Pretrial Proceedings, dated February 15, 2006, Plaintiff and Counterdefendant QUALCOMM

3    Incorporated ("QUALCOMM") hereby submits its preliminary disclosure of asserted claims and

4    preliminary infringement contentions, with regard to United States Patent Nos. 5,576,767 and

5    5,452,104, assigned to QUALCOMM.  This disclosure supplements QUALCOMM's Supplemental

6    Preliminary Disclosures of Asserted Claims, Accused Products, and Infringement Contentions

7    Relating to U.S. Patent Nos. 5,576,767 and 5,452,104, served on July 20, 2006.  The statements

8    below are based on QUALCOMM's information and belief to date.  Discovery as to Broadcom's

9    infringement is ongoing.  Accordingly, QUALCOMM reserves the right to modify, amend, or

10   supplement this disclosure, including but not limited to the right to add or delete asserted claims or

11   accused products and the right to modify or amend these contentions, in light of any facts learned

12   during further investigation or discovery.

13   **I.     ASSERTED CLAIMS**

14       Based on information obtained to date, the importation, manufacture, use, sale, or offer for

15   sale of the following Broadcom devices infringe the QUALCOMM patents-in-suit.  The asserted

16   claims for each patent are identified in the claim charts attached hereto as Exhibits 1-2.

17   **II.    ACCUSED BROADCOM PRODUCTS**

18       The products accused of infringing U.S. Patent No. 5,576,767 include, without limitation, at

19   least Broadcom's Toshiba Creation System, BCM2701, BCM2702, BCM2705, BCM2722,

20   BCM2724, BCM2725, BCM2730, other members of the BCM27xx family of mobile multimedia

21   processors, associated codec software, and emulations of the preceding, including FPGA emulations.

22       The products accused of infringing U.S. Patent No. 5,452,104 include, without limitation, at

23   least Broadcom's BCM7400, BCM7401, BCM7402, BCM7411, BCM7411D, other members of the

24   BCM74xx family of digital video decoders, BCM97400, BCM97401, BCM97411, BCM97395,

25   BCM2152, Toshiba Creation System, BCM2701, BCM2702, BCM2705, BCM2722, BCM2724,

26   BCM2725, BCM2730, other members of the BCM27xx family of mobile multimedia processors,

27   associated H.264 codec software, and emulations of the preceding, including FPGA emulations.

28       QUALCOMM's infringement contentions, including QUALCOMM's contentions for claim

385331_2.doc

QUALCOMM'S CORR SUPP PRELIM DISCLOSURES        1                   CASE NO. 05CV1958 B (BLM)
OF ASSERTED CLAIMS, ACCUSED PRODUCTS, &
INFRINGEMENT CONTS RE '767 & '104 PATENTS

**Exhibit B-2**

1  elements governed by 35 U.S.C. § 112 ¶ 5, with respect to the accused products and the asserted

2  claims of the QUALCOMM patents-in-suit, are set forth in the claim charts attached hereto as

3  Exhibits 1-2.

4  Dated:  July 26, 2006

                                  DAY CASEBEER
                                  MADRID & BATCHELDER LLP

By: Bradley A. Waugh

Attorneys for Plaintiff and Counterdefendant
QUALCOMM Incorporated

QUALCOMM'S CORR SUPP PRELIM DISCLOSURES
OF ASSERTED CLAIMS, ACCUSED PRODUCTS, &
INFRINGEMENT CONTS RE '767 & '104 PATENTS

2

CASE NO. 05CV1958 B (BLM)

Exhibit B-3

185331_2.doc

QUALCOMM's Preliminary Infringement Contentions for U.S. Patent No. 5,576,767

| Claim No. | Claim Language | Infringement |
|---|---|---|
| 1 pre | 1. An interframe video compression system comprising: | On information and belief, at least Broadcom's Toshiba Creation System, BCM2701, BCM2702, BCM2705, BCM2722, BCM2724, BCM2725, BCM2730, other members of the BCM27xx family of mobile multimedia processors, associated codec software, and emulations of the preceding, including FPGA emulations, conform to, comply with, and/or support H.264. *See* Product Briefs for each product, available at http://www.broadcom.com. Collectively, such products are the "accused Broadcom AVC encoder products."

The preamble of this claim is not limiting, in whole or in part. However, assuming for present purposes (without admitting) that the preamble is a limitation of this claim, the accused Broadcom AVC encoder products satisfy the preamble both literally and under the doctrine of equivalents.

The system described and/or defined in ITU-T Recommendation H.264: Advanced Video Coding for Generic Audiovisual Services (03/2005), also known as MPEG-4 Part 10 and/or ISO/IEC 14496-10 [hereinafter H.264 Standard], together with H.264/AVC Reference Software Encoder Documentation, as viewed at http://iphome.hhi.de/suehring/tml/doc/lenc/html/index.html (last viewed March 10, 2006) [hereinafter Reference Software], and/or any device implementing or practicing H.264, is an interframe video compression system.

H.264 Standard at § 0.6 ("Inter coding uses motion vectors for block-based inter prediction to exploit temporal statistical dependencies between different pictures."); § 8.4 ("Inter prediction process").

Thus, the accused Broadcom AVC encoder products literally satisfy this preamble. If the accused Broadcom AVC encoder products do not literally |

Ex. 1-1

388045_2.doc

1

**Exhibit B-4**

## QUALCOMM's Preliminary Infringement Contentions for U.S. Patent No. 5,576,767

| Claim No. | Claim Language | Infringement |
|---|---|---|
| | | satisfy this preamble then at a minimum the accused Broadcom AVC encoder products satisfy the preamble under the doctrine of equivalents. As shown by at least the evidence cited above the accused Broadcom AVC encoder products perform substantially the same function, in substantially the same way, to achieve substantially the same result as this preamble. In addition, the differences, if any, between the accused Broadcom AVC encoder products and this preamble are insubstantial differences at most. One of ordinary skill in the art to which this patent pertains would understand that corresponding elements of the accused Broadcom AVC encoder products are interchangeable or substitutable for this preamble, and the accused Broadcom AVC encoder products do not play a role that is substantially different from this preamble. |
| 1a | a first motion predictor having an input for receiving a block of pixel data and having an output for providing a first image prediction; | This limitation is satisfied by H.264-compliant products.  H.264 Standard at § 0.6 ("Inter coding uses motion vectors for block-based inter prediction to exploit temporal statistical dependencies between different pictures… Motion vectors and intra prediction modes may be specified for a variety of block sizes in the picture.") ("prediction residual."); § 0.6.3 ("A macroblock can be further partitioned for inter prediction.  The selection of the size of inter prediction partitions is a result of a trade-off between the coding gain provided by using motion compensation with smaller blocks and the quantity of data needed to represent the data for motion compensation. … Typically, the encoder calculates appropriate motion vectors and other data elements represented in the video data stream."); § 6.4.2 (inter mode block and sub-block partitions);  § 8.4 (describing recovery of motion vectors in the decoder); *Text Description of Joint Model Reference Encoding Methods and Decoding Concealment Methods*, Document No. JVT-N046 [hereinafter JVT-N046] at § 2.1.2.2 ("Note that each partition has its own unique motion vector for the use of motion-compensated prediction of the partition … Perform motion estimation and reference frame selection for |

Ex. 1-2

**Exhibit B-5**

388045_2.doc

2

QUALCOMM's Preliminary Infringement Contentions for U.S. Patent No. 5,452,104

| Claim No. | Claim Language | Infringement |
|---|---|---|
| 3 pre | 3. In an adaptive block size compression system wherein a block of pixel data is transformed to AC and DC discrete cosine transform (DCT) coefficient data for a block and constituent sub-blocks of pixel data, and wherein the AC and DC DCT coefficient values of a composite block of selected ones of said block and constituent sub-blocks of pixel data are provided for transmission, an apparatus for compressing said DC DCT coefficient values comprising: | The preamble of this claim is not limiting, in whole or in part. However, assuming for present purposes (without admitting) that the preamble is a limitation of this claim, the accused Broadcom AVC encoder products satisfy the preamble both literally and under the doctrine of equivalents.<br><br>The system described and/or defined in ITU-T Recommendation H.264: Advanced Video Coding for Generic Audiovisual Services (03/2005), also known as MPEG-4 Part 10 and/or ISO/IEC 14496-10 ("the H.264 Standard"), including §§ 8.3, 8.3.1.2, and 8.3.2.2, together with H.264/AVC Reference Software Encoder Documentation, available at http://iphome.hhi.de/suehring/tml/doc/lenc/html/index.html (last viewed March 10, 2006) ("Encoder Reference Software") (collectively, the H.264 Standard and the Encoder Reference Software are referred to herein as "H.264"), and/or any device implementing or practicing H.264, is an "adaptive block size compression system."<br><br>There are numerous instances in H.264 where a block of pixel data is transformed to AC and DC DCT coefficient data, or its equivalent, and where AC and DC DCT coefficient values of a composite block, or their equivalents, are provided for transmission. *E.g.*, ITU-T Recommendation H.264 § 0.6 at pp. 2-4; H.264 Reference Software Encoder: block.c Source File; H.264 Reference Software Encoder: transform8x8.c Source File.<br><br>On information and belief, at least Broadcom's Toshiba Creation System, BCM2701, BCM2702, BCM2705, BCM2722, BCM2724, BCM2725, BCM2730, other members of the BCM27xx family of mobile multimedia processors, associated H.264 codec software, and emulations of the preceding, including FPGA emulations, conform to, comply with, and/or support H.264. *See* Product Briefs for each product, available at http://www.broadcom.com. Collectively, such products are the "accused |

1

Ex. 2-1

**Exhibit B-6**

# QUALCOMM's Preliminary Infringement Contentions for U.S. Patent No. 5,452,104

| Claim No. | Claim Language | Infringement |
|---|---|---|
| | | Broadcom AVC encoder products." |
| | | Thus, the accused Broadcom AVC encoder products literally satisfy this preamble. If the accused Broadcom AVC encoder products do not literally satisfy this preamble then at a minimum the accused Broadcom AVC encoder products satisfy the preamble under the doctrine of equivalents. As shown by at least the evidence cited above the accused Broadcom AVC encoder products perform substantially the same function, in substantially the same way, to achieve substantially the same result as this preamble. In addition, the differences, if any, between the accused Broadcom AVC encoder products and this preamble are insubstantial differences at most. One of ordinary skill in the art to which this patent pertains would understand that corresponding elements of the accused Broadcom AVC encoder products are interchangeable or substitutable for this preamble, and the accused Broadcom AVC encoder products do not play a role that is substantially different from this preamble. |
| 3a | discrete quadtree means for receiving at least one block of data representing said block of pixel data, performing a plurality of DCT operations to provide AC and DC DQT coefficient values, with a first DCT operation performed on said at least one block of data to provide first sub-blocks of AC and DC DQT coefficient values, performing at least one additional DCT operation wherein each of said at least one additional DCT operation is performed on resultant DC DQT coefficient data of a preceding DCT operation, and selecting ones of | This limitation is a means-plus-function limitation within the meaning of 35 U.S.C. § 112, ¶ 6. The functions performed by this limitation are: (1) receiving at least one block of data representing said block of pixel data, (2) performing a plurality of DCT operations to provide AC and DC DQT coefficient values, with a first DCT operation performed on said at least one block of data to provide first sub-blocks of AC and DC DQT coefficient values, performing at least one additional DCT operation wherein each of said at least one additional DCT operation is performed on resultant DC DQT coefficient data of a preceding DCT operation, and (3) selecting ones of AC and DC DQT coefficient values to provide a DQT composite block of AC and DC coefficient values. The corresponding structure(s) for each function are found in the specification of the '104 patent, and set forth more fully in QUALCOMM's portion of the Joint Claim Construction Chart for the '104 patent, QUALCOMM's arguments to the Court in support of claim |

