UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| QUALCOMM INCORPORATED, | ) | Case No. 05cv1958-B (BLM) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION FOR** |
| | ) | **ORDER GRANTING DEFENDANT'S** |
| v. | ) | **CORRECTED PETITION FOR** |
| | ) | **ATTORNEYS' AND EXPERTS' FEES,** |
| BROADCOM CORPORATION, | ) | **COSTS AND EXPENSES** |
| | ) | |
| Defendant. | ) | **[Doc. Nos. 617 and 625]** |
| | ) | |
| AND RELATED COUNTERCLAIMS. | ) | |
| | ) | |

The instant Petition for Attorneys' and Experts' Fees, Costs and Expenses was referred to this Court by United States District Judge Rudi M. Brewster. By Order dated August 6, 2007, Judge Brewster granted Broadcom Corporation's ("Broadcom") Motion for Exceptional Case Finding and For an Award of Attorneys' Fees (35 U.S.C. § 285) ("Exceptional Case Order"). Doc. No. 594. Judge Brewster concluded that Broadcom was the prevailing party and granted Broadcom "all reasonable attorneys' fees, court costs, expert witness fees, travel expenses, and any other litigation costs reasonably incurred by Broadcom in litigating the present Action." Id. at 4. In order to determine the exact amount of the award, Judge Brewster ordered Broadcom to prepare "an itemized

1  detailed list of all fees and costs." Id. He then set a briefing

2  schedule in order to allow Qualcomm Incorporated ("Qualcomm") an

3  opportunity to file any objections it might have to Broadcom's expense

4  statement. Id.

5      Pursuant to that briefing schedule, Broadcom filed the instant

6  Petition for Attorneys' and Experts' Fees, Costs, and Expenses. Doc.

7  Nos. 617 and 625[1]. Qualcomm did not file an opposition. In light of

8  Qualcomm's decision not to respond, on September 20, 2007, Broadcom

9  filed a Request for Entry of Judgment Taxing Attorneys' and Experts'

10  Fees, Costs, and Expenses. Doc. No. 647.

11      Having considered the briefing and all supporting documents

12  submitted, and for the reasons set forth more fully below, this Court

13  **RECOMMENDS** that Broadcom's Corrected Petition for Attorneys' and

14  Experts' Fees, Costs and Expenses [Doc. Nos. 617 and 625] be **GRANTED.**

15  <u>**BACKGROUND**</u>

16      Qualcomm initiated this patent infringement action on October 14,

17  2005, alleging Broadcom's infringement of Qualcomm patent numbers

18  5,452,104 (the "'104 patent'") and 5,576,767 (the "'767 patent'") based

19  on its manufacture, sale, and offers to sell H.264-compliant products.

20  Compl. ¶¶ 7-16. Qualcomm sought injunctive relief, compensatory

21  damages, attorneys' fees and costs. Id. at 3. On December 8, 2006,

22  Broadcom filed a First Amended Answer and Counterclaims in which it

23  alleged (1) a counterclaim that the '104 patent is unenforceable due to

24  _____

25      [1] The docket numbers reflect Broadcom's Petition for Attorneys' and Experts'

26  Fees, Costs and Expenses [Doc. No. 617] and its <u>Corrected</u> Petition for Attorneys' and

27  Experts' Fees, Costs and Expenses [Doc. No. 625], which incorporates portions of the
   original petition by reference. The Court will refer to these documents collectively

28  as the "Petition."

1   inequitable conduct, and (2) an affirmative defense that both patents
2   are unenforceable due to waiver.  Doc. No. 370.  Broadcom's waiver
3   defense was predicated on Qualcomm's conduct before the Joint Video Team
4   ("JVT"), the standards-setting body that created the H.264 standard.
5   Doc. No. 540-2 (Mem. Supp. Broadcom's Motion for Sanctions) at 3.

6       A jury trial on the legal issues commenced on January 9, 2007.  On
7   January 26, 2007, the jury returned unanimous verdicts in favor of
8   Broadcom regarding the non-infringement of the '104 and '767 patents and
9   in favor of Qualcomm regarding the validity and non-obviousness of the
10  same.  Doc. No. 499.  The jury also returned a unanimous advisory
11  verdict on the equitable issues.  Id. at 14.  In its advisory verdict,
12  the jury found in favor of Broadcom that the '104 patent is
13  unenforceable due to inequitable conduct and the '104 and '767 patents
14  are unenforceable due to waiver.  Id.

15      On February 9, 2007, Judge Brewster heard oral argument on the
16  equitable issues.  By order dated March 21, 2007, Judge Brewster found
17  (1) in favor of Qualcomm on Broadcom's inequitable conduct counterclaim
18  regarding the '104 patent, and (2) in favor of Broadcom on Broadcom's
19  waiver defense regarding the '104 and '767 patents.  Doc. No. 528.
20  Judge Brewster requested further briefing on the appropriate remedy for
21  Qualcomm's waiver and heard oral argument on that issue, as well as on
22  Broadcom's motion for attorneys' fees [Doc. No. 542], on June 25, 2007.