Ex. 2-2

**Exhibit B-7**

388044_2.doc

2

# Exhibit C



David E. Kleinfeld (Bar No. 110734)
Barry J. Tucker (Bar No. 164163
HELLER EHRMAN LLP
4350 La Jolla Village Drive, 7th Floor
San Diego, CA  92122
Telephone: (858) 450-8400

Robert T. Haslam (Bar No. 71134)
Nitin Subhedar (Bar No. 171802)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025
Telephone: (650) 324-7000

James R. Batchelder (Bar No. 136347)
DAY CASEBEER MADRID & BATCHELDER LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, CA  95014
Telephone: (408) 873-0110

Louis M. Lupin (Bar No. 120846)
Alexander H. Rogers (Bar No. 131879)
Roger Martin (Bar No. 195003)
QUALCOMM INCORPORATED
5775 Morehouse Drive
San Diego, CA  92121
Telephone: (858) 658-1121

Attorneys for Plaintiff and Counterdefendant
QUALCOMM INCORPORATED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>BROADCOM CORPORATION,<br><br>Defendant. | 05 CV 1958 B (BLM)<br><br>**QUALCOMM INCORPORATED'S SECOND SUPPLEMENTAL PRELIMINARY DISCLOSURES OF ASSERTED CLAIMS, ACCUSED PRODUCTS, AND INFRINGEMENT CONTENTIONS RELATING TO U.S. PATENT NOS. 5,576,767 AND 5,452,104** |
| BROADCOM CORPORATION,<br><br>Counterclaimant,<br><br>v.<br><br>QUALCOMM INCORPORATED,<br><br>Counterdefendant. | |

QUALCOMM'S 2D SUPP PRELIM DISCLOSURES OF
ASSERTED CLAIMS, ACCUSED PRODUCTS, &
INFRINGEMENT CONTS RE '767 & '104 PATENTS

CASE NO. 05CV1958 B (BLM)

**Exhibit C-1**

1    Pursuant to the Court's Case Management Conference Order Regulating Discovery and

2    Other Pretrial Proceedings, dated February 15, 2006, Plaintiff and Counterdefendant QUALCOMM

3    Incorporated ("QUALCOMM") hereby submits its preliminary disclosure of asserted claims and

4    preliminary infringement contentions, with regard to United States Patent Nos. 5,576,767 and

5    5,452,104, assigned to QUALCOMM.  This disclosure supplements QUALCOMM's Corrected

6    Supplemental Preliminary Disclosures of Asserted Claims, Accused Products, and Infringement

7    Contentions Relating to U.S. Patent Nos. 5,576,767 and 5,452,104, served on July 26, 2006.  The

8    statements below are based on QUALCOMM's information and belief to date.  Discovery as to

9    Broadcom's infringement is ongoing.  Accordingly, QUALCOMM reserves the right to modify,

10   amend, or supplement this disclosure, including but not limited to the right to add or delete asserted

11   claims or accused products and the right to modify or amend these contentions, in light of any facts

12   learned during further investigation or discovery.

13   **I.      ASSERTED CLAIMS**

14   Based on information obtained to date, the importation, manufacture, use, sale, or offer for

15   sale of the following Broadcom devices infringe the QUALCOMM patents-in-suit.  The asserted

16   claims for each patent are identified in the claim charts attached hereto as Exhibits 1-2.

17   **II.     ACCUSED BROADCOM PRODUCTS**

18   The products accused of infringing U.S. Patent No. 5,576,767 include, without limitation, at

19   least Broadcom's Toshiba Creation System, BCM2701, BCM2702, BCM2705, BCM2722,

20   BCM2724, BCM2725, BCM2730, VideoCoreIII, BCM2707, other members of the BCM27xx

21   family of mobile multimedia processors, associated codec software, and emulations, including

22   FPGA emulations, of H.264 modules and/or software of the preceding.

23   The products accused of infringing U.S. Patent No. 5,452,104 include, without limitation, at

24   least Broadcom's BCM7400, BCM7401, BCM7402, BCM7411, BCM7411D, other members of the

25   BCM74xx family of digital video decoders, BCM97400, BCM97401, BCM97411, BCM97395,

26   BCM2133, BCM2152, Toshiba Creation System, BCM2701, BCM2702, BCM2705, BCM2722,

27   BCM2724, BCM2725, BCM2730, VideoCoreIII, BCM2707, other members of the BCM27xx

28   family of mobile multimedia processors, associated H.264 codec software, and emulations, including

QUALCOMM's 2D SUPP PRELIM DISCLOSURES OF          1          CASE NO. 05CV1958 B (BLM)
ASSERTED CLAIMS, ACCUSED PRODUCTS, &
INFRINGEMENT CONTS RE '767 & '104 PATENTS                    **Exhibit C-2**

385331_4

1   FPGA emulations, of H.264 modules and/or software of the preceding.

2        QUALCOMM's infringement contentions, including QUALCOMM's contentions for claim

3   elements governed by 35 U.S.C. § 112 ¶ 5, with respect to the accused products and the asserted

4   claims of the QUALCOMM patents-in-suit, are set forth in the claim charts attached hereto as

5   Exhibits 1-2.

6   Dated:  August 23, 2006                          DAY CASEBEER
                                                      MADRID & BATCHELDER LLP
7

8

9                                           By: _Bradley A Waugh_____

10                                                 Bradley A. Waugh

11                                          Attorneys for Plaintiff and Counterdefendant
                                            QUALCOMM Incorporated
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUALCOMM's 2D SUPP PRELIM DISCLOSURES OF
ASSERTED CLAIMS, ACCUSED PRODUCTS, &         2        CASE NO. 05CV1958 B (BLM)
INFRINGEMENT CONTS RE '767 & '104 PATENTS
                                   Exhibit C-3

## QUALCOMM's Preliminary Infringement Contentions for U.S. Patent No. 5,576,767

| Claim No. | Claim Language | Infringement |
|---|---|---|
| 1 pre | 1. An interframe video compression system comprising: | On information and belief, at least Broadcom's Toshiba Creation System, BCM2701, BCM2702, BCM2705, BCM2722, BCM2724, BCM2725, BCM2730, VideoCoreII, BCM2707, other members of the BCM27xx family of mobile multimedia processors, associated codec software, and emulations of the preceding, including FPGA emulations, conform to, comply with, and/or support H.264. *See* Product Briefs for each product, available at http://www.broadcom.com.  Collectively, such products are the "accused Broadcom AVC encoder products." |
| | | The preamble of this claim is not limiting, in whole or in part.  However, assuming for present purposes (without admitting) that the preamble is a limitation of this claim, the accused Broadcom AVC encoder products satisfy the preamble both literally and under the doctrine of equivalents. |
| | | The system described and/or defined in ITU-T Recommendation H.264: Advanced Video Coding for Generic Audiovisual Services (03/2005), also known as MPEG-4 Part 10 and/or ISO/IEC 14496-10 [hereinafter H.264 Standard], together with H.264/AVC Reference Software Encoder Documentation, as viewed at http://iphome.hhi.de/suehring/tml/doc/lenc/html/index.html (last viewed March 10, 2006) [hereinafter Reference Software], and/or any device implementing or practicing H.264, is an interframe video compression system. |
| | | H.264 Standard at § 0.6 ("Inter coding uses motion vectors for block-based inter prediction to exploit temporal statistical dependencies between different pictures."); § 8.4 ("Inter prediction process"). |
| | | Thus, the accused Broadcom AVC encoder products literally satisfy this preamble.  If the accused Broadcom AVC encoder products do not literally |

Ex 1-1

**Exhibit C-4**

388045_3

1

# QUALCOMM's Preliminary Infringement Contentions for U.S. Patent No. 5,576,767

| Claim No. | Claim Language | Infringement |
|---|---|---|
| | | satisfy this preamble then at a minimum the accused Broadcom AVC encoder products satisfy the preamble under the doctrine of equivalents. As shown by at least the evidence cited above the accused Broadcom AVC encoder products perform substantially the same function, in substantially the same way, to achieve substantially the same result as this preamble. In addition, the differences, if any, between the accused Broadcom AVC encoder products and this preamble are insubstantial differences at most. One of ordinary skill in the art to which this patent pertains would understand that corresponding elements of the accused Broadcom AVC encoder products are interchangeable or substitutable for this preamble, and the accused Broadcom AVC encoder products do not play a role that is substantially different from this preamble. |
| 1a | a first motion predictor having an input for receiving a block of pixel data and having an output for providing a first image prediction; | This limitation is satisfied by H.264-compliant products. H.264 Standard at § 0.6 ("Inter coding uses motion vectors for block-based inter prediction to exploit temporal statistical dependencies between different pictures.... Motion vectors and intra prediction modes may be specified for a variety of block sizes in the picture.") ("prediction residual."); § 0.6.3 ("A macroblock can be further partitioned for inter prediction. The selection of the size of the inter prediction partitions is a result of a trade-off between the coding gain provided by using motion compensation with smaller blocks and the quantity of data needed to represent the data for motion compensation. ... Typically, the encoder calculates appropriate motion vectors and other data elements represented in the video data stream."); § 6.4.2 (inter mode block and sub-block partitions); § 8.4 (describing recovery of motion vectors in the decoder); *Text Description of Joint Model Reference Encoding Methods and Decoding Concealment Methods*, Document No. JVT-N046 [hereinafter JVT-N046] at § 2.1.2.2 ("Note that each partition has its own unique motion vector for the use of motion-compensated prediction of the partition ... Perform motion estimation and reference frame selection for |

2

QUALCOMM's Preliminary Infringement Contentions for U.S. Patent No. 5,452,104

| Claim No. | Claim Language | Infringement |
|---|---|---|
| 3 pre | 3. In an adaptive block size compression system wherein a block of pixel data is transformed to AC and DC discrete cosine transform (DCT) coefficient data for a block and constituent sub-blocks of pixel data, and wherein the AC and DC DCT coefficient values of a composite block of selected ones of said block and constituent sub-blocks of pixel data are provided for transmission, an apparatus for compressing said DC DCT coefficient values comprising: | The preamble of this claim is not limiting, in whole or in part. However, assuming for present purposes (without admitting) that the preamble is a limitation of this claim, the accused Broadcom AVC encoder products satisfy the preamble both literally and under the doctrine of equivalents.

The system described and/or defined in ITU-T Recommendation H.264: Advanced Video Coding for Generic Audiovisual Services (03/2005), also known as MPEG-4 Part 10 and/or ISO/IEC 14496-10 ("the H.264 Standard"), including §§ 8.3, 8.3.1.2, and 8.3.2.2, together with H.264/AVC Reference Software Encoder Documentation, available at http://iphome.hhi.de/suehring/tml/doc/lenc/html/index.html (last viewed March 10, 2006) ("Encoder Reference Software") (collectively, the H.264 Standard and the Encoder Reference Software are referred to herein as "H.264"), and/or any device implementing or practicing H.264, is an "adaptive block size compression system."

There are numerous instances in H.264 where a block of pixel data is transformed to AC and DC DCT coefficient data, or its equivalent, and where AC and DC DCT coefficient values of a composite block, or their equivalents, are provided for transmission. *E.g.*, ITU-T Recommendation H.264 § 0.6 at pp. 2-4; H.264 Reference Software Encoder: block.c Source File; H.264 Reference Software Encoder: transform8x8.c Source File.