23      On August 6, 2007, Judge Brewster issued a comprehensive order
24  detailing the appropriate remedy for Qualcomm's waiver.  Doc. No. 593
25  (Order on Remedy for Finding of Waiver ("Waiver Order")).  After a
26  thorough overview of the JVT, the JVT's policies and guidelines,
27  Qualcomm's knowledge of the JVT, and evidence of Qualcomm's involvement
28  therein, see id. at 5-22, Judge Brewster found:

1    … by clear and convincing evidence that Qualcomm, its
2    employees, and its witnesses actively organized and/or
     participated in a plan to profit heavily by (1) wrongfully
3    concealing the patents-in-suit while participating in the JVT
     and then (2) actively hiding this concealment from the Court,
     the jury, and opposing counsel during the present litigation.
4

5    Id. at 22.   Judge Brewster further found that Qualcomm's "counsel

6    participated in an organized program of litigation misconduct and

7    concealment throughout discovery, trial, and post-trial before new

8    counsel took over lead role in the case on April 27, 2007." Id. at 32.

9    Based on "the totality of the evidence produced both before and after

10   the jury verdict," and in light of these findings, Judge Brewster

11   concluded that "Qualcomm has waived its rights to enforce the '104 and

12   '767 patents and their continuations, continuations-in-part, divisions,

13   reissues, or any other derivatives of either patent." Id. at 53.

14       Also on August 6, 2007, Judge Brewster issued his Exceptional Case

15   Order.   Doc. No. 594.   In so doing, Judge Brewster incorporated the

16   facts and analysis set forth in his Waiver Order.   Id. at 2.   In

17   particular, Judge Brewster determined that prevailing party Broadcom had

18   established by clear and convincing evidence that this patent

19   infringement action warranted exceptional case status based on

20   "(1) Qualcomm's bad faith participation in the H.264-standard-setting

21   body, the Joint Video Team ("JVT"); and (2) the litigation misconduct

22   of Qualcomm through its employees, hired outside witnesses, and trial

23   counsel during discovery, motion practice, trial, and post-trial

24   proceedings." Id. at 3.   Judge Brewster determined that Qualcomm's

25   egregious misconduct justified Qualcomm's payment of all "attorneys'

26   fees, court costs, expert witness fees, travel expenses, and any other

27   litigation costs reasonably incurred by Broadcom" in the defense of this

28   case.   Id. at 4.

**LEGAL STANDARD**

35 U.S.C. § 285 expressly provides that in exceptional cases, the court may award reasonable attorney fees to the prevailing party.  To determine a reasonable attorneys' fee award or "lodestar" figure, the Supreme Court directs courts to begin by calculating the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  There is a "strong presumption" that the lodestar fee constitutes a reasonable fee. <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562 (1992).  Nevertheless, in certain cases, it may be appropriate to adjust the presumptively reasonable lodestar figure based on the twelve factors listed in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69-70 (9th Cir. 1975)[2].  <u>See</u> <u>Tutor-Saliba Corp. v. City of Hailey</u>, 452 F.3d 1055, 1065 (9th Cir. 2006) (confirming that the Ninth Circuit requires consideration of the twelve-factor <u>Kerr</u> test).  Of these factors, the "results obtained" should be viewed as a particularly important factor.  <u>Hensley</u>, 461 U.S. at 434.  But ultimately, "the district court has discretion in determining the amount of a fee award."  <u>Id.</u> at 437; <u>see also</u> <u>Mathis v. Spears</u>, 857 F.2d 749, 754 (Fed. Cir. 1988) ("[t]he methodology of

---

[2]  <u>Kerr</u> sets forth "the following guidelines: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases."  <u>Kerr</u>, 526 F.2d at 69-70.

1  assessing a reasonable award under 35 U.S.C. § 285 is within the

2  discretion of the district court").

3  **DISCUSSION**

4      Broadcom requests that the Court award attorneys' and experts'

5  fees, costs, and expenses in the total amount of $8,568,633.24.

6  Corrected Mem. P. & A. Supp. Pet. ("Pet.") at 1.  In support of this

7  request, Broadcom has provided the Court with declarations from John J.

8  Regan, partner at Wilmer Cutler Pickering Hale and Dorr LLP

9  ("WilmerHale"), and Robert S. Brewer, Jr., partner at McKenna Long &

10  Aldridge LLP, describing the firms' work for Broadcom and providing

11  exhibits detailing each of the categories of fees and expenses for which

12  Broadcom seeks reimbursement.  Id. at 5.  Additionally, Broadcom filed

13  a declaration from Robert S. Frank, Jr., a senior trial lawyer at Choate

14  Hall & Stewart with extensive trial experience in patent litigation.

15  Id.  Mr. Frank's declaration is offered for the purpose of confirming

16  the reasonableness of Broadcom's selection of WilmerHale as lead counsel

17  and of the rates charged by WilmerHale.  Id.

18      Qualcomm does not oppose the motion or challenge the reasonableness

19  of the requested fees, costs and expenses.

20  **A.   Attorneys' Fees**

21      As an initial matter, the Court notes that an award of attorneys

22  fees under 35 U.S.C. § 285 serves to (1) discourage infringement by

23  penalizing the infringer and (2) prevent "gross injustice" resulting

24  from bad faith litigation.  Beckman Instr., Inc. v. LKB Produkter AB,

25  892 F.2d 1547, 1552 (Fed. Cir. 1989).  A fee award justified solely by

26  the need to prevent gross injustice "must in some way be related to the

27  bad faith and misconduct."  Id. at 1553.  However, "[l]itigation

28  misconduct and unprofessional behavior are relevant to the award of

-6-                                              05cv1958-B (BLM)

1  attorney fees, and may suffice, by themselves, to make a case
2  exceptional." Waner v. Ford Motor Co., 331 F.3d 851, 857 (Fed. Cir.
3  2003) (quoting Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d
4  1022, 1034 (Fed. Cir. 2002)); see also Beckman, 892 F.2d at 1553 ("[t]o
5  require Beckman to pay its attorneys to defend against LKP's vexatious
6  litigation strategy and misconduct would be a gross injustice").