On information and belief, at least Broadcom's Toshiba Creation System, BCM2701, BCM2702, BCM2705, BCM2722, BCM2724, BCM2725, BCM2730, VideoCoreII, BCM2707, other members of the BCM27xx family of mobile multimedia processors, associated H.264 codec software, and emulations of the preceding, including FPGA emulations, conform to, comply with, and/or support H.264. *See* Product Briefs for each product, available at http://www.broadcom.com. Collectively, such products are the |

## QUALCOMM's Preliminary Infringement Contentions for U.S. Patent No. 5,452,104

| Claim No. | Claim Language | Infringement |
|---|---|---|
| | | "accused Broadcom AVC encoder products." |
| | | Thus, the accused Broadcom AVC encoder products literally satisfy this preamble. If the accused Broadcom AVC encoder products do not literally satisfy this preamble then at a minimum the accused Broadcom AVC encoder products satisfy the preamble under the doctrine of equivalents. As shown by at least the evidence cited above the accused Broadcom AVC encoder products perform substantially the same function, in substantially the same way, to achieve substantially the same result as this preamble. In addition, the differences, if any, between the accused Broadcom AVC encoder products and this preamble are insubstantial differences at most. One of ordinary skill in the art to which this patent pertains would understand that corresponding elements of the accused Broadcom AVC encoder products are interchangeable or substitutable for this preamble, and the accused Broadcom AVC encoder products do not play a role that is substantially different from this preamble. |
| 3a | discrete quadtree means for receiving at least one block of data representing said block of pixel data, performing a plurality of DCT operations to provide AC and DC DQT coefficient values, with a first DCT operation performed on said at least one block of data to provide first sub-blocks of AC and DC DQT coefficient values, performing at least one additional DCT operation wherein each of said at least one additional DCT operation is performed on resultant DC DQT coefficient data of a preceding DCT operation, and selecting ones of | This limitation is a means-plus-function limitation within the meaning of 35 U.S.C. § 112, ¶ 6. The functions performed by this limitation are:  (1) receiving at least one block of data representing said block of pixel data, (2) performing a plurality of DCT operations to provide AC and DC DQT coefficient values, with a first DCT operation performed on said at least one block of data to provide first sub-blocks of AC and DC DQT coefficient values, performing at least one additional DCT operation wherein each of said at least one additional DCT operation is performed on resultant DC DQT coefficient data of a preceding DCT operation, and (3) selecting ones of AC and DC DQT coefficient values to provide a DQT composite block of AC and DC coefficient values.  The corresponding structure(s) for each function are found in the specification of the '104 patent, and set forth more fully in QUALCOMM's portion of the Joint Claim Construction Chart for the '104 patent, QUALCOMM's arguments to the Court in support of claim |

2

# Exhibit D

# EXHIBIT
# FILED UNDER
# SEAL

# Exhibit E

EXHIBIT
FILED UNDER
SEAL

# Exhibit F

# EXHIBIT
# FILED UNDER
# SEAL

# Exhibit G



1     UNITED STATES DISTRICT COURT

2     SOUTHERN DISTRICT OF CALIFORNIA

3

4   QUALCOMM, INC.,                ) Case No. 05CV1958-B(BLM)
                                   )
5           Plaintiff,             ) San Diego, California
                                   )
6   vs.                            ) Thursday
                                   ) January 11, 2007
7   BROADCOM CORPORATION,          ) 9:00 a.m.
                                   )
8           Defendant.             ) VOLUME III
    _____)

9

10                  TRANSCRIPT OF TRIAL
          BEFORE THE HONORABLE RUDI M. BREWSTER
11         UNITED STATES DISTRICT JUDGE, and a jury

12  APPEARANCES:

13  For the Plaintiff:          CRAIG H. CASEBEER, ESQ.
                                JAMES R. BATCHELDER, ESQ.
14                              CHRISTIAN E. MAMMEN, ESQ.
                                LEE PATCH, ESQ.
15                              JAIDEEP VENKATESAN, ESQ.
                                BRADLEY A. WAUGH, ESQ.
16                              Day Casebeer Madrid &
                                   Batchelder, LLP
17                              20300 Stevens Creek Boulevard
                                Suite 400
18                              Cupertino, California 95014
                                (408) 873-0110
19

20                              STANLEY YOUNG, ESQ.
                                Heller, Ehrman, LLP
21                              275 Middlefield Road
                                Menlo Park, California  94025
22                              (650) 324-7000

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

                                    Echo Reporting, Inc.

Exhibit G-1

III-ii

1  APPEARANCES (Cont'd):

2  For the Defendant:         JOHN J. REGAN, ESQ.
                              WILLIAM F. LEE, ESQ.
3                             VINITA FERRERA, ESQ.
                              LOUIS W. TOMPROS, ESQ.
4                             ROBERT S. BREWER, SR., ESQ.
                              MATTHEW DELGIORNO, ESQ.
5                             JAMES S. McNEILL, ESQ.
                              KATE SAXTON, ESQ.
6                             DONALD STEINBERG, ESQ.
                              Wilmer, Cutler, Pickering,
7                              Hale and Dorr, LLP
                              60 State Street
8                             Boston, Massachusetts  02109
                              (617) 526-6453
9

10 Transcript Ordered by:     JAMES R. BATCHELDER, ESQ.
11

12 Court Recorder:            Jennie Hinkle
                              United States District Court
13                            940 Front Street
                              San Diego, California  92101
14

15 Transcriber:               Shonna Mowrer, Jordan Keilty,
                               Carol Abbott
16                            Echo Reporting, Inc.
                              6336 Greenwich Drive
17                            Suite B
                              San Diego, California 92122
18                            (858) 453-7590

19

20

21

22

23

24

25

Echo Reporting, Inc.

**Exhibit G-2**

III-62

1 Q     What is residual data?

2 A     Residual data is pixel data, one stage of the chain.

3 In fact, it's quite commonly pixel data at this stage here,

4 if there's a motion prediction process, after the motion

5 prediction process.

6 Q     To what extent is residual data a kind of pixel data?

7 A     Well, my opinion is that because residual data

8 specifies the brightness and/or color of pixels, that it is

9 pixel data, according to claim construction.

10 Q     All right.  Let's now turn to the analysis you did on

11 infringement of the 104 patent.  And let's start with the

12 H.264 standard that you address in your book.

13      To what extent have you formed any opinions about the

14 relationship between the 104 patent on the one hand and the

15 H.264 standard on the other?

16 A     Well, in my opinion, the 104 patent -- the claims of

17 the patent map onto the H.264 standard, so that devices or

18 systems that practice H.264 actually practice claims of the

19 104 patent.

20 Q     Is there any difference between encoders and decoders

21 in that regard?

22 A     Could you repeat that, please.

23 Q     Is there any difference between encoders and decoders

24 in that regard?

25 A     There is a difference.  Remember I mentioned that the

Echo Reporting, Inc.

**Exhibit G-3**

III-63

1  standard describes the decoding process precisely.  The

2  standard sets out what a decoder has to do.  And I verified

3  for myself that there is a direct mapping between the

4  decoding process in the standard and certain claims of the

5  patent.

6      An encoder, an H.264 encoder is not actually specified

7  in the standard, but it has to -- just like on this diagram,

8  the encoder and the decoder have to follow, if you like,

9  equivalent steps.  The encoder has to follow the necessary

10 steps, the inverse of the decoding steps, if that makes

11 sense.  And so an encoder has to carry out the equivalent

12 transform and quantization steps that are described in

13 inverse form in the standard.

14 Q    All right.  Have you formed an opinion as to whether

15 Broadcom's products infringe the 104 patent because they're

16 H.264 products?

17 A    I have formed an opinion that products such as the

18 Broadcom products in question that are compliant with H.264

19 infringe these claims of the patent that I've been talking

20 about.

21 Q    And have you prepared a summary graphic to illustrate

22 that point?

23 A    I have.

24 Q    Can I see RIC-39, please.

25     Would you explain this to the jury.

**Exhibit G-4**

III-64

1 A    On the left here, I'm showing a high-level selection of

2 Broadcom's products that I've analyzed that, to the best of

3 my knowledge, conform to the H.264 standard.  The standard

4 itself is a document published by the ITUT and the --

5 sorry -- International Telecommunications Union and the

6 International Standards Organization.

7       And I've analyzed products and verified that, to the

8 best of my knowledge, they comply with the standard.  I've

9 analyzed the patent, and to the best of my knowledge, the

10 patent reads -- or the standard reads onto claims of the

11 patent.  So if a product complies with H.264, in my opinion

12 it also infringes claims of the patent.

13 Q    Can we see RIC-40, please.

14      What is this slide, Doctor Richardson?

15 A    This is really a summary of the evidence that I've

16 based my opinions on.  I've gone through different product

17 lines of Broadcom products, decoder chips, baseband

18 processor, software, software for mobile multi-media chips

19 and the Toshiba Creation System that we've already

20 discussed.  And based on product briefs for these, based on

21 high level and detailed design documentations, testing

22 documents, and also certain portions of deposition testimony

23 related to this case, I've reached the conclusion that

24 these -- that certain products are compliant with the H.264

25 standard.

**Exhibit G-5**

III-65

1 Q    So in addition to this analysis or the relationship

2 between the 104 patent and the H.264 standard, does your

3 infringement analysis under the 104 patent involve anything

4 else?

5 A    Well, what I've also done is looked at detailed design

6 documents for Broadcom products and verified that the

7 structures defined by the patent actually exist in those

8 products.  So to, if you like, provide a second stage of

9 verification beyond the fact that the products comply with

10 H.264, I've also checked whether the products contain the

11 structures described in the patent.

12 Q    All right.  Let's turn to Claim 13 of the 104 patent.

13      Can I see RIC-41, please.

14      Will you explain this slide.

15 A    This is the language of Claim 13 of the patent.

16 Q    And what have you color-coded here?

17 A    I have -- as previously, I've highlighted what I

18 believe to be the significant terms in each element of the

19 claim.

20 Q    All right.  Can we see RIC -- well, first of all, let

21 me ask you, in your infringement analysis, the Court has

22 explained to the jury that it has the Court's claim

23 construction of the 104 in their jury binders with a

24 glossary at the back with those definitions.  Have you

25 applied the Court's definitions in your infringement

**Exhibit G-6**

III-66

1 analysis?

2 A    Yes.  I've done my best to be consistent throughout the

3 analysis with the Court's construction of these terms.

4 Q    All right.  Why don't you take a look at how these

5 terms may look in a device.

6      Can we see RIC-47, please.

7      Can you explain what this is.

8 A    We've actually seen a diagram very like this already.

9 This outlines Doctor Lee's invention described in the patent

10 and maps the stages of that invention to the claims --

11 sorry -- to the elements of Claim 13 of the patent.  So you

12 see the block of pixel data.  And in the orange section

13 here, we're shown a series of DCT operations.  That's a

14 series of transforms.  And here is a set of transforms that

15 make up a first DCT operation, an additional DCT operation.

16 And you can see that this is performed in a second stage.

17 And then a selector here.

18      If I could just explain that briefly.  At the output of

19 the first set of DCTs, we have -- you can see -- well, if

20 you would count them up, you'd see 64 coefficients, eight

21 along, eight up.  The output of the second stage DCT, you

22 have four coefficients.  So this selector is picking out 60

23 of this green set here and all four of this set here and

24 selecting those for transmission.