7      In this case, Judge Brewster found that the egregiousness of "the
8  misconduct of Qualcomm's employees, witnesses, and counsel before,
9  during, and after trial" not only warranted an exceptional case finding,
10  it entitled Broadcom to an award of all reasonable attorneys' fees,
11  expenses and costs.  Doc. No. 594 at 3-4.  Accordingly, this Court
12  proceeds with analyzing the reasonableness of the fees requested under
13  the assumption that all reasonably requested fees will be awarded.

14      **1.   Lodestar Calculation**

15      The prevailing attorneys bear the burden of establishing
16  entitlement to an award and must document the appropriate hours expended
17  and hourly rates.  Hensley, 461 U.S. at 437.  Applicants should make a
18  good faith effort to exclude excessive, redundant, or otherwise
19  unnecessary hours from a fee request.  Id. at 434.  Once the applicants
20  submit evidence of the appropriate hours spent on litigation, "the party
21  opposing the fee application has a burden of rebuttal that requires
22  submission of evidence to the district court challenging the accuracy
23  and reasonableness of the hours charged." Gates v. Deukmejian, 987 F.2d
24  1392, 1397-98 (9th Cir. 1992).

25      **a.   Reasonable Rate**

26      Broadcom contends that its counsel charged reasonable rates given
27  the complexity of the technology and the rates charged by other large
28  national law firms that specialize in intellectual property litigation.

1  Pet. at 5-10.  Where the statutory authority for an award of attorney's

2  fees requires that the fees be "reasonable," the proper reference point

3  is whether the fees comport with the prevailing market rates in the

4  relevant community.  See Blum v. Stenson, 465 U.S. 886, 895 (1984);

5  Trevino v. Gates, 99 F.3d 911, 925 (9th Cir. 1996).  The patents-in-suit

6  did, in fact, involve complex technology related to digital video

7  compression, the explanation of which required six days of Markman

8  hearings.  As such, this litigation required counsel with both technical

9  knowledge and expertise in the unique procedures associated with patent

10 litigation.

11     WilmerHale has an established and well-regarded intellectual

12 property practice.   It also did not face the conflict of having

13 represented Qualcomm on other matters, which prevented many local San

14 Diego firms from accepting work from Broadcom.  Pet. at 8; Expert Decl.

15 of Robert S. Frank, Jr. Supp. Broadcom's Pet. ("Frank Decl.") ¶ 23.

16 Moreover, as Broadcom points out, because it has been adverse to

17 Qualcomm in many different forums at the same time, it sought out a firm

18 equipped to handle all of the cases concurrently in an effort to

19 minimize costs and promote efficiency.  Pet. at 7-8.  The Court finds

20 this decision to be prudent and, particularly in the absence of

21 objection from Qualcomm, finds Broadcom's decision to retain a Boston-

22 based firm as lead counsel to be reasonable in this case.

23     The rates charged by individual attorneys at WilmerHale, McKenna

24 Long & Aldridge and Boston IP Law Group[3] also were reasonable.  Broadcom

25

26         [3]   Broadcom employed the services of the Boston IP Law Group when Rajesh
   Vallabh left WilmerHale in April 2006 to start his own law firm (the Boston IP Law
27 Group).  Corrected Decl. of John J. Regan Supp. Broadcom's Pet. ¶ 42.  In light of Mr.
28 Vallabh's previous involvement in this case while at WilmerHale and his substantial

provided the Court with detailed descriptions of the qualifications and experience of each attorney who billed substantial hours on the case as well as an accounting of the rates charged for each attorney's services. Its expert, Robert Frank, analyzed these rates in relation to prevailing rates in the industry for attorneys with comparable experience.  Frank Decl. ¶¶ 37-51.  Specifically, Mr. Frank compared WilmerHale's rates to reported billing rates for partners and associates in private firms practicing intellectual property law in the Boston area in 2004 and 2006.[4]  Id.  In 2004, the average rate for partners in the Boston area ranged from $353 per hour (25th percentile) to $540 per hour (75th percentile).  Id. ¶ 44.  In 2006, the average rate for partners ranged from $436 per hour (25th percentile) to $575 per hour (75th percentile). Id.  WilmerHale partners John Regan, Mark Selwyn, Donald Steinberg, Vinita Ferrera, and Stephen Muller billed $435-$575 per hour in 2005/2006, $475-$600 per hour in 2006, and $510-$640 per hour in 2007. See id. ¶¶ 38-39.  With the exception of Mr. Regan's rate of $600 per hour in 2006, the rates billed by these WilmerHale attorneys fall within the average mid-range of fees charged by comparable firms in the industry.  The Court, therefore, finds them to be reasonable.  As for

technical expertise with the patents involved, WilmerHale and Broadcom continued to use his services.  Id.  The Court finds this decision was reasonable.