25 Q    All right.  Let's take a look at your slide that blows

**Exhibit G-7**

# Exhibit H

COPY

1           UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF CALIFORNIA

3

4   QUALCOMM, INC.,              ) Case No. 05CV1958-B(BLM)
                                 )
5              Plaintiff,        ) San Diego, California
                                 )
6   vs.                          ) Tuesday,
                                 ) December 19, 2006
7   BROADCOM CORPORATION,        ) 9:00 a.m.
                                 )
8              Defendant.        )
                                 )
9   _____  )

10          TRANSCRIPT OF CONTINUED PRETRIAL CONFERENCE
                AND MOTIONS IN LIMINE HEARING
11         BEFORE THE HONORABLE RUDI M. BREWSTER
              UNITED STATES DISTRICT JUDGE
12
    APPEARANCES:
13
    For the Plaintiff:          CRAIG H. CASEBEER, ESQ.
14                              CHRISTIAN MAMMEN, ESQ.
                                JAMES R. BATCHELDER, ESQ.
15                              LEE PATCH, ESQ.
                                Day Casebeer Madrid &
16                                  Batchelder, LLP
                                20300 Stevens Creek Boulevard
17                              Suite 400
                                Cupertino, California 95014
18                              (408) 873-0110

19
                                STANLEY YOUNG, ESQ.
20                              Heller, Ehrman, LLP
                                275 Middlefield Road
21                              Menlo Park, California 94025
                                (650) 324-7000
22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

Echo Reporting, Inc.

**Exhibit H-1**

ii

```
 1  APPEARANCES:   (Cont'd.)

 2  For the Plaintiff:              ROGER MARTIN, ESQ.
                                    Qualcomm, Inc.
 3                                  5775 Morehouse Drive
                                    San Diego, California 92121
 4                                  (858) 845-3536

 5
    For the Defendant:              JOHN J. REGAN, ESQ.
 6                                  DONALD STEINBERG, ESQ.
                                    KATE SAXTON, ESQ.
 7                                  LOUIS W. TOMPROS, ESQ.
                                    VINITA FERRERA, ESQ.
 8                                  Wilmer, Cutler, Pickering,
                                     Hale and Dorr, LLP
 9                                  60 State Street
                                    Boston, Massachusetts 02109
10                                  (617) 526-6453

11
    Transcript Ordered by:         JAMES R. BATCHELDER, ESQ.
12

13  Court Recorder:                Jennie Hinkle
                                    United States District Court
14                                  940 Front Street
                                    San Diego, California 92101
15

16  Transcriber:                   Shonna D. Mowrer
                                    Echo Reporting, Inc.
17                                  6336 Greenwich Drive
                                    Suite B
18                                  San Diego, California 92122
                                    (858) 453-7590
19

20

21

22

23

24

25
```

**Exhibit H-2**

319

1  we.

2          MR. BATCHELDER:  No, we wouldn't have to.  But,

3  your Honor, my current plan is that we would do two things

4  to prove infringement.  One is that we prove H.264 infringes

5  and Broadcom admits that its products are H.264, and then

6  second just --

7          THE COURT:  264 infringes what?

8          MR. BATCHELDER:  It infringes the patents.  That

9  is, the descriptions of H.264 are pretty simple.  In fact,

10  they're -- it would make it easier for the jury to

11  understand we think.

12          THE COURT:  Are you saying 264 infringes the

13  patents?

14          MR. BATCHELDER:  Yes.

15          MR. MARTIN:  Products -- products built in

16  accordance with that specification.  It's a piece of paper.

17  If you follow the recipe on the piece of paper, you've built

18  an infringing product.

19          THE COURT:  Okay.  Well, I'm not going to decide

20  this tonight, but I'm just going to react to you.  It seems

21  to me if that's the way you want to try the case, then

22  you're going to take the whole load of laundry that goes

23  with it.  You're going to take all the evidence about 264's

24  generation and development by a committee to which Qualcomm

25  was a member, to which Qualcomm got minutes, to which

**Exhibit H-3**

1 Qualcomm had an obligation to reveal their IP, and which

2 they didn't, whether they knew about it or not.  They'll say

3 they didn't know about it.  The fact is they didn't reveal

4 it until three years after the 264 was adopted, and all that

5 should come in if Qualcomm is going to say that Broadcom is

6 infringing the 264.  Therefore, is infringing your patents.

7          MR. MARTIN:  You put a very difficult choice to us

8 because you've said that irrelevant information, that is,

9 information that could have no bearing on infringement or

10 validity of the patent you're going to allow to go to the

11 jury just because we say that the technical aspects of

12 H.264 --

13          THE COURT:  You make 264 --

14          MR. MARTIN:  I'm not making it anything.

15          THE COURT:  -- very relevant to the legal issues.

16          MR. MARTIN:  No, I'm not making -- I'm not making

17 the --

18          MR. YOUNG:  But the jury will not hear the waiver

19 issue.

20          THE COURT:  No, but the jury will hear some of the

21 same waiver testimony because --

22          MR. MARTIN:  Can you hear me out?

23          THE COURT:  -- you're going to claim that they're

24 using 264.  They're going to be entitled to show that 264 is

25 what it is, in part because of Qualcomm.

**Exhibit H-4**

321

1          MR. MARTIN:  Your Honor, let's just understand.
2  Evidence can be relevant for particular purposes.  And if
3  you want to let in --
4          THE COURT:  It can be relevant for five purposes.
5          MR. MARTIN:  Exactly.  Now, you tricked me, the
6  assertion -- Broadcom says "Qualcomm tricked us" can't be
7  relevant in any way to either infringement or validity.
8  It's an excuse.  It says, look, if I infringe it's because
9  you tricked me or I may -- or if I infringe, I should be let
10 off the hook because you infringe me, but it assumes it
11 has -- it has no bearing on whether we infringe or not.  So
12 if we let in evidence regarding H.264, we can't let in
13 evidence that bears on something other than infringement or
14 validity.  We can't -- we can't let in evidence that says
15 Qualcomm sat on its rights or Qualcomm didn't tell us.
16         THE COURT:  Then maybe the solution should be
17 unless they have a separate -- sometimes these complaints
18 and answers are pretty long.  Sometimes they have 20 or 30
19 separate affirmative defenses, and I don't know what you've
20 got in your answer on separate affirmative defenses.
21         MR. MARTIN:  Waiver.
22         THE COURT:  But if there is -- other than waiver.
23 If there is a separate affirmative defense like assumption
24 of risk, like contributory negligence, like invited error --
25         MR. YOUNG:  There is not, your Honor.

Echo Reporting, Inc.

**Exhibit H-5**

322

1        THE COURT:   -- but -- so assuming there's not,
2  then maybe the solution would be that the issue of waiver
3  now has a legal impact as well as an equitable one and we'd
4  try the waiver as an equitable -- as a legal --
5        MR. YOUNG:  The authority, though --
6        THE COURT:   -- and get a jury verdict on waiver as
7  well, and we'll try the whole thing together.
8        MR. REGAN:  That's exactly how to do it.
9        MR. YOUNG:  The authority though, your Honor, the
10  law is clear that waiver is an issue for the Court to decide
11  and not for the jury to decide, and we can put up slide
12  number seven.  I can read you this --
13        THE COURT:  I understand that law.  I can still
14  ask for an advisory verdict from the jury as to whether
15  they've established waiver.  If they say -- if they say
16  under these facts we think they have, then the Court can use
17  its discretion to find waiver or not.
18        MR. REGAN:  And that's exactly what I said at --
19        THE COURT:  That's called an advisory verdict.
20        MR. REGAN:  Your Honor, that's exactly what I said
21  at the outset.
22        MR. MARTIN:  And that uses the exact confusion --
23        THE COURT:  I wasn't going to do that.  I wasn't
24  going to do that because I thought I'd keep this place
25  clean.  I thought I'm going to try a patent infringement

Echo Reporting, Inc.

**Exhibit H-6**

1 suit, and now I'm told the patent infringement is the small

2 pimple on the great behind of this lawsuit and that the

3 elephant in the room is the 264.

4      MR. REGAN:  Your Honor, this is Doctor

5 Richardson's book, all right, on H.264, all right.  He is

6 the man who wrote in his words the fundamental book on the

7 topic.  He's the reason that they hired him as the expert.

8 It's the reason --

9      THE COURT:  Who wrote the book on that?

10      MR. REGAN:  Doctor Richardson, their expert, all

11 right.  It's the reason why you see in those preliminary

12 infringement contentions so much H.264.  It's the reason why

13 Mr. Batchelder in a very direct response to your question

14 rejected your view about how to try it.

15      THE COURT:  Let's think about this overnight,

16 gentlemen, but -- because we're coming thick and fast at

17 these points, and I'm learning stuff tonight that I had no

18 idea about before.  I thought I'm trying a little patent

19 case here.  This is not the case I thought I was trying.  So

20 let's think about it tonight, and we'll talk about it

21 tomorrow morning at 9:00 o'clock, but I'm telling you it's

22 not going to be all one way.  If we're going to -- if we're

23 going to use .264, it's going to come in with all of its

24 baggage.  If it stays out, none of the baggage is coming in.

25 But you're not going to have a little of both.  I mean

**Exhibit H-7**

324

1  that's not going to happen.  So I'll see you at 9:00 o'clock

2  tomorrow morning.

3           ALL:  Thank you, your Honor.

4       (Proceedings concluded.)

5

6           I certify that the foregoing is a correct

7  transcript from the electronic sound recording of the

8  proceedings in the above-entitled matter.

9

10  _____        _____
    Transcriber                      Date

11

12  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

13

14  _____
    L.L. FRANCISCO, President

15  Echo Reporting, Inc.

16

17

18

19

20

21

22

23

24

25

**Exhibit H-8**

# Exhibit I



```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3

 4 QUALCOMM, INC.,              ) Case No. 05CV1958-B(BLM)
                                )
 5          Plaintiff,          ) San Diego, California
                                )
 6 vs.                          ) Wednesday,
                                ) December 20, 2006
 7 BROADCOM CORPORATION,        ) 9:00 a.m.
                                )
 8          Defendant.          )
                                )
 9 _____  )

10         TRANSCRIPT OF CONTINUED PRETRIAL CONFERENCE
                  AND MOTIONS IN LIMINE
11        BEFORE THE HONORABLE RUDI M. BREWSTER
              UNITED STATES DISTRICT JUDGE

12 APPEARANCES:
13
   For the Plaintiff:
14                              CRAIG H. CASEBEER, ESQ.
                                JAMES R. BATCHELDER, ESQ.
                                LEE PATCH, ESQ.
15                              Day Casebeer Madrid &
                                   Batchelder, LLP
16                              20300 Stevens Creek Boulevard
                                Suite 400
17                              Cupertino, California 95014
                                (408) 873-0110
18

19                              STANLEY YOUNG, ESQ.
                                Heller, Ehrman, LLP
20                              275 Middlefield Road
                                Menlo Park, California 94025
21                              (650) 324-7000

22

23

24

25 Proceedings recorded by electronic sound recording;
   transcript produced by transcription service.
```

Echo Reporting, Inc.

**Exhibit I-1**

ii

1  APPEARANCES (Cont'd):

2

3  For the Plaintiff:              ROGER MARTIN, ESQ.
                                   Qualcomm, Inc.
                                   5775 Morehouse Drive
4                                  San Diego, California 92121
                                   (858) 845-3536

5

6
   For the Defendant:             JOHN J. REGAN, ESQ.
7                                  DONALD STEINBERG, ESQ.
                                   KATE SAXTON, ESQ.
8                                  LOUIS W. TOMPROS, ESQ.
                                   VINITA FERRARA, ESQ.
9                                  Wilmer, Cutler, Pickering,
                                    Hale and Dorr, LLP
10                                 60 State Street
                                   Boston, Massachusetts 02109
11                                 (617) 526-6453

12
   Transcript Ordered by:         JAMES R. BATCHELDER, ESQ.
13

14
   Court Recorder:                Jennie Hinkle
15                                 United States District Court
                                   940 Front Street
16                                 San Diego, California  92101

17
   Transcriber:                   Shonna D. Mowrer
18                                 Echo Reporting, Inc.
                                   6336 Greenwich Drive
19                                 Suite B
                                   San Diego, California 92122
20                                 (858) 453-7590

21

22

23

24

25

                                        Echo Reporting, Inc.