[4]     These average billing rates were reported in the American Intellectual Property Law Association's ("AIPLA") *Report of the Economic Survey 2005* and the *Report of the Economic Survey 2007*.  Frank Decl. ¶ 42 (citing Law and Practice Management Committee, American Intellectual Property Law Association, *Report of the Economic Survey* (eds. 2005 & 2007)).  The Federal Circuit repeatedly has approved use of AIPLA surveys as a basis for establishing the reasonableness of attorney's fees in patent cases.  See, e.g., View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 987 (Fed. Cir. 2000); Mathis, 857 F.2d at 755-56.

1    Mr. Regan, given his thirty years of litigation experience focused on
2    intellectual property issues (see Corrected Decl. of John J. Regan Supp.
3    Broadcom's Pet. ("Regan Decl.") ¶¶ 4-5), it is not unreasonable for his
4    rate to fall at the high end of the spectrum.

5         The same is true for William Lee and James Quarles, both of whom
6    are prominent and experienced litigators.   Mr. Lee has served as lead
7    trial counsel in numerous patent cases, was named by the Chief Judge for
8    the United States Court of Appeals for the Federal Circuit to the
9    Court's Advisory Committee, and has received numerous honors including
10   being named "the best IP trial lawyer in the business" in Chambers
11   Global's 2006 list of "The World's Leading Lawyers." Regan Decl. ¶¶ 22-
12   23; Frank Decl., Ex. A.   Likewise, in his extensive experience in
13   intellectual property matters, Mr. Quarles has argued before the United
14   States Supreme Court, the Federal Circuit, and several other federal
15   appellate courts and on at least two occasions, obtained reversals by
16   the Federal Circuit that were favorable to his clients.   Regan Decl.
17   ¶¶ 25-27; Frank Decl., Ex. A.   Though their rates exceed industry
18   averages, Mr. Lee's top rate of $850 per hour for 2007 and Mr. Quarles'
19   top rate of $750 per hour are still well below the $1,000 per hour or
20   more charged by other preeminent attorneys in the national arena.   See
21   Frank Decl. at ¶ 46 (citing Nathan Koppel, *Lawyers Gear Up Grand New*
22   *Fees, Hourly Rates Increasingly Hit $1,000, Breaching a Level Once Seen*
23   *as Taboo*, Wall St. J., August 22, 2007, at B1).   Additionally, Mr. Frank
24   noted that the rates charged by Mr. Lee and Mr. Quarles are similar to
25   his own 2007 billing rate of $795 per hour even though he works for a
26   smaller firm in Boston.   Id. ¶ 41.   Accordingly, and in light of
27   Qualcomm's lack of objection, the Court finds the rates charged by the
28   WilmerHale partners to be reasonable.   See Blum, 465 U.S. at 895;

1  <u>Trevino</u>, 99 F.3d at 925.

2     WilmerHale's "of counsel" attorney and associates also were billed
3  at rates generally commensurate with prevailing market rates in the
4  community. <u>Blum</u>, 465 U.S. at 895.  Rajesh Vallabh, who formerly was
5  employed by WilmerHale, was billed at $400 per hour for his services as
6  counsel in 2005 and early 2006.  Frank Decl. ¶ 38.  Now, as a principal
7  with the Boston IP Law Group, Mr. Vallabh charges Broadcom only $325 per
8  hour.  Regan Decl., Ex. F.  Given his nine years of experience in
9  intellectual property litigation (<u>see</u> Frank Decl., Ex. A) and the fact
10  that both rates are well below the partner averages listed in the AIPLA
11  survey for both 2004 and 2006, these rates are very reasonable.
12  Broadcom was billed at hourly rates between $250 and $455 for WilmerHale
13  associates, $200 for staff attorneys, and $175-195 for summer
14  associates.  Pet. at 8; Frank Decl. ¶ 38.  The AIPLA survey lists the
15  2004 average rates for associates as falling between $255 per hour (25th
16  percentile) and $338 per hour (75th percentile) and the 2006 average
17  rates as falling between $235 per hour (25th percentile) and $353 per
18  hour (75th percentile).  Frank Decl. ¶ 49.  Though four associates
19  exceeded the 75th percentile market averages in 2006, Mr. Frank opined
20  that all of the rates were in line with rates for associates with
21  comparable skills and expertise in patent litigation at Boston-based law
22  firms that litigate nationally.  <u>Id.</u> ¶ 47.  In fact, Mr. Frank noted
23  that the rates are virtually the same as those charged for associates
24  at his firm for the same time period.  <u>Id.</u>  Additionally, Broadcom
25  explains that WilmerHale discounted its standard rates in 2006 for all
26  of its attorneys working on the Broadcom case (it did not implement
27  WilmerHale's January 2006 standard rate increases for Broadcom until
28  July 2006).  Pet. at 9.  In light of all of the above and in the absence

1    of objection from Qualcomm, this Court concludes that the rates for
2    services by WilmerHale associates and counsel were reasonable.