                            **Exhibit I-2**

18

1          THE COURT:  Well, okay.  But at least let's go --

2   let's agree to this, that I'm not excluding any evidence

3   pertaining to 264 or the JVT if the 264 is an element of the

4   Plaintiff's case for infringement.

5          MR. BATCHELDER:  We understand.

6          THE COURT:  Okay.  So we -- for now, that's

7   probably enough.  And the evidence will come in.  And we

8   don't have to have a pretrial -- a pretrial -- a first

9   trial, a bifurcated trial on any equitable issue of waiver.

10  If there are any equitable issues that have to still be

11  tried after the jury trial is over, we can do it at the end.

12         MR. BATCHELDER:  Thank you, sir.

13         THE COURT:  Okay.

14         MR. REGAN:  And that's fine with Broadcom, your

15  Honor.

16         THE COURT:  Okay.  Now, what's the next -- is that

17  the end of Qualcomm's motions?

18         MR. CASEBEER:  No, your Honor.  There was -- there

19  are a couple of others, but there was also one motion that

20  we started yesterday but did not finish, and that was with

21  respect to the Defendant's expert, Doctor Ramchandran

22  (phonetic) and his graduate school running or alleged

23  running of a second-stage DCT.  And I handed up to you the

24  case Amazon vs. Barnes & Noble.

25         THE COURT:  Yes.  Yeah.

# Exhibit J

**DLA PIPER**

DLA Piper US LLP
401 B Street, Suite 1700
San Diego, California  92101-4297
www.dlapiper.com

Timothy S. Blackford
tim.blackford@dlapiper.com
T  619.699.2986
F  619.764.6686

June 14, 2007

*VIA UPS OVERNIGHT*

Kate Saxton, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA  02109

Re:    **QUALCOMM Incorporated v. Broadcom Corporation**
       **Case No. 05-cv-1958 B (BLM)**

Dear Kate:

Please find enclosed QUALCOMM Incorporated's production documents bearing Bates
Numbers 1958QB1196390 – 1958QB1291940.

Produced herein are non-privileged e-mails and attachments on the computers of certain
QUALCOMM employees that are dated between 2000 and 2004, and that contain at least one
of the following terms:  JVT; Joint Video Team; AVC; Advanced Video Coding; H.264; H264;
MPEG-4 Part 10; MPEG4 Part 10; and Gary Sullivan.  The enclosed documents are produced
from the electronic files of the following custodians:  Jason Bremner, Mark Frankel, Paul
Jacobs, Sanjay Jha, Tom Kilpatrick, Louis Lupin, Roger Martin, Alex Rogers, and Gil Sih.

Also produced herein are non-privileged hard copy documents of certain QUALCOMM
employees.  A hard copy document search was conducted for all post-trial custodians, and a
good faith effort was made to locate documents dated between 2001 and 2004 and which
contained at least one of the following terms:  JVT; Joint Video Team; AVC; Advanced Video
Coding; H.264; H264; MPEG-4 Part 10; MPEG4 Part 10; and Gary Sullivan.  Documents were
located for some of the post-trial custodians, and the enclosed documents are produced from
the files of the following individuals:  Jae Choi, James Determan, Mark Frankel, Harinath
Garudadri, Chris Irvine, Sanjay Jha, A. Scott Ludwin, George Pappas, Viji Raveendran, Tom
Rouse, Gil Sih, Amnon Silberger, Ed Tiedemann, Kent Walker, Yan Ye, and Jay Yun.

We are currently assessing some documents for attorney-client privilege that would otherwise
fall within the above parameters.  Once we have concluded our privilege determinations for this
production, we will produce those documents that we conclude are non-privileged and will also
provide you with an updated privilege log.

**Exhibit J-1**



Kate Saxton, Esq.
June 14, 2007
Page Two

Please let me know if you have any questions regarding this production.

Very truly yours,

**DLA Piper US LLP**

Timothy S. Blackford

TSB:db
Enclosures
cc:     Bill Boggs, Esq. (w/o enclosures)
        Brian Foster, Esq. (w/o enclosures)
        James Batchelder, Esq. (w/o enclosures)
        Lee Patch, Esq. (w/o enclosures)
        Stanley Young, Esq. (w/o enclosures

SD\1747230.1

**Exhibit J-2**

# Exhibit K

1   ROBERT S. BREWER, JR. (SBN 65294)
     JAMES MCNEILL (SBN. 201663)
2   MCKENNA LONG & ALDRIDGE LLP
     750 B Street, Suite 3300
3   San Diego, CA  92101
     Telephone:    (619) 595-5400
4   Facsimile:    (619) 595-5450

5   WILLIAM F. LEE (admitted *pro hac vice*)
     MARK D. SELWYN (admitted *pro hac vice*)
6   WILMER CUTLER PICKERING
      HALE AND DORR LLP
7   60 State Street
     Boston, MA 02109
8   Telephone:  (617) 526-6000
     Facsimile:  (617) 526-5000

9

10  Attorneys for Defendant/Counterclaimant
    BROADCOM CORPORATION

11

12               **UNITED STATES DISTRICT COURT**

               **SOUTHERN DISTRICT OF CALIFORNIA**

13

14

| | |
|---|---|
| QUALCOMM INCORPORATED, | Case No.  05 CV 1958 B (BLM) |
| Plaintiff, | **BROADCOM CORPORATIONS'S FIRST SET OF INTERROGATORIES UNDER FED. R. CIV. P. 33 (NOS. 1-16)** |
| v. | |
| BROADCOM CORPORATION, Defendant. | Judge:       Hon. Rudi M. Brewster |
| AND RELATED COUNTERCLAIMS | |

21       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules

22  of this Court, defendant Broadcom Corporation ("Broadcom") requests that the plaintiff,

23  Qualcomm Incorporated ("Qualcomm"), answer the following interrogatories within 30 days

24  from the date of service hereof.

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
SAN DIEGO

05 CV 01958

**Exhibit K-1**

1       (c)     the date of such charge;

2       (d)     the patent(s) at issue and the patent claim(s) at issue;

3       (e)     a description of the resulting actions, the issues contested, and the result and/or

4  pending status; and

5       (f)     the identity of all documents that constitute or refer to such charge.

6  **Interrogatory No. 12**

7       Separately for each claim of each Qualcomm Patent, identify each secondary

8  consideration or other objective evidence of non-obviousness (e.g., commercial success, long-felt

9  need, commercial acquiescence, expressions of skepticism, copying, teaching away, failed

10  attempts by others, or simultaneous development), and for each such alleged secondary

11  consideration or other objective evidence of non-obviousness describe in detail the facts

12  underlying the alleged secondary consideration or other objective evidence of non-obviousness.

13  **Interrogatory No. 13**

14       Please identify and describe in detail Qualcomm's membership, participation, interaction,

15  and/or involvement in setting any standard relating to the processing of digital video signals that

16  pertains in any way to any Qualcomm Patent.  This interrogatory also covers all proposed or

17  potential standards, whether or not actually adopted.  This interrogatory includes without

18  limitation any MPEG video processing standard, and expressly includes H.264.  Please include in

19  Your answer at least the following information:

20       (a)     the standard at issue;

21       (b)     the standards setting body at issue;

22       (c)     the time period(s) at issue;

23       (d)     the nature, purpose, effect, and sum and substance of Qualcomm's participation

24  and/or involvement;

25       (e)     the identity of each Person who participated or was involved on behalf of

26  Qualcomm;

27       (f)     the particular standard(s), or portions thereof, at issue, including standards raised

28  but never adopted;

**Exhibit K-2**

1    (g)    the particular standard(s) that resulted from Qualcomm's involvement;

2    (h)    the identity of any contract, agreement, or commitment entered by or received by

3    Qualcomm;

4    (i)    the relevance, if any, of any Qualcomm Patent to such standard; and

5    (j)    the identity of any other Qualcomm patent related to such standard, and a brief

6    description of how such other patent is related.

7    **Interrogatory No. 14**

8    State Qualcomm's contentions regarding the theories, amounts and methods of calculating

9    its damages for Broadcom's alleged infringement of the Patent, including without limitation,

10    Qualcomm's contentions, if any, regarding the proper royalty base, royalty rate and reasonable

11    royalty for assessing damages for Broadcom's alleged infringement, and any facts that Qualcomm

12    believes support each contention.

13    **Interrogatory No. 15**

14    Separately for each Interrogatory propounded by Broadcom, identify each person who

15    supplied information used in preparing the response.

16    **Interrogatory No. 16**

17    Identify the source of each document produced by You to Broadcom in this litigation,

18    including the following information for each such document:

19    (a)    Bates number or, where appropriate, range of Bates numbers;

20    (b)    the employee, former employee, and/or other individual person from whose files

21    or office the document came;

22    (c)    the title and company affiliation of said individual; and,

23    (d)    all information contained on any files, file folders, file drawer, boxes, envelopes

24    and/or other container from which the document was obtained, to the extent that such information

25    is not discretely, fully, and accurately contained on or in the documents produced and identified

26    by Bates number.

27

28

McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

05 CV 1958

**Exhibit K-3**

1    Dated:  January 23, 2006          McKENNA LONG & ALDRIDGE LLP

2                                      WILMER CUTLER PICKERING
                                       HALE ~~AND~~ DORR LLP
3

4                                      By
5                                         Robert S. Brewer, Jr.
                                          Attorneys for Defendant
6    SD:22142533.1                        BROADCOM CORPORATION

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
McKenna Long &
Aldridge LLP
Attorneys At Law
San Diego

- 17 -                                      05 CV 1958

Exhibit K-4

# Exhibit L

**DLA Piper US LLP**
401 B Street, Suite 1700
San Diego, California  92101-4297
www.dlapiper.com

Kathryn B. Riley
kathryn.riley@dlapiper.com
**T**  619.699.2842
**F**  619.699.2701

March 2, 2007
*VIA EMAIL*

Elizabeth I. Rogers
Wilmer Cutler Pickering Hale and Dorr LLP
1117 California Avenue
Palo Alto, CA 94304

Re:  Qualcomm v. Broadcom (1392)

Dear Liz:

We recently became aware of the enclosed document (QNITC 1093705-06) that was previously produced by Qualcomm in the Nokia litigation, but appears to have not been produced in the 1392 case.  We have determined this document could be viewed as responsive to Broadcom's Document Request No. 51 because it discusses both an industry standard and refers to "power control" patents.  Although it is not clear whether this document actually relates to a patent-in-suit, out of an abundance of caution, we have decided to produce it.  We also believe the document may be irrelevant to the issues currently pending in the 1392 case because it clearly relates to WCDMA and not to GSM or GERAN.  Again however, out of an abundance of caution, we have decided to produce it and reserve Qualcomm's right to object to its admission on relevance grounds.

Our search for any additional responsive documents is continuing and we expect to complete any additional production next week.

Finally, we are preparing a supplemental privilege log that identifies a number of additional privileged and work product documents.  We expect to provide a supplemental privilege log next week as well.

Very truly yours,

**DLA Piper US LLP**

Kathryn B. Riley
Attorney

Admitted to practice in California

KBR:grg

336110-000103

**Exhibit L-1**

# Exhibit M

# EXHIBIT
# FILED UNDER
# SEAL

# Exhibit N

WilmerHale

March 5, 2007

Mark D. Selwyn

**VIA EMAIL & U.S. MAIL**

+1 650 858 6031 (t)
+1 650 858 6100 (f)
mark.selwyn@wilmerhale.com

Kathryn Riley, Esq.
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101

Re:    Qualcomm v. Broadcom, San Diego, Case No. 05-cv-1392

Dear Katie:

I am writing to respond to your letter of last Friday to Liz Rogers.