3        The rates charged by McKenna Long & Aldridge present even less
4    concern because they not only are commensurate with prevailing rates of
5    comparable attorneys in Southern California[5], they represent significant
6    discounts from the rates typically charged by these attorneys.   See
7    Decl. of Robert S. Brewer, Jr. Supp. Broadcom's Pet. ("Brewer Decl.")
8    ¶¶ 19-21, 24-28.  Mr. Brewer billed his work for Broadcom at an hourly
9    rate of $475 throughout the litigation, which represented a discount
10   from his standard hourly rates of between $500 per hour (in 2005) and
11   $560 per hour (starting in January 2006).  Id. ¶ 19.  James McNeill, who
12   was an associate when the litigation began and was elevated to
13   partnership in 2006, billed reduced rates of $315 per hour (below $345
14   standard rate) in 2005 and $400 per hour in 2006 and 2007 (at and then
15   below his standard rates of $400 and $425, respectively).  Id. ¶ 20.
16   The only associate who worked on the case, Amy Ljungdahl, billed at
17   hourly rates of $265 in 2006 and $310 in 2007.  Id. ¶ 21.  This is less
18   than Mr. McNeill billed as an associate.  Morever, Ms. Ljungdahl billed
19   a total of only 15.6 hours on the case.  Id., Ex. BB.  As such, the
20   Court concludes that the billing rates for the McKenna Long & Aldridge
21   lawyers were reasonable.

22

23   ─────────────────

24       [5]    Though the AIPLA has not specifically surveyed average billing rates for
     attorneys in San Diego, Mr. Brewer provided the 2005 and 2007 AIPLA studies for
25   partners at private firms practicing intellectual property law in Los Angeles and San
     Francisco.  Brewer Decl. ¶ 26.  In 2004, the average billing rate for partners in the
26   75th percentile was $439 per hour in Los Angeles and $575 per hour in San Francisco.
27   Id.  In 2006, the average billing rate for partners in the 75th percentile was $553 per
     hour in Los Angeles and $530 per hour in San Francisco.  Id.
28

1    In sum, this Court finds that the rates charged to Broadcom by

2  WilmerHale, the Boston IP Law Group, and McKenna Long & Aldridge were

3  reasonable and should be used for purposes of calculating the lodestar

4  figure.  In reaching this conclusion, the Court notes that Qualcomm has

5  not challenged the reasonableness of the attorneys' hourly billing rates

6  and Broadcom paid the charged rates.

7           b.    **Reasonable Number of Hours**

8    The party seeking an award of attorneys' fees also must provide

9  adequate documentation of the hours worked and the nature of the work

10  performed.  See Hensley, 461 U.S. at 433-434.  In so doing, the party

11  should exercise "billing judgment" and "make a good faith effort to

12  exclude from a fee request hours that are excessive, redundant, or

13  otherwise unnecessary."  Id. at 434.

14    Broadcom submitted time records for each attorney documenting the

15  dates worked, tasks performed, and hours spent on all matters relating

16  to this civil action.  It seeks reimbursement for a total of 14,221.9

17  attorney hours worked and billed on this matter by WilmerHale, 286.6

18  attorney hours worked and billed by McKenna Long & Aldridge, and 240.3

19  hours worked and billed by the Boston IP Law Group.  Pet. at 10; Regan

20  Decl. ¶ 48 and Exs. A-E; Brewer Decl., Exs. CC-DD.  Broadcom voluntarily

21  eliminated from these figures all of the time charged for thirteen

22  WilmerHale attorneys and ten employees who billed relatively small

23  amounts of time on this matter[6] and additional attorneys' fees amounting

24  to approximately $230,000.  Regan Decl. ¶¶ 40-41.  Broadcom also

25  voluntarily excluded $1,629.50 billed for work by two McKenna Long &

---

27       [6]    $29,714.00 is the total eliminated.  Regan Decl., Ex. B.  This figure

28  includes attorney, paralegal, and project assistant time.  Id.

Aldridge attorneys and one paralegal and $2,000 in additional deductions from that firm. Brewer Decl. ¶¶ 33-34. With the possible exception of very recent bills, Broadcom has paid all of its legal fees. Regan Decl. ¶ 38; Brewer Decl. ¶ 18.

Though Qualcomm has not opposed Broadcom's request, this Court must still consider whether the number of hours expended was reasonable. See Hensley, 461 U.S. at 433-434. In this case, the litigation involved two patents, complex technology, six days of Markman hearings, extensive motion practice, ten days of trial, and prolonged post-trial litigation due to Qualcomm's misconduct. In light of these circumstances, the Court finds that Broadcom's counsel expended a reasonable number of hours and exercised appropriate billing judgment in reducing their fees.[7]

### c. **Fees for Work Performed by Paralegals and Other Professionals**

In addition to attorneys' fees, Broadcom seeks to recover fees for work by paralegals and other professionals. Pet. at 12-14. The Federal Circuit has concluded that the purpose of § 285 is "to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." Central Soya Co., Inc. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983). Under this interpretation, an award of

---

[7]     Broadcom's attorneys' fees request properly includes reasonable time spent in preparing its fee petition. This amount is recoverable under 35 U.S.C. § 285. See Mathis, 857 F.2d at 753, 756 (affirming award of such fees and suggesting that the goal of § 285 is to place the injured party "as near as may be, in the situation he would have occupied if the wrong had not been committed"); In re Nucorp Energy, Inc., 764 F.2d 655, 659-60 (9th Cir. 1985) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable").

attorneys' fees properly includes recovery for fees charged by paralegal and non-legal personnel.  Id.  This accords with the Supreme Court's conclusion that where a statute provides for an award of reasonable attorneys' fees, this award may include an award of reasonable paralegal fees if the prevailing practice in the community is to bill paralegal time separately at market rates.  See Missouri v. Jenkins by Agyei, 491 U.S. 274, 287 (1989).