We must take issue with your attempt to minimize the relevance of this new document. The document is highly relevant to various of the equitable defenses pleaded by Broadcom and on which Broadcom has sought discovery from the outset.

We are in the process of determining what additional discovery we may require in light of the contents of this new document. At a minimum, we request that Qualcomm produce any testimony provided by any Qualcomm witness (or anyone else) related to this new document or its subject. Please let me know if there is any reason Qualcomm cannot or will not produce any such testimony by tomorrow.

Sincerely yours,

Mark D. Selwyn

MDS:rm

Exhibit N-1

# Exhibit O

# EXHIBIT
# FILED UNDER
# SEAL

# Exhibit P

WILMERHALE

March 6, 2007

Mark D. Selwyn

+1 650 858 6031 (t)
+1 650 858 6100 (f)
mark.selwyn@wilmerhale.com

**VIA EMAIL & U.S. MAIL**

Kathryn Riley, Esq.
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101

Re:   Qualcomm v. Broadcom, San Diego, Case No. 05-cv-1392

Dear Katie:

Further to my letters of yesterday, we have discovered another highly relevant Qualcomm document that appears to have been produced to Nokia but not to us. The document has the Bates number QNITC0018989, and is referenced in the November 29, 2006 deposition of Edward Tiedemann.

Please produce the document. In addition, if there is any testimony regarding this document other than Mr. Tiedemann's, we request that it be produced. Please let me know if there is any reason Qualcomm cannot or will not produce this document and any such testimony by tomorrow.

Broadcom reserves its right to seek additional relief from the Court.

Sincerely yours,

Mark D. Selwyn

MDS:rm

Exhibit P-1

# Exhibit Q



**DLA Piper US LLP**
401 B Street, Suite 1700
San Diego, California  92101-4297
www.dlapiper.com

Kathryn B. Riley
kathryn.riley@dlapiper.com
T  619.699.2842
F  619.764.6692

March 6, 2007
*VIA E-MAIL AND US MAIL*

Mark D. Selwyn, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
1117 California Avenue
Palo Alto, CA 94304

**Re:    Qualcomm v. Broadcom, USDC-Case No. 05-CV-1392**

Dear Mark:

I am writing to respond to (1) your letter of yesterday regarding my March 2, 2007 letter to Liz Rogers, (2) your letter of yesterday regarding QNITC0986122-123 and QNITC1087922, and (3) Mr. Tompros's letter of yesterday to me regarding QBN01297385-0297393.

As John Allcock told Bill Lee last week and I told Liz Rogers on Friday, we are actively investigating what, if any, documents need to be produced and we plan to make any additional production later this week.

Sincerely,

**DLA Piper US LLP**

Kathryn B. Riley
Associate

Admitted to practice in California

KBR:pg

SD\1684891.1

**Exhibit Q-1**

# Exhibit R

WILMERHALE

March 6, 2007

**Mark D. Selwyn**

+1 650 858 6031 (t)
+1 650 858 6100 (f)
mark.selwyn@wilmerhale.com

**VIA EMAIL & U.S. MAIL**

Kathryn Riley, Esq.
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, CA 92101

Re:    <u>Qualcomm v. Broadcom, San Diego, Case No. 05-cv-1392</u>

Dear Katie:

I am writing to respond to your letter of this afternoon.

The letters that Louis Tompros and I have sent you since yesterday specify, by Bates number, four documents that we believe Qualcomm has not produced in this case. I understand that Qualcomm is "actively investigating" what additional production is required, but that "investigation" does not justify further delay in the production of the specified documents. There is no reason that these documents, and any relevant testimony related to them, cannot be sent to us immediately.

Sincerely yours,

Mark D. Selwyn

MDS:rm

**Exhibit R-1**

# Exhibit S



**DLA Piper US LLP**
401 B Street, Suite 1700
San Diego, California 92101-4297
www.dlapiper.com

Kathryn B. Riley
kathryn.riley@dlapiper.com
T  619.699.2842
F  619.764.6692

March 7, 2007
*Via Email*

Mark D. Selwyn
Wilmer Cutler Pickering Hale and Dorr LLP
1117 California Avenue
Palo Alto, CA 94304

Re:     **QUALCOMM v Broadcom (1392)**

Dear Mark:

As I explained in my March 2, 2007 letter to Liz Rogers, QUALCOMM recently became aware of certain documents that were previously produced by QUALCOMM in the Nokia litigation, but appear to not have been produced to Broadcom.  We believe that the only document request these documents could be responsive to is Broadcom's Request for Production No. 51.  QUALCOMM objected to RFP No. 51 at the time and agreed to produce responsive, non-privileged documents "concerning any investigation or analysis of 802.11, CDMA, WCDMA, CDMA 2000, or the GSM/GPRS/EDGE families of standards, which investigation or analysis concerns the QUALCOMM Patents-in-Suit."  The documents referenced in your March 5, 2007 letter to me and in Mr. Tompros's March 5 letter to me are not responsive to RFP No. 51 because they do not refer to the Patents-in-Suit.   If you believe these documents are responsive to any other Broadcom Request for Production please let me know.

Moreover, Broadcom has repeatedly objected to QUALCOMM calling its expert, Mr. Holleman, at trial.  Documents QNITC0986122-123 and QNITC1087922 are not responsive to Broadcom's document requests, but are exhibits to Mr. Tiedemann's deposition in the Nokia ITC case.  QUALCOMM's expert, Mr. Holleman, relies on this deposition in his expert report.  If Broadcom agrees to withdraw its objections to QUALCOMM calling Mr. Holleman at trial then QUALCOMM will produce them on that basis.

Very truly yours,

**DLA Piper US LLP**

Kathryn B. Riley
Attorney

Admitted to practice in California

SD\1685007.1
336110-103

**Exhibit S-1**

# Exhibit T

WILMERHALE

March 7, 2007

**VIA PDF**

Kate Saxton

+1 617 526 6253 (t)
+1 617 526 5000 (f)
kate.saxton@wilmerhale.com

Kathryn B. Riley
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, California  92101-4297

Re:   *Qualcomm Inc. v. Broadcom Corporation*, Civil Action No. 05-CV-1392 (BLM)

Dear Katie:

Further to Mark Selwyn's letters of March 5 and March 6, 2007, we learned today that many more highly relevant deposition transcripts of Qualcomm witnesses related to Qualcomm's ongoing litigation with Nokia exist that have not been produced to us.

Please immediately produce the following deposition transcripts:

      Derek Aberle – January 16, 2007

      Derek Aberle – February 21, 2007

      Steve Altman – January 26, 2007

      Steve Altman – February 26, 2007

      Tracey Altmann – December 14, 2006

      Neils Anderson – January 5, 2007

      Kent Baker – January 6, 2007

      Alain Benabent – January 12, 2007

      George Bermann – January 25, 2007

      Marvin Blecker – December 20, 2006

      Kenneth Bolvin – November 20, 2006

      Brian Butler – November 20, 2006

      Chienchung Chang – December 12, 2006

Wilmer Cutler Pickering Hale and Dorr LLP, 60 State Street, Boston, Massachusetts 02109

Baltimore    Beijing    Berlin    Boston    Brussels    London    New York    Oxford    Palo Alto    Waltham    Washington

**Exhibit T-1**

WILMERHALE

Kathryn B. Riley
March 7, 2007
Page 2

Steve Ciccarelli – November 8, 2006

Gregory Cobb – December 20, 2006

Reinhard Eiberger – November 10, 2006

Michael Hartog – December 13, 2006

Robert Herman – February 26, 2007

Richard Holleman – January 22, 2007

James Hutchison – December 15, 2006

Richard Kerr – November 28, 2006

Wayshing Lee – November 30, 2006

Louis Lupin – February 23, 2007

Anindya Majumder – January 10, 2007

Susanna Martikainen – December 18, 2006

Roger Martin – November 16, 2006

Roger Martin – November 17, 2006

Russell Ben Miller – December 21, 2006

Taher Nabulsi – December 7, 2006

David Phakdy – January 11, 2007

Gene Ratliffe – January 24, 2007

Nigel Robinson – December 16, 2007

Kim Simelius – December 13, 2006

David Teece – January 22, 2007

Edward Tiedemann – February 20, 2007

**Exhibit T-2**

WILMERHALE

Kathryn B. Riley
March 7, 2007
Page 3

Sergio Verdu – January 29, 2007

Sergio Verdu – January 30, 2007

Charles Wheatley – January 24, 2007

Serge Willenegger – February 23, 2007

David Williams – February 23, 2007

Nathaniel Wilson – December 2, 2006

Karyn Womach – December 13, 2006

Moreover, to the extent any of the above witnesses have submitted witness statements in the ongoing litigation between Qualcomm and Nokia before the International Trade Commission (Investigation No. 337-TA-578, *In the Matter of Certain Mobile Telephone Handsets, Wireless Communication Devices and Components Thereof*), please immediately produce any such witness statements.

We will also be requesting the exhibits to certain of these depositions, to the extent that they have not already been produced.  In order to make the production as efficient as possible, we will request those by exhibit number as we review the transcripts, rather than asking you to produce them all now.

If Qualcomm refuses to produce any of the above materials, please inform me by close of business tomorrow, March 8, 2007.

In addition, Broadcom reserves the right to seek additional relief from the Court.

Very truly yours,

Kate Saxton

Kate Saxton

**Exhibit T-3**

# Exhibit U



DLA Piper US LLP
401 B Street, Suite 1700
San Diego, California  92101-4297
www.dlapiper.com

Kathryn B. Riley
kathryn.riley@dlapiper.com
**T** 619.699.2842
**F** 619.764.6692

March 7, 2007
*VIA EMAIL*

Kate Selwyn
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Re:    QUALCOMM v Broadcom (1392)

Dear Kate:

This letter responds to your letter of March 7, 2007 seeking production of 42 depositions from the Nokia ITC case less than two weeks before our trial.  All of these depositions took place after the close of fact discovery in our case.

Broadcom has been aware of the Nokia ITC trial for some time.  Indeed, in January Broadcom asked QUALCOMM to produce the QUALCOMM inventors' depositions from the Nokia ITC case to Broadcom, but did not request any other depositions.  And QUALCOMM did.  QUALCOMM agreed to produce those limited depositions over its objections regarding the timeliness and appropriateness of the request.  Broadcom has provided no explanation of the relevance of these depositions or why Broadcom waited until now to request them.  Please explain why you believe QUALCOMM is obligated to produce these 42 depositions at this time.

Very truly yours,

**DLA Piper US LLP**

Kathryn B. Riley
Kathryn B. Riley
Attorney

Admitted to practice in California

SD\1685185.1
336110-103

**Exhibit U-1**

# Exhibit V

**From:** Riley, Kathryn [Kathryn.Riley@dlapiper.com]
**Sent:** Friday, March 09, 2007 12:46 PM
**To:** Saxton, Kate
**Cc:** Rogers, Elizabeth
**Subject:** RE: Qualcomm v. Broadcom (05-1392)

Hi Kate,

QUALCOMM incorporates Broadcom's request for Nigel Robinson's deposition in the Konia ITC case into the letter I sent you last night regarding the 42 other depositions you recently requested.

On another topic, where are we at on the Pretrial Order?