The Court agrees with Broadcom that it is the practice of most large and mid-sized firms to delegate certain work to paralegals, project assistants, library research assistants and client services staff.  See Pet. at 13.  Because these individuals are able to provide assistance to counsel at greatly reduced rates, WilmerHale, McKenna Long & Aldridge, and the Boston IP Law Group acted prudently by delegating work to these professionals.  See Jenkins by Agyei, 491 U.S. at 288 (concluding that encouraging use of lower cost paralegals rather than attorneys promotes cost-effective delivery of legal services). Accordingly, the Court finds it appropriate to include these expenses, to the extent they were separately billed, in calculating the total attorneys' fees award.

### d.   Final Lodestar Calculation

In sum, this Court **RECOMMENDS** that Broadcom be awarded the full $6,753,749.60 in attorneys' fees for which it seeks reimbursement.[8]

---

[8]      In making this recommendation, the Court also notes that Qualcomm has not objected or presented evidence that the fees charged by its two law firms were substantially less.  Cf. Lubrizol Corp. v. Exxon Corp., 957 F.2d 1302, 1308 (5th Cir. 1992) (upholding district court's determination that the amount of attorneys' fees incurred by the prevailing party was reasonable because it was comparable to the fees expended by the prevailing party's opponent).

-15-

### 2.   Application of the *Kerr* Factors

While neither Broadcom nor Qualcomm seeks any adjustment to the lodestar based on the <u>Kerr</u> factors[9], the Court must briefly consider whether any such adjustment is necessary.   <u>Kerr</u>, 526 F.2d at 70 ("failure to consider such factors constitutes an abuse of discretion"). In this case, the Court notes that the instant litigation involved complex technology, necessitating highly skilled counsel.   Broadcom's counsel devoted extensive time to the case, particularly given the relatively short time left to complete discovery after the parties finally executed a protective order.   Broadcom's counsel obtained excellent results for their client and WilmerHale continues to represent Broadcom in other litigation against Qualcomm.   All of these factors support the Court's recommendation that Broadcom receive all of its attorneys' fees.   Accordingly, the Court **RECOMMENDS** that no adjustment to the lodestar figure be made.

### B.   Litigation Expenses

In its Petition, Broadcom also seeks to recover various expenses it incurred in the process of litigating this case.[10]   Specifically, Broadcom requests reimbursement for the following costs: (1) $156,576.61 for photocopies, (2) $518.42 for transcripts, (3) $34,466.74 for deposition-related items, (4) $520,822.11 for travel expenses, (5) $68,339.92 for electronic research, (6) $4,926.74 for telephone charges, (7) $18,319.43 for production of source code, (8) $114,174.64

---

[9]   <u>See</u> note 2 *supra* for list of <u>Kerr</u> factors.

[10]   The Court accepts Broadcom's representation that these expenses are separate from those it sought through its Bill of Costs, which was submitted to the Court on August 20, 2007, pursuant to Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920 and Civil Local Rule 54.1.   <u>See</u> Pet. at 15.

for legal graphics, and (9) $44,086.31 in miscellaneous expenses such as courier service fees, printing and scanning fees, costs to obtain file histories from the U.S. Patent and Trademark Office, *pro hac vice* application fees and the cost of obtaining office supplies off-site in San Diego.  Pet. at 16-21.

As previously noted, Judge Brewster determined that Qualcomm's litigation misconduct justified Qualcomm's payment of all "attorneys' fees, court costs, expert witness fees, travel expenses, and any other litigation costs reasonably incurred by Broadcom" in the defense of this case.  Doc. No. 594 at 4.  The Federal Circuit has interpreted 35 U.S.C. § 285 as including not only the recovery of attorney fees, but also the recovery of all reasonable expenses incurred in prosecuting the entire action.  <u>Central Soya</u>, 723 F.2d at 1578.  Thus, upon finding a case exceptional, an award of all reasonable and necessary expenses related to the litigation is properly within the scope of 35 U.S.C. § 285.  <u>Id.</u> (affirming award of expenses).  Such expenses may include costs ordinarily not recoverable under 28 U.S.C. § 1920 and Rule 54(d) of the Federal Rules of Civil Procedure such as "overhead" clerical expenses and lodging expenses of counsel and witnesses.  <u>Mathis</u>, 857 F.2d at 758-59.

Qualcomm does not object to the award of these fees and does not argue that they are unreasonable.  The Court's own review confirms Qualcomm's conclusion that the requested expenses were reasonably incurred in defending this exceptional case.  Accordingly, the Court finds that Broadcom is entitled to recover the $962,230.92 it seeks in additional litigation costs and **RECOMMENDS** that Judge Brewster award that amount.

///

## C.   **Expert Witness Fees**

Broadcom seeks to recoup its expert witness fees in accordance with Judge Brewster's conclusion that it is entitled to the same. <u>See</u> Doc. No. 594 at 4.  As Broadcom correctly notes, 35 U.S.C. § 285 does not provide for an award of expert witness fees.  <u>Amsted Indus., Inc. v. Buckeye Steel Castings Co.</u>, 23 F.3d 374, 377 (Fed. Cir. 1994) (citing <u>West Virginia Univ. Hosps., Inc. v. Casey</u>, 499 U.S. 83 (1991)). However, it is within the Court's inherent authority to award expert witness fees as sanctions upon a finding of fraud or abuse of the judicial process.  <u>Id.</u> at 377-78 (citing <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 46 (1991) and <u>Mathis</u>, 857 F.2d at 754, 757-58).  Evidence that a party has engaged in fraudulent conduct, filed false pleadings, used oppressive or harassing tactics, committed discovery abuse and/or presented misleading evidence at trial may justify such a finding.  <u>Id.</u> at 379.