Thanks,
Katie

> **From:** Saxton, Kate [mailto:Kate.Saxton@wilmerhale.com]
> **Sent:** Friday, March 09, 2007 5:19 AM
> **To:** Riley, Kathryn
> **Cc:** Rogers, Elizabeth
> **Subject:** Qualcomm v. Broadcom (05-1392)
>
> Katie-
>
> I wanted to follow up on the email from Liz Rogers last night regarding the December 16, 2006 deposition of Nigel Robinson.  This deposition is highly relevant to Broadcom's claims and defenses in this litigation and is certainly responsive in this litigation.  Please produce today, via PFD, this deposition.  If Qualcomm refuses to do so, please inform me promptly.
>
> Best,
>
> Kate
>
>
> Kate Saxton
> WilmerHale
> 60 State Street
> Boston, MA 02109 USA
> 617-526-6253 (t)
> 617-526-5000 (f)
> kate.saxton@wilmerhale.com

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an email to postmaster@wilmerhale.com -- and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

Please consider the environment before printing this email.

**Exhibit V-1**

6/18/2007

The information contained in this email may be confidential and/or legally privileged. It has been sent fo
the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are
hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of
this communication, or any of its contents, is strictly prohibited. If you have received this communicatio
in error, please contact the sender by reply email and destroy all copies of the original message. To
contact our email administrator directly, send to postmaster@dlapiper.com

Thank you.

**Exhibit V-2**

# Exhibit W

**From:** Saxton, Kate
**Sent:** Friday, March 30, 2007 12:58 PM
**To:** 'Bier, Adam Arthur'
**Cc:** Patch, Lee
**Subject:** RE: Qualcomm v. Broadcom (05-1958)

Adam and Lee-

Thank you for getting back to me regarding this issue.

We are understandably very concerned about the progress of Qualcomm's searches regarding additional email. As you are aware, Broadcom first learned about the existence of the additional email during Ms. Raveendran's cross-examination on January 24, 2007, the last day of trial in this matter. These additional emails are relevant, at least, to Broadcom's defense of waiver, and were certainly responsive to several Broadcom requests for production.  Since learning about these emails on January 24, 2007, Broadcom has been actively and diligently pursuing the existence and production of any additional emails or documents. Despite its efforts, Broadcom has not received any additional production, any indication of the volume of additional emails or documents, or when it can expect to receive production of any additional emails or documents. This is unacceptable.

As you are also aware, the Court has scheduled a further hearing regarding the appropriate remedy for Qualcomm's waiver of its rights to enforce the patents-in-suit for May 2, 2007, with all papers to be filed by April 25, 2007. Qualcomm has proposed that its papers be filed by April 18, 2007, with Broadcom's reply filed by April 25, 2007. (*See* March 30, 2007 email from Mr. Young to Mr. Regan and Ms. Saxton). It is therefore imperative that Broadcom receive any additional emails or other documents sufficiently in advance of submission of its papers and the May 2, 2007 hearing. To that end, Broadcom expects that Qualcomm will complete its search and production by Friday, April 6, 2007. If Qualcomm is unwilling to do so, please inform me immediately, as Broadcom will seek the assistance of the Court.

Thank you for your attention to this matter.

Best,

Kate
-----Original Message-----
**From:** Bier, Adam Arthur [mailto:abier@daycasebeer.com]
**Sent:** Friday, March 30, 2007 12:58 PM
**To:** Saxton, Kate
**Cc:** Patch, Lee
**Subject:** RE: Qualcomm v. Broadcom (05-1958)

Hi Kate,

Sorry for the delay in responding.  We don't have any new information to report yet, but we'll get back to you as soon as we do. You can expect to hear from Lee Patch, who is spearheading this effort, as I've been called away

**Exhibit W-1**

to work on another matter.

Best,
Adam

---

**From:** Saxton, Kate [mailto:Kate.Saxton@wilmerhale.com]
**Sent:** Thursday, March 29, 2007 1:54 PM
**To:** Bier, Adam Arthur
**Subject:** RE: Qualcomm v. Broadcom (05-1958)

Hi Adam-

Could you please provide me an update on the status of the below request?

Thanks,

Kate
-----Original Message-----
**From:** Saxton, Kate
**Sent:** Monday, March 26, 2007 11:11 AM
**To:** 'abier@daycasebeer.com'
**Subject:** Qualcomm v. Broadcom (05-1958)

Hi Adam-

I just wanted to check in and see if you had a further update regarding the ongoing hard drive searches in the above matter?  If you could please let me know the current status, I would appreciate it. Thanks so much.

Best,

Kate


Kate Saxton
WilmerHale
60 State Street
Boston, MA 02109 USA
617-526-6253 (t)
617-526-5000 (f)
kate.saxton@wilmerhale.com

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately -- by replying to this message or by sending an email to postmaster@wilmerhale.com -- and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.


*******************************************************************
Confidentiality Notice
This message is being sent by or on behalf of a lawyer.  It is
intended exclusively for the individual or entity to which it is
addressed.  This communication may contain information that
is proprietary, privileged or confidential or otherwise legally
exempt from disclosure.  If you are not the named addressee,
you are not authorized to read, print, retain, copy or
disseminate this message or any part of it.  If you have

**Exhibit W-2**

6/18/2007

received this message in error, please notify the sender
immediately by email and delete all copies of the message.
****************************************************************