In this case, Judge Brewster determined this was an exceptional case due to Qualcomm's egregious misconduct.  The Court explicitly found that:

> The track of this conduct following the adoption of the H.264 standard exposes aggravated litigation abuse.  This abuse commenced with Qualcomm's abrupt commencement of suit, then continued (1) in discovery through Qualcomm's constant stonewalling, concealment, and repeated misrepresentations concerning existing corporate documentary evidence that would have revealed the fullness of the corporate plan; and (2) in trial through Qualcomm's presentation of numerous witnesses who steadfastly testified falsely denying even awareness, let alone participation in the JVT project and through the actions of Qualcomm's lead and co-counsel up to the time Qualcomm substituted new lead counsel, who adamantly denied the obvious and then, when the truth was discovered and exposed by the document production, sequentially contended denial of relevance, justification, mistake, and finally non-awareness.

Waiver Order at 22 (as adopted by the Exceptional Case Order at 3).  In

light of Judge Brewster's findings, the Court finds that it is within this Court's inherent authority to award Broadcom its expert fees. Amsted Indus., 23 F.3d at 377.

As to the amount of such fees, Broadcom seeks to recover the fees paid to four experts. Pet. at 14-15.  It provides the following summary of the experts, the issues they addressed, and the fees they charged:

- **Dr. Kannan Ramchandran, Ph.D** testified at trial on non-infringement, as well as Broadcom's invalidity defense. Broadcom was charged $268,789.15 for Dr. Ramchandran's services.

- **Michael Wagner** was prepared to testify at trial, if necessary, as to Qualcomm's damages claim.  Broadcom paid Mr. Wagner $274,142.21 for his services.

- **Cliff Reader, Ph.D** testified at trial via deposition on standards issues regarding the operation of standards-setting bodies, and specifically, the JVT.  Mr. Reader also provided several declarations and live trial testimony concerning technical matters for both patents during the Markman hearings.  Mr. Reader charged $301,471.36 for his services.

- **Martin Adelman, Esq.** provided an expert report regarding U.S. Patent and Trademark Office procedures, in response to an expert report prepared by a Qualcomm expert. Broadcom incurred charges of $8,250.00 for Mr. Adelman's services.

Id. at 15.  Broadcom notes that it voluntarily is absorbing the costs of several other experts in the interests of being conservative.  Id. at 14.  Additionally, Broadcom bases its decision to seek compensation for this number of experts on the fact that Qualcomm retained at least four experts.  Id.

Given the nature and complexity of this litigation, the Court finds that use of these experts was reasonably necessary.  The Court further finds that, in light of the complex nature of the testimony topics and in the absence of objection from Qualcomm, these experts' combined fees of $852,652.72 are reasonable.  The Court, therefore, **RECOMMENDS** that

Broadcom be awarded that amount.

**D.   Prejudgment Interest**

Broadcom argues that the exceptional circumstances of this case warrant an award of prejudgment interest on the total amount the Court requires Qualcomm to reimburse Broadcom.  Pet. at 22-23.  As Broadcom points out, the Court may exercise its inherent equitable power to award prejudgment interest on the sum of an award made under Section 285, but only in cases involving "bad faith or other exceptional circumstances." Mathis, 857 F.2d at 761; see also IVAC Corp. v. Terumo Corp., 1190 WL 180202 at *3, *5 (S.D. Cal. 1990) (Brewster, J.) (awarding prejudgment interest on attorneys' fees and expenses award in a § 285 case); Beckman Instruments Inc. v. LKB Produkter AB, 17 U.S.P.Q. 2d 1190, 1198-1200 (D. Md. 1990) (applying Mathis to award prejudgment interest on § 285 award).

Judge Brewster found by clear and convincing evidence that Qualcomm "intentionally organized a plan of action to shield" its patents from the standards-setting body in an effort to become an "indispensable licensor" to any entity seeking to produce H.264-compliant products. Waiver Order at 21.  The Court further found that to perpetuate this plan, Qualcomm and its employees and witnesses engaged in "widespread and undeniable misconduct" "throughout the present litigation, including during discovery, pre-trial motions-practice, trial and post-trial proceedings."  Id. at 25.  In light of Judge Brewster's findings (Exceptional Case Order at 3-4 and Waiver Order at 5-53), the Court concludes that this is one of the rare cases involving bad faith and exceptional circumstances that warrants an award of prejudgment interest.  See Mathis, 857 F.2d at 761.  The Court also finds that an award of prejudgment interest on the § 285 award is necessary and

1  appropriate to make Broadcom whole. Cf. General Motors Corp. v. Devex
2  Corp., 461 U.S. 648, 655-56 (1983) (purpose of prejudgment interest in
3  context of 35 U.S.C. § 284 is to put the prevailing party in the
4  position it would have occupied had the wrongful conduct not occurred);
5  Beckman Instruments, 17 U.S.P.Q. 2d at 1199 (finding award of
6  prejudgment interest on § 285 attorneys' fees award necessary to make
7  Beckman whole).