**Exhibit W-3**

# Exhibit X

```
 1                  UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF CALIFORNIA

 3

 4  QUALCOMM, INC.,            ) Case No. 05CV1958-B(BLM)
                               )
 5           Plaintiff,        ) San Diego, California
                               )
 6  vs.                        ) Wednesday
                               ) January 24, 2007
 7  BROADCOM CORPORATION,      ) 9:00 a.m.
                               )
 8           Defendant.        ) VOLUME VIII
    _____)

 9

10                    TRANSCRIPT OF TRIAL
              BEFORE THE HONORABLE RUDI M. BREWSTER
11            UNITED STATES DISTRICT JUDGE, and a jury

12  APPEARANCES:

13  For the Plaintiff:        JAMES R. BATCHELDER, ESQ.
                              CRAIG CASEBEER, ESQ.
14                            LEE PATCH, ESQ.
                              BRADLEY A. WAUGH, ESQ.
15                            ADAM A. BIER, ESQ.
                              BRADLEY A. WAUGH, ESQ.
16                            CHRISTIAN E. MAMMEN, ESQ.
                              Day Casebeer Madrid &
17                               Batchelder, LLP
                              20300 Stevens Creek Boulevard
18                            Suite 400
                              Cupertino, California 95014
19                            (408) 873-0110

20
                              STANLEY YOUNG, ESQ.
21                            Heller, Ehrman, LLP
                              275 Middlefield Road
22                            Menlo Park, California  94025
                              (650) 324-7000
23

24  Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

Exhibit X-1

VIII-ii

1 | APPEARANCES (Cont'd):

2 | For the Defendant:              JOHN J. REGAN, ESQ.
                                    MATTHEW DELGIORNO, ESQ.
3 |                                 WILLIAM F. LEE, ESQ.
                                    VINITA FERRERA, ESQ.
4 |                                 KATE SAXTON, ESQ.
                                    DONALD STEINBERG, ESQ.
5 |                                 LOUIS W. TOMPROS, ESQ.
                                    TIMOTHY R. JEZEK, ESQ.
6 |                                 Wilmer, Cutler, Pickering,
                                     Hale and Dorr, LLP
7 |                                 60 State Street
                                    Boston, Massachusetts  02109
8 |                                 (617) 526-6453

9 |
                                    JAMES S. McNEILL, ESQ.
10 |                                McKenna, Long & Aldridge, LLP
                                    701 B Street, Suite 3300
11 |                                San Diego, California  92101
                                    (619) 595-5400
12 |

13 | Transcript Ordered by:         JAMES R. BATCHELDER, ESQ.

14 |

    | Court Recorder:               Jennie Hinkle
15 |                                United States District Court
                                    940 Front Street
16 |                                San Diego, California  92101

17 |
    | Transcriber:                  Shonna Mowrer, Jordan Keilty,
18 |                                 Carol Abbott
                                    Echo Reporting, Inc.
19 |                                6336 Greenwich Drive
                                    Suite B
20 |                                San Diego, California 92122
                                    (858) 453-7590
21 |

22 |

23 |

24 |

25 |

Echo Reporting, Inc.

**Exhibit X-2**

VIII-40

1  Q    You mentioned an individual by the name of Gary

2  Sullivan.   What was his role and involvement in the process

3  concerning Qualcomm's response to the call for proposal?

4  A    He was the chair of that video group in MPEG at the

5  time.   He also was involved in the ad hoc group discussions

6  when we presented these proposals and when we described the

7  technology.

8  Q    Ms. Raveendran, are you familiar with JVT?

9  A    Yes.

10  Q    And can you remind the jury of how Gary Sullivan fits

11  into the subject of the JVT.

12  A    At the time when we were discussing these proposals,

13  when he was chairing the video group, he was also a

14  chairperson in the video coding expert's group in ITU-T.

15  And after this -- the Digital Cinema proposal discussion

16  happened in 2001, and later on, a few months after that,

17  there was a group called JVT that was formed.   It's a joint

18  group between the MPEG video group and the ITU-T's video

19  experts group.   And Gary Sullivan became the chair of this

20  JVT.

21  Q    Was Qualcomm involved with JVT at that time?

22  A    No, we were not.

23  Q    Did Qualcomm ever become involved with JVT?

24  A    Much later, when -- I mean, my -- my participation has

25  been -- I don't know who else participated in Qualcomm

Exhibit X-3

1 recently, but -- is that much later when the scalable video

2 coding effort got merged into JVT -- the scalable video

3 coding was a different standard that MPEG was working on,

4 and when they -- when that work item got moved to JVT,

5 that's when we started participating.

6 Q    Will you please describe for the jury the relationship

7 as you understand it between the scalable video coding

8 standard or SVC and the H.264 standard.

9 A    Scalable video coding is an extension of the H.264.

10 It's an add-on.  It doesn't change 264.

11 Q    Did you have any personal involvement with JVT?

12 A    I attended one of their meetings when they were working

13 on the scalable video coding effort.  Scalable video coding

14 is to enable different quality levels and different display

15 levels of recorded video, depending on the display sizes,

16 for example.

17       So that was a new technology that the group was working

18 on, and my interest was more in the sense of how robust that

19 technology is to errors.  Because in a wireless scenario,

20 there are errors that will cut up the data, and how robust

21 is that data.  So that was my involvement.

22 Q    I believe it was in your deposition that you testified

23 that you attended a JVT meeting in Poznan, Poland, in July

24 of 2005; is that correct?

25 A    Yes.

Exhibit X-4

VIII-42

1 Q    Why were you at the JVT meeting in Poland in 2005?

2 A    To monitor this error resilience work in scalable video

3 coding.

4 Q    Is that the specific reason why you traveled to Poland

5 in July of 2005?

6 A    I attended other MPEG meetings.   I primarily -- I was

7 primarily attending MPEG meetings.

8 Q    So was the MPEG meeting and the JVT meeting co-located

9 in that July 2005 session?

10 A    Yes.

11 Q    When you were at the session of the JVT in Poland in

12 July of 2005, did you actively participate in that session?

13 A    No.   I was just monitoring if there was any discussion

14 on this error resilience work.

15 Q    Did you make a technical contribution at that session?

16 A    No.

17 Q    Did you vote on any decisions at that session?

18 A    No.

19 Q    Was H.264 being developed or worked on at that session

20 that you participated in?

21 A    No.   It had been long completed in May 2003.   This was

22 two years later.

23 Q    Have you participated in any other JVT meeting other

24 than the one in Poznan, Poland?

25 A    No.

Exhibit X-5

VIII-43

1 Q     I'd like you to now turn to Tab 4 in your binder.   This

2 is a document which was introduced by Broadcom into evidence

3 last week.

4       Did you ever receive a copy of this document?

5 A     No.

6 Q     Based upon the appearance of this document, can you

7 explain to the jury generally what it is?

8 A     It seems to be a report from an ad hoc group under JVT.

9 This is from the December 2002 time frame.   And their

10 primary work was to evaluate the coding efficiency,

11 basically to compare and see how good AVC or 264 is compared

12 to MPEG four part two and MPEG two part two.   These are

13 prior standards that MPEG issued.

14 Q     Can you explain to the jury in general what an ad hoc

15 group is?

16 A     Typically, an ad hoc group is a little group of people

17 that have a select mandate.   That group has a mandate as

18 indicated here, the select goal.   And for this particular

19 group, it was to evaluate the coding efficiency.   So the

20 primary thing they do is to do this kind of subject

21 evaluation.   They have expert viewers, and then they compare

22 the video test clips.

23       That seems to be the mandate of this one.   And an ad

24 hoc group lives only between meetings, typically, but

25 sometimes it can last longer.

Exhibit X-6

# Exhibit Y

# Qualcomm JVT Participants' Knowledge of Patents

**Mar 6, 2002**

Qualcomm employee reviews H.264 draft "to decide where our ABSDCT ... will fit in the JVT scenario."

*Tab 11*

**Jul 12, 2002**

Raveendran emails Isailovic: "About patent reviews for JVT and studying ABT, it was decided that we would like a summary of various aspects of ABT in JVT."

*Tab 86*

**Nov 5, 2002**

Jay Yun says that "there may be patent infringement issues related to ABSDCT."

*Tab 102*

**Dec 9, 2002**

Qualcomm meeting goals for next JVT meeting include "Is there a potential IPR issue with ABSDCT?"

*Tab 109*

**Apr 8, 2003**

Qualcomm has meeting led by Raveendran that address "progress on Digital Cinema patents vs JVT standard."

*Tab 118*

**Sep 3, 2003**

Garudadri includes in summary of JVT meeting: "JVT was looking at adaptive block size DCT (ABSDCT) for the transform. Qualcomm has IPR in this, going back to[] 1992 and QDM days."

*Tab 120*

**Oct 26, 2003**

Saniiv Nanda reports that he met with inventor Donald Pian "at the JVT meeting in San Diego" and discussed use of ABSDCT invention in H.264.

MAR '02  JUL '02  NOV '02  DEC '02  APR '03  SEP '03  OCT '03

**Exhibit Y-1**

# Qualcomm's Alleged Lack of Participation in the JVT

**Nov 6, 2006**

Qualcomm files motion for summary adjudication on Broadcom's equitable defense of waiver, arguing that "Qualcomm employees never participated, in any form, in the JVT until after the H.264 standard was released" in May 2003, that "there is no evidence that Qualcomm attended any of the JVT meetings between December 2001 and May 2003," and that there was no evidence of any "email correspondence or other means of working with the JVT to develop the standard."

**Sep 1, 2005**

Qualcomm serves Richardson Rebuttal Expert Report regarding Qualcomm's involvement in the JVT, in which Dr. Richardson states that he has been "unable to find any documentary evidence of the involvement of Qualcomm personnel [in the JVT] prior to September 2003" and that Qualcomm did not participate in the JVT prior to the release of the H.264 standard in May 2003.
*Tab 16*

**Aug 17, 2006**

Qualcomm's 30(b)(6) witness Scott Ludwin testifies that Qualcomm did not participate in the JVT before December 2003.
*Tompros Decl.H.*

**Jul 18, 2006**

Qualcomm engineer Viji Raveendran testifies that Qualcomm did not attend any JVT meetings in 2002 or 2003.
*Tab 7*

**Jul 11, 2006**

Qualcomm's 30(b)(6) witness Chris Irvine testifies that Qualcomm never participated in the JVT.
*Tab 5*

**2006**

**Dec 4, 2006**

- Qualcomm files its Rebuttal Memorandum of Contentions of Law and Fact arguing that it had not participated in the JVT prior to until after May 2003.
- Qualcomm argues during the summary adjudication hearings that it had not participated in the JVT until after May 2003.

**Jan 9, 2007**

Qualcomm argues in its opening statement that it did not begin to participate in the JVT until fall of 2003, after the technical content of the H.264 standard was "frozen."

**Jan 24, 2007**

Qualcomm files its JMOL arguing that there is no evidence that Qualcomm participated in the JVT until after May 2003.   *Tab 21*

**Jan 25, 2007**

Qualcomm argues in its closing statement that there is no evidence that Qualcomm participated in the JVT until Fall of 2003.

**Feb 2, 2007**

Qualcomm argues in its Opening Post-Trial Brief Regarding Waiver and Inequitable Conduct that the Court should disregard the jury's finding of waiver because "Qualcomm was not a JVT participant" prior to the release of the H.264 standard in May 2003.

**Feb 6, 2007**

Qualcomm argues in its Post-Trial Reply Brief Regarding Waiver and Inequitable Conduct that there is "no evidence that Qualcomm participated in the JVT prior to release of the H.264 standard in May 2003."

**Feb 9, 2007**

During post-trial hearing on waiver, Qualcomm argued that its employees did not participate in the JVT and the development of the H.264 standard prior to its release in May 2003.

**2007**

# Timeline of Qualcomm Conduct: 10/05 – 9/06

**Oct 14, 2005**
Qualcomm files Complaint alleging Broadcom's products practice H.264.
*Tab 1*

**Jan 23, 2006**
Broadcom serves first set of requests for production, including documents "concerning any Qualcomm membership, participation, interaction, and/or involvement in setting any standard relating to the processing of digital video signals that pertains in any way to any Qualcomm Patent."
*Tab 2*

**Mar 10, 2006**
Qualcomm serves initial disclosure of asserted claims and accused products accusing Broadcom's products of infringing because they practice H.264.
*Tab 3*

**May 23, 2006**
Broadcom issues 30(b)(6) notice for topics including "[t]he attendance or participation by any Qualcomm principal, employee, or representative at any H.264 standards committee meetings."
*Tab 4*

**Jul 11, 2006**
Broadcom deposes Qualcomm's 30(b)(6) witness Chris Irvine, who testifies that Qualcomm never participated in the JVT.
*Tab 5*

**Jul 12, 2006**
Broadcom issues additional 30(b)(6) notice directed specifically to H.264.
*Tab 6*

**Jul 18, 2006**
Broadcom deposes Viji Raveendran, who testifies that she did not attend any JVT meetings in 2002 or 2003, and learned of JVT through trade journals.
*Tab 7*

**Jul 20, 2006**
Broadcom deposes Yan Ye on JVT participation.
*Tab 8*

**Aug 4, 2006**
Broadcom deposes Phoom Sagetong on JVT participation.
*Tab 9*

**Aug 8, 2006**
Broadcom deposes Yuriy Reznik on JVT participation.
*Tab 10*

**Aug 10, 2006**
Broadcom submits expert report of Cliff Reader, explaining its JVT defense.
*Tab 11*

**Aug 11, 2006**
Broadcom deposes Yiliang Bao on JVT participation.
*Tab 12*

**Aug 17, 2006**
Broadcom deposes Qualcomm's replacement 30(b)(6) witness, Scott Ludwin, who testifies that Qualcomm did not participate in the JVT before December 2003. *Tab 13*

**Aug 22, 2006**
Broadcom deposes James Determan on JVT participation.
*Tab 14*

**Aug 29, 2006**
Broadcom deposes JVT chair Gary Sullivan. *Tab 15*

**Sep 1, 2006**
Qualcomm submits rebuttal expert report of Iain Richardson, addressing its JVT participation. *Tab 16*

**Sep 5, 2006**
Broadcom amends interrogatory responses to further explain JVT defense.
*Tab 17*

OCT '05 | JAN '06 | MAR '06 | MAY '06 | JUL '06 | AUG '06 | SEP '06

Exhibit Y-3

# Timeline of Qualcomm Conduct: January 2007

**Jan 4, 2007**

Qualcomm cancels JVT participant Hari Garudadri's deposition and withdraws him as a witness.

**Jan 14, 2007**

Qualcomm learns of the 21 emails sent to the JVT list and received by Viji Raveendran while preparing Raveendran to testify.

**Jan 18, 2007**

Qualcomm claims in side bar conference that there were no emails sent to the JVT list.

**Jan 24, 2007**

- Qualcomm files its JMOL motion, claiming that Broadcom failed to show any emails exist.
- Qualcomm asks Raveendran on direct examination whether she "sent" email to the JVT list or "read mail that came back to her" from the JVT list.
- Raveendran admits on cross examination to having received 21 JVT emails.
- Qualcomm argues to the Court that the 21 Raveendran emails are not responsive.
- Qualcomm produces the 21 Raveendran emails over the lunch recess.

**Jan 25, 2007**

Qualcomm makes closing argument claiming that its employees did not participate in development of H.264 prior to May 2003.

**JANUARY 2007**

Exhibit Y-4

# Timeline of Qualcomm Conduct: 2/07 – 6/07

**Feb 1, 2007**

Qualcomm explains that it did not search its employees' local email archives but claims that the 21 emails were not responsive to any Broadcom document request. *Tab 27*

**Feb 7, 2007**

Broadcom identifies five document requests to which the emails were responsive. *Tab 28*

**Feb 9, 2007**

Qualcomm argues at hearing on waiver that its employees did not participate in development of H.264 prior to May 2003. *Tab 30*

**Feb 16, 2007**

Qualcomm claims that it had no "valid discovery obligation or commitment" to produce the 21 emails. *Tab 30*

**Mar 5, 2007**

Broadcom requests that Qualcomm search the email archives of Qualcomm standards participants for specific terms related to the H.264 standard. *Tab 31*

**Mar 7, 2007**

Qualcomm calls Broadcom's request "patently overbroad discovery" and unilaterally limits the search to five employees of its choosing. *Tab 32*

**Mar 30, 2007**

Qualcomm still has not produced any documents, so Broadcom says that it will seek assistance from the Court. *Tab 33*

**Apr 9, 2007**

Qualcomm's outside counsel and general counsel apologize to the Court for making arguments inconsistent with documents that it has located. *Tabs 34-35*

**Apr 12, 2007**

Qualcomm produces first 14,623 documents. *Tab 35*

**Apr 25, 2007**

Qualcomm expands its search to include additional JVT participants as originally requested by Broadcom. *Tab 36*

**May 14, 2007**

Qualcomm produces additional documents, bringing total production to 35,000. *Tab 37*

**Jun 14, 2007**

Qualcomm admits to not searching hard copy documents for JVT participants and makes additional production, bringing total production to 46,610 documents, totalling 332,101 pages. *Tab 38*

| FEB '07 | MAR '07 | APR '07 | MAY '07 | JUN '07 |
|---------|---------|---------|---------|---------|

Exhibit Y-5

# Qualcomm's JVT Participation

**Jan 29, 2002** — Qualcomm consultant Jordan Isailovic attends JVT meeting on Qualcomm's behalf.

**Feb 26, 2002** — Chris Irvine and Viji Raveendran meet at Starbucks before going to "the JVT meeting." *Tabs 4-5* / *Tab 8*

**Mar 25, 2002** — Isailovic exchanges emails with JVT Chair Gary Sullivan about submitting a proposal for Qualcomm. *Tab 18*

**Apr 30, 2002** — Qualcomm discusses providing support for a JVT proposal at the next JVT meeting. *Rebuttal Ex.MM*

**May 8, 2002** — Amnon Silberger and Jay Yun attend a JVT meeting. *Tab 57*

**Jun 2002** — Qualcomm votes on a JVT proposal. *Rebuttal Ex. NN*

**Dec. 2002** — Viji Raveendran lists H.264 and JVT on her resume. *Rebuttal Ex. OO*

**Sep 4, 2003** — Hari Garudadri attends JVT meeting and harbor cruise in San Diego. *Tabs 120-121,123*

JAN '02 | FEB '02 | MAR '02 | APR '02 | MAY '02 | JUN '02 | DEC '02 | SEP '03