8      As to the amount of the prejudgment interest award, several courts
9  have found it appropriate to base prejudgment interest in patent cases
10 on the state statutory rate. See e.g. Beckman Instruments, 17 U.S.P.Q.
11 2d at 1199 (applying Maryland's 10% statutory rate); Johns-Manville
12 Corp. v. Guardian Indus. Corp., 718 F. Supp. 1310, 1316-17 (E.D. Mich.
13 1989) (using Michigan's 12% rate); Ortloff Corp. v. Gulsby Eng'q, Inc.,
14 706 F. Supp. 1295, 1309 (S.D. Tex. 1988) (applying Texas' minimum 10%
15 statutory rate), aff'd 884 F.2d 1399 (Fed. Cir. 1989). This Court
16 agrees that the state rate is an appropriate guideline. Because this
17 Court sits in California, the Court looks to Article XV, section 1 of
18 the California Constitution, which sets the interest rates for judgments
19 rendered in this state at 7 percent per annum. Cal. Const. art 15, § 1;
20 see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 420 F.
21 Supp. 2d 1070, 1077 (N.D. Cal. 2006) (applying California's 7% rate of
22 prejudgment interest in a non-patent case). This interest rate shall
23 be applied to the entire § 285 award, calculated from October 14, 2005,
24 the date Qualcomm filed its complaint, to January 26, 2007, the last day
25 of trial.[11]

26

27      [11]      Broadcom did not propose a commencement date but recommended the last day
28 of trial as the terminating date. Pet. at 23. Qualcomm did not propose any dates, nor

1    Accordingly, this Court **RECOMMENDS** that Broadcom be awarded

2    $691,351.85[12] in prejudgment interest.

3    **E.    Post-Judgment Interest**

4    Broadcom also seeks post-judgment interest on the fee award

5    pursuant to 28 U.S.C. § 1961. Pet. at 22. Section 1961 provides that

6    "[i]nterest ***shall*** be allowed on any money judgment in a civil case

7    recovered in a district court" and "[s]uch interest ***shall*** be calculated

8    from the date of the entry of the judgment, at a rate equal to the

9    weekly average 1-year constant maturity Treasury yield, as published by

10   the Board of Governors of the Federal Reserve System, for the calendar

11   week preceding the date of the judgment" (emphasis added). 28 U.S.C.

12   § 1961(a) (West 2000); see also Mathis, 857 F.2d at 760 ("'[a]ny

13   judgment' in Section 1961 includes a judgment awarding attorneys fees").

14   In this case, the District Judge entered a final judgment on August 6,

15   2007. Doc. No. 595. The weekly average for the week preceding August

16   6, 2007 was 4.91 percent.[13]    Accordingly, this Court finds it

17   _____

18   did it object to the dates suggested by Broadcom. Given the misconduct in this case

19   and Judge Brewster's findings, the Court finds it appropriate to impose prejudgment

     interest from the date Qualcomm filed its complaint to the last day of trial. Mathis,

20   857 F.2d at 761 n.2.

21   [12]    The total recommended award pursuant to § 285 is $7,715,980.52 (adding

22   $6,753,749.60 in attorneys' fees to $962,230.92 in other litigation expenses). 467

     days elapsed between filing of the complaint and the last day of trial. Using the

23   "Interest = Principal x Interest Rate x Time" formula, the total prejudgment interest

24   is $691,351.85 ($7,715,980.52 x. 0.07 x 1.28).

25   [13]    The Administrative Office of the U.S. Courts maintains a web site at which

26   the currently-applicable interest rates for post-judgment interest, as published by the

     Federal Reserve, are posted. See Post Judgment Interest Rates,

27   http://www.uscourts.gov/postjud/postjud.html (last visited October 29, 2007). The

28   Administrative Office instructs courts that in cases such as this where the judgment

appropriate to award Broadcom post-judgment interest on the final fee award of $8,568,633.24 at 4.91 percent accruing from August 6, 2007. See  Mathis, 857 F.2d at 760 ("[i]nterest on an attorney fee award [] runs from the date of the judgment establishing the right to the award, not the date of the judgment establishing its quantum").

### CONCLUSION AND RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Judge Brewster issue an Order approving and adopting this Report and Recommendation, granting Broadcom's Corrected Petition, and awarding Broadcom the following fees and costs:

1.   $6,753,749.60 in attorneys' fees;

2.   $962,230.92 in additional litigation costs;

3.   $852,652.72 in expert fees;

4.   $691,351.85 in prejudgment interest; and,

5.   post-judgment interest on the final fee award of $8,568,633.24 at 4.91 percent accruing from August 6, 2007.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than November 13, 2007**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than November 27, 2007**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections

---

date is the same as the release date, the court should select the prior week's release. Id.  Accordingly, this Court utilizes the interest rate listed for the July 27, 2007 release date.

on appeal of the Court's order. <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991) (confirming that in the Ninth Circuit, failure to object to a magistrate judge's report waives the party's right to challenge the magistrate judge's factual findings).

DATED:  October 29, 2007

BARBARA L. MAJOR
United States Magistrate Judge

COPY TO:

HONORABLE RUDI M. BREWSTER
U.S. DISTRICT JUDGE

ALL COUNSEL

05cv1958-B (BLM)