Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

CHAPMAN POPIK & WHITE LLP
Merri A. Baldwin (SBN 141957)
John G. Heller (SBN 129901)
650 California Street, 19th Floor
San Francisco, CA 94108
Telephone: (415) 352-3000
Facsimile: (415) 352-3030
mbaldwin@chapop.com
jheller@chapop.com
Attorneys for Responding Attorney
Adam Bier

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>Plaintiff,<br><br>Vs.<br><br>BROADCOM CORPORATION,<br><br>Defendant,<br><br>and RELATED COUNTERCLAIMS. | CASE NO. 05CV1958-B (BLM)<br><br>RESPONDING ATTORNEY ADAM BIER'S OPENING MEMORANDUM ON REMANDED ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED<br><br>Hearing Date: January 13-15, 2010<br>Time: To be Determined<br>Judge: Magistrate Judge Barbara L. Major<br>Dept.: To be Determined |

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 2

    A. Preparation of Ms. Raveendran ................................................................... 3

        1. The January 7 Meeting.................................................................... 4

        2. The January 14 Meeting.................................................................. 5

    B. Post-Trial Communications and Document Production............................... 6

III. LEGAL ARGUMENT .......................................................................................... 6

    A. Inherent Power Sanctions Require a Specific Finding of Bad Faith or Conduct Tantamount to Bad Faith ............................................. 7

    B. Imposition of Inherent Power Sanctions Requires Substantial Due Process Protections Including a Heightened Standard of Proof .......... 9

IV. RESPONDING ATTORNEY BIER SHOULD NOT BE SANCTIONED ........ 10

    A. Bier Did Not Willfully Ignore "Red Flags" Pertaining to Discovery ................................................................................................. 11

    B. The Evidence Does Not Support a Finding that Bier Acted in Bad Faith or With an Improper Purpose..................................................... 12

    C. Equitable Factors Weigh Against Sanctions ............................................. 13

V. CONCLUSION ................................................................................................... 14

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

# TABLE OF AUTHORITIES

Page

## CASES

*Anheuser-Busch, Inc. v. Natural Beverage Distributors,*
    69 F.3d 337 (9th Cir. 1995)..................................................................8

*Bell v. United States District Court,*
    2003 U.S. Dist. LEXIS 26010..............................................................13

*Blue v. United States Dept. of Army,*
    914 F.2d 525 (4th Cir. 1990)................................................................14

*Books Are Fun, Ltd. v. Rosebrough,*
    239 F.R.D. 532 (S.D. Iowa 2007)..........................................................8

*Brown v. Federation of State Medical Bds.*
    830 F.2d 1429, (7th Cir. 1987)..............................................................14

*Chambers v. Nasco, Inc.,*
    501 U.S. 32 (1991)............................................................................7,9

*F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,*
    417 U.S. 116 (1974)...............................................................................7

*Fink v. Gomez,*
    239 F.3d 989 (9th Cir. 2001)..............................................................7,8

*Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.,*
    244 F.3d 1128 (9th Cir. 2001)...............................................................9

*In re Keegan Management Co. Sec. Litig. (Keegan Management v. Moore)*
    78 F.3d 431 (9th Cir. 1995)...................................................................7

*Primus Automotive Financial Services, Inc. v. Batarse,*
    115 F.3d 644 (9th Cir. 1997)..................................................................7

*Salkil v. Mount Sterling Township Police Dept.,*
    458 F.3d 520 (6th Cir. 2006)..................................................................9

*Shepherd v. ABC, Inc.,*
    62 F.3d 1469 (D.C. Cir. 1995).............................................................10

*TVT Records, Inc. v. TVT Music, Inc.,*
    2006 U.S. Dist. LEXIS 62230 (S.D.N.Y. 2006)....................................9

*Twee Jonge Gezellen (PTY) Ltd. v. Owens-Illinois,*
    2007 U.S. Dist. LEXIS 96792 (N.D. Ohio 2007)..................................9

*United States v. Stoneberger,*
    805 F.2d 1391 (9th Cir. 1986)................................................................7

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause Why Sanctions Should Not Be Imposed

No. 05cv1958-B (BLM)

Privileged and Confidential -- Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

# TABLE OF AUTHORITIES

**Page**

## CASES (cont.)

*Wilson v. PFS Mgmt. Co.*,
   2008 U.S. Dist. LEXIS 22282 (S.D. Cal. 2008)..................................................7

*Yagman v. Republic Ins.*,
   987 F.2d 622 (9th Cir. 1993)..............................................................................7

*Zambrano v. City of Tustin*,
   885 F.2d 1473 (9th Cir. 1989)............................................................................8

## RULES

28 U.S.C. § 1927..........................................................................................................9

Fed. R. Civ. P. 11........................................................................................................6

Fed. R. Civ. P. 26(g)(3)...............................................................................................6

Fed. R. Civ. P. 37(b)...................................................................................................6

---

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                              No. 05cv1958-B (BLM)

**Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order**

Responding Attorney Adam Bier ("Responding Attorney" or "Bier") submits this response, after remand, to the Court's Order to Show Cause dated August 13, 2007. Bier also joins in and incorporates by reference the points and authorities cited in the Opening Memo filed by Responding Attorneys Batchelder, Mammen and Leung this same date ("BML Memo").

## I. INTRODUCTION

Adam Bier's involvement in these sanctions proceedings stems from what was a very limited role: Bier, a junior associate at Day Casebeer, had no involvement in document collection and production in this case. Just before trial, Bier was asked to help prepare a Qualcomm witness, Viji Raveendran, for her testimony. During that trial preparation, Bier received copies of emails that turned out not to have been previously collected or produced in discovery. Bier's response to these emails—what he did and what he did not do—is the sole issue in these sanctions proceedings as to Bier.

A close examination of all the facts, including those previously suppressed by virtue of Qualcomm's assertion of the privilege, reveals no justifiable basis on which Bier may be sanctioned. The lone email he was provided on his first day preparing Ms. Raveendran sounded no alarms because it simply confirmed what Bier understood to be to be a fact established by a proposed trial exhibit: that Raveendran's email address was on the avc_ce reflector. Because of that, and because his focus was on preparing one of his first witnesses for trial, it did not occur to Bier to consider the discovery status of the document. When he located documents in his next session with Raveendran a week later that did appear to contain new information, Bier did just what a junior associate is expected to do: he notified his supervising attorneys. The notion that Bier ignored red flags pertaining to discovery simply does not withstand scrutiny.

But just as critically, even if Bier were somehow remiss in his handling of these issues, there is no evidence, either direct or circumstantial, that he acted in bad faith or with an improper purpose. None of the relevant testimony or documents support an inference that Bier was attempting to conceal documents that he knew to be responsive, or to turn a blind eye to potentially responsive documents that he knew might exist. Bier's conduct points instead in the other direction, and reveals Bier to be an associate who understood his obligation to alert his superiors when he stumbled upon

**Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order**

something potentially significant. Because there is no evidence of bad faith or improper motive, sanctions cannot be imposed.

## II.   STATEMENT OF FACTS

Bier began working at the Day Casebeer firm in October 2005. Declaration of Adam Bier dated October 13, 2009, ¶ 4.[1] Having finished a one-year clerkship with the Southern District, he entered the firm as a second-year associate, though it was his first law-firm job out of school. *Id.* This was one of several cases Bier was assigned. Like other junior associates on the litigation team, Bier was given discrete and focused tasks. ¶ 6. He was one a group of attorneys working on issues related to Qualcomm's document requests to Broadcom ("offensive discovery"). ¶ 8. Bier had no involvement in pre-trial document collection or production or any other facet of "defensive discovery" in this case, that is, Qualcomm's responses to Broadcom's discovery requests. ¶ 7. These tasks were the responsibility of a team of lawyers that did not include Bier. As Bier learned from his attendance at weekly team meetings attended by attorneys and paralegals from Qualcomm, Day Casebeer and other law firms, extensive efforts were being made to respond to Broadcom's discovery requests, including the collection of responsive documents, and vast resources were being devoted to this effort. ¶ 10.

At trial, Bier's primary responsibility was to coordinate the twice-daily exchange of exhibits and disclosure of witnesses. This was a demanding and time-consuming task that involved collecting this information from the Qualcomm trial attorneys and providing it to Broadcom's counsel, collecting in turn Broadcom's disclosures for distribution to the Qualcomm trial lawyers, and then serving as the point person for extensive back-and-forth negotiations about admissibility. ¶ 13.

Shortly before trial, Bier was also asked to assist trial counsel Lee Patch in preparing two Qualcomm employees for their testimony -- Viji Raveendran and Yiliang Bao. ¶ 15. Mr. Patch, the attorney who would examine these witnesses at trial, explained to Bier the anticipated subject matter of their testimony. ¶ 16. It was here that Bier first learned of claims and defenses

---

[1] All paragraph references are to Bier's declaration, which is submitted herewith.

2

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                          No. 05cv1958-B (BLM)

**Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order**

pertaining to Qualcomm's alleged participation in the Joint Video Team ("JVT"). Prior to that time, Bier had had no involvement in any part of the case that concerned Qualcomm's participation in JVT. ¶ 16. Similarly, Bier had no knowledge of arguments that had been made by Qualcomm that concerned the waiver issues, to which JVT related. ¶ 17.

### A. Preparation Of Ms. Raveendran

Bier's primary role in the witness preparation was to review with the witness the questions Mr. Patch expected to ask. ¶ 19. The goal was to practice the question and answer process so that the witness became comfortable with the direct examination. *Id.* Bier had never before prepared a witness, and had never received any training in witness preparation. ¶ 20.

Bier met with Ms. Raveendran several times before trial to prepare her for her testimony, including on January 7, January 14, January 22, and January 24, 2007. ¶ 21. Other Day Casebeer lawyers participated in each of these meetings, for at least some portion of time. *Id.*

One of the factual issues Bier was instructed to cover in Ms. Raveendran's examination was her knowledge of and participation in setting the ISO/IEC MPEG-4 Part 10 standard (also known as H.264). One issue raised by a document provided as a prospective trial exhibit was whether Ms. Raveendran had been involved with an MPEG testing ad hoc group called the AVC Coding Efficiency Ad Hoc Group. ¶ 22. That document, a December 2002 Ad Hoc Report, showed Ms. Raveendran's email address listed as part of the report's Annex A, which contained a list of "members of list 'avc-ce'."

Prior to meeting with Ms. Raveendran, Bier discussed with Patch and other attorneys their questions about how Ms. Raveendran's email address had been added to the list of ad hoc group members. ¶ 23. It was in these discussions that Bier learned that Ms. Raveendran had already told lawyers from both Day Casebeer and Heller Ehrman that she did not know for certain how her address had been added to that list, and that she had suggested that someone else may have done so. *Id.* In passing, Patch also raised a question as to whether Ms. Raveendran's email address was actually subscribed to the reflector. ¶ 24. Once Bier began to look into that issue, there was no question in his mind that the evidence showed that Raveendran had subscribed to the reflector (by

3

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                          No. 05cv1958-B (BLM)

**Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order**

someone): the form and content of Annex A, including its reference to "179 subscribers," made that clear. *Id.*

On January 5, 2007, Patch instructed Bier to forward Ms. Raveendran an email which referenced the reflector as an MPEG reflector. Nothing in declaration to support. Bier forwarded the email to Raveendran, asking whether it was possible someone had obtained her email address for the ad hoc group from the reflector. *Id.*

### 1. The January 7 Meeting

Bier met with Ms. Raveendran for the first time on January 7. ¶ 26. Patch also attended part of that meeting. *Id.* As instructed, Bier covered with Ms. Raveendran the issue of how her email address had been added to the ad hoc group list and email reflector. ¶ 27. During that discussion, Raveendran confirmed she had been added to the reflector. *Id.* Either at the end of their meeting or afterwards, Raveendran sent to him an email dated August 6, 2002.[2] *Id.* This was an automated email she had received from the computer hosting the avc_ce reflector.[3] ¶ *Id.* Bier has no present recollection of reviewing that email on January 7, 2007 or during trial. ¶ 28. Likewise, he has no recollection of showing it to Mr. Patch. *Id.* However, Bier recalls telling Mr. Patch that he had confirmed that Raveendran was subscribed to the avc_ce reflector, although he had not been able to determine how she had been added or by whom. ¶ 28.

It did not occur to Bier to consider the discovery status of the August 2002 email. ¶ 29. This was due partly to the fact that, since the email merely confirmed what Bier believed to be an established fact already proven by a designated trial exhibit, it did not appear to him to be significant. *Id.* Bier was unaware at that time that attorneys for Qualcomm had earlier argued that there was no evidence Raveendran was subscribed to the reflector. ¶ The document did not resolve the question Bier had been instructed to follow up on as to how Ms. Raveendran's name had been added to the reflector. On this point, Raveendran could provide no assistance, except to reiterate her prior assurance that she had not added herself to the avc_ce list. *Id.* Second, Bier was

---

[2] Raveendran forwarded the email to Bier at 7:01 p.m. that evening. This was either at the end of their meeting or afterwards. ¶ 28.

[3] This was the only email Raveendran forwarded to Bier that evening. ¶ 25.

4

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                           No. 05cv1958-B (BLM)

Case 3:05-cv-01958-B-BLM   Document 944   Filed 11/02/09   Page 9 of 18
Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

focused on the task at hand of preparing Raveendran for trial, and did not stop to consider whether this document had been or should be produced. *Id.*

Bier accepted Raveendran's assurances that she had not added herself to the reflector at face value; nothing about the August 6, 2002 email caused him to suspect that Ms. Raveendran's representations were false. Ms. Raveendran did not at that meeting – or any other -- disclose to Bier a second email, also dated August 6, 2002, that would have undercut the truth of her representations, and shown definitively that Raveendran had in fact added herself to the reflector. ¶ 30. That document would only be discovered months later.

### 2.     The January 14 Meeting

Bier next met with Ms. Raveendran a week later, on January 14, 2007. Between the time of his first and second meetings with Raveendran, Bier had been fully occupied in his primary task of coordinating exchanges with Broadcom's counsel and related activities. ¶ 31.

The focus on Ms. Raveendran's proposed direct examination continued to be her lack of involvement in JVT, including her lack of participation in the ad hoc group and reflector. Ms. Raveendran told Bier and other Day Casebeer lawyers that she did not recall ever reading any email from this reflector. ¶ 32. During the January 14 meeting, Bier requested that a search be performed on Ms. Raveendran's computer. ¶ 33. The search on January 14 yielded a result of 24 emails, three of which were duplicates of other emails in the set. *Id.* In contrast to the email forwarded to Bier on January 7, which, to Bier, simply confirmed the established fact that Ms. Raveendran's email address had been added to the reflector, the emails discovered on January 14 contained what Bier believed to be new information. They showed that the reflector had apparently been actively used by its participants, a fact that Ms. Raveendran had said was not always the case for these types of reflectors, and that Ms. Raveendran had received emails from other subscribers via the reflector. ¶ 34.

Bier immediately brought the emails to the attention of Lee Patch and Chris Mammen. ¶ 35. Mr. Patch or Mr. Mammen raised the question of whether these had been produced in discovery, whether they were responsive to Broadcom's requests for production, and whether they should be produced. Bier was asked to help Mammen determine whether these emails were

5
Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                            No. 05cv1958-B (BLM)

**Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order**

within the scope of what Qualcomm had agreed in its discovery responses to produce. ¶ 35. Bier then reviewed, for the first time, Broadcom's requests for production of documents, and Qualcomm's responses to those requests. *Id.* Bier reached the conclusion that the emails were not within the scope of what Qualcomm had agreed to produce, and told Patch and Mammen what he had determined. ¶ 35. After an independent review, they concurred, and decided not to produce the emails at that time. *Id.*

### B. Post-Trial Communications and Document Production

After the trial ended, Bier was for a period of time the person responsible for coordinating the post-trial meet-and-confer process with Broadcom's counsel, supervised by Patch, Mammen, and/or Batchelder. ¶ 41. On March 5, 2007, Broadcom asked Qualcomm to search for additional documents related to H.264 and JVT. ¶ 42. On March 7, 2007, Qualcomm agreed to conduct searches for five witnesses. *Id.*.

Bier worked with Qualcomm staff, who did what turned out to be extensive work required to gather the document repositories and conduct the searches. ¶ 43-45. Qualcomm staff reported continuing delays and difficulties in getting the documents collected and searches performed. ¶45. It was not until the end of March that documents were available for counsel to review. ¶ 47. Bier's responsibilities on the case ended on April 1, 2007. ¶ 48.

### III. LEGAL ARGUMENT

The issue before this Court with respect to Bier is whether the facts provide a basis upon which to impose inherent power sanctions. Other types of sanctions authorized by the Federal Rules do not apply: Bier did not sign any discovery responses, and thus is not subject to sanctions pursuant to Rule 26(g)(3); and there are no discovery orders alleged to have been violated, giving rise to sanctions pursuant to Rule 37(b). *NLRB v. International Medication Systems, Inc.*, 640 F.2d 1110, 1115 (9th Cir. 1981)(sanctions may be imposed only for violation of judicial order). Further, Rule 11 does not apply here, since the scope of these proceedings is limited to discovery matters.[4]

---

[4] Even if Rule 11 were applicable to these proceedings generally, Bier did not sign any pleading, written motion or other paper that is relevant to the matters addressed by the Order to Show Cause.

6

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                    No. 05cv1958-B (BLM)

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

A full consideration of all the facts and circumstances demonstrates that inherent power sanctions cannot be imposed against Bier. Bier's actions must be examined in the context of his relative inexperience, his non-involvement in defensive discovery, and the absence of any reason for him to disbelieve the assurances made by Raveendran. When so examined, there is simply no evidence of bad faith or improper purpose that would support an assessment of sanctions against him.

### A. Inherent Power Sanctions Require a Specific Finding of Bad Faith or Conduct Tantamount to Bad Faith

It is well-established that an imposition of sanctions pursuant to the Court's inherent powers requires a finding of bad faith. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991)(attorney's fees sanctions may be imposed "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974)).

The Ninth Circuit has made clear that imposition of inherent power sanctions requires a specific finding of bad faith, or conduct tantamount to bad faith. *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986)(holding there was no basis for imposing inherent power sanctions where there was no specific finding of bad faith); *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993)(sanctions vacated where there was no evidence that the attorney had "acted in bad faith or intended to mislead the court."). Even conduct that is merely reckless will not suffice as a basis for sanctions; something more is required, such as an improper purpose that makes such conduct tantamount to bad faith. *Fink v. Gomez*, 239 F.3d 989, 993-994 (9th Cir. 2001); *In re Keegan Management Co. Sec. Litig. (Keegan Management v. Moore)*, 78 F.3d 431, 435 (9th Cir. 1995)(recklessness "is an insufficient basis for sanctions under a court's inherent power."); *Wilson v. PFS Mgmt. Co.*, 2008 U.S. Dist. LEXIS 22282, at *13 (S.D. Cal. 2008)("[T]o sanction a party pursuant to a court's inherent power, the court must find 'bad faith or conduct tantamount to bad faith,' which could include 'an attorney's reckless misstatements of law and fact' coupled with an improper purpose.'"). "The bad faith requirement sets a high threshold." *Primus Automotive Financial Services, Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Sanctions may not be

7

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                    No. 05cv1958-B (BLM)

**Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order**

assessed for an attorney's "ordinary negligence." *Zambrano v. City of Tustin*, 885 F.2d 1473, 1483 (9th Cir. 1989).[5]

In order to find the requisite bad faith, a court must find specific evidence of an attorney's "subjective bad faith" or, as the court held in *Fink*, "reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another." *Fink*, 239 F.3d at 994; *Keegan*, 78 F.3d at 436. In *Zambrano*, the Ninth Circuit reversed sanctions against two attorneys for their failure to request admission to the district bar, holding that there was no evidence of "intentional misconduct," i.e., a knowing failure to comply with the court's admission requirements. *Zambrano*, 885 F.2d at 1485. Absent specific evidence of an attorney's improper intent, even "careless and slovenly legal work" resulting in an attorney's "careless characterization" of a prior petition against him made in pleadings submitted to the court will not support sanctions. *Yagman*, 987 F.2d at 628.

In the context of conduct relating to discovery, courts have generally required a specific finding of intentional concealment of evidence in order to justify inherent power sanctions. *See, e.g., Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 350-352 (9th Cir. 1995) (party's intentional concealment of documents and repeated misrepresentations about their existence justified sanction in the form of dismissal). In *Books Are Fun, Ltd. v. Rosebrough*, 239 F.R.D. 532 (S.D. Iowa 2007), a party sought sanctions against the other for alleged failure to comply with discovery obligations, including the failure to disclose an agreement that had been stored in the law firm's safe. The court first refused to issue § 1927 sanctions, because there was no evidence the attorneys actually knew the client had given the document to them; mere "suspicion" by the court of such knowledge was not enough. 239 F.R.D. at 545. Likewise, the court found there was insufficient basis to impose inherent power sanctions because there was no "specific evidence any member of the Dickstein Firm took a conscious, deliberate step to conceal [the agreement] or misrepresent its contents." 239 F.R.D. at 556. Absent such conscious or

---

[5] For the Court's consideration, Bier refers the Court to the more detailed discussion of this standard in the BML Memo.

8

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                    No. 05cv1958-B (BLM)

intentional conduct, the bad faith requirement cannot be met.

A court's determination of whether an attorney acted in bad faith must be done without the benefit of hindsight; that is, the court must consider the conduct at the time it occurred. *Salkil v. Mount Sterling Township Police Dept.*, 458 F.3d 520, 530 (6th Cir. 2006)(in analyzing the possibility of sanctions, the court is "expected to avoid using the wisdom of hindsight . . ."); *Twee Jonge Gezellen (PTY) Ltd. v. Owens-Illinois*, 2007 U.S. Dist. LEXIS 96792, *14-15 (N.D. Ohio 2007)(in determining whether to impose sanctions under 28 U.S.C. § 1927, court should "avoid using hindsight and should test counsel's conduct by the standard of what was reasonable to believe at the time counsel undertook that conduct.") The relevant inquiry is what the attorney "actually believed and intended" at the time. *TVT Records, Inc. v. TVT Music, Inc.*, 2006 U.S. Dist. LEXIS 62230 *32-33 (S.D.N.Y. 2006).

As will be discussed below, the facts here do not demonstrate that Bier acted in bad faith, or with any improper purpose.

### B. Imposition of Inherent Power Sanctions Requires Substantial Due Process Protections Including a Heightened Standard of Proof

In recognition of the broad reach of the court's inherent powers, courts have made clear that heightened protections apply to attorneys who face sanctions. "'Because of their very potency, inherent powers must be exercised with restraint and discretion.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "The more punitive the nature of the sanction, the greater the protection to which the individual is entitled." *Hanshaw Enterprises, Inc. v. Emerald RiverDevelopment, Inc.*, 244 F.3d 1128, 1141 (9th Cir. 2001).

In *Hanshaw*, the Ninth Circuit held that, in situations where sanctions in the form of "serious punitive penalties" are being considered, the "accused deserves the protection of a higher standard of proof . . ." *Id.* at 1141. There, the Court held that appellants (individuals sanctioned for the attempted bribery of a receiver) were entitled to the "greater protection that a reasonable-doubt standard of proof provides," and vacated the sanctions imposed by the district court. 244

9

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                   No. 05cv1958-B (BLM)

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

F.3d at 1141.[6] Other courts have also applied a heightened standard of proof, including a clear and convincing evidence standard. *See, e.g., Shepherd v. ABC, Inc.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) (appropriate standard for bad faith determination is clear and convincing evidence and citing cases for the proposition that "courts require clear and convincing evidence of misconduct before imposing attorneys' fees under their inherent power").

The Court should apply a heightened standard of proof in these proceedings. Any sanctions under consideration would be punitive in nature, with significant potential impact upon the Responding Attorneys' lives and careers. Regardless of whether the standard applied is beyond a reasonable doubt, or clear and convincing evidence, the evidence shows that heightened standard is not met here.

## IV. RESPONDING ATTORNEY BIER SHOULD NOT BE SANCTIONED

The inquiry with respect to Bier is narrow: whether the evidence shows that, in connection with the emails located on Ms. Raveendran's computer in January 2007, Bier acted in bad faith, or in a manner tantamount to bad faith, with respect to discovery. The evidence demonstrates that he did not. First, there is no evidence that Bier ignored "red flags" pertaining to discovery. The email he was provided on January 7 raised no alarm bells to Bier because, in his view, it merely confirmed what he understood was an established fact. Because of that fact, and because he was focused on preparing Raveendran for her trial testimony rather than on discovery issues with which he had no involvement, it did not occur to Bier to consider the discovery status of the document. Moreover, the notion that Bier was motivated by a desire to conceal potentially responsive documents—or any other improper purpose—is directly contradicted by his actions just one week later. Upon discovering documents that might be potentially significant, he immediately brought them to the attention of his supervising attorneys. The January 14 emails themselves did not suggest to Bier wider discovery failures by Qualcomm. It is only with hindsight (and additional information Bier did not have at the time) that the emails on Raveendran's computer have revealed themselves to be an indication of a widespread discovery failure by Qualcomm.

---

[6] Bier additionally refers the Court to the extensive discussion of this issue in the BML Memo.

10

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed   No. 05cv1958-B (BLM)

Second, even if Bier were somehow remiss with respect to his handling of the emails, there is no evidence that he acted in bad faith or had an improper motive. Accordingly, there is absolutely no evidence to support the imposition of sanctions.

### A. Bier Did Not Willfully Ignore "Red Flags" Pertaining to Discovery

The Court in its initial Order inferred from the available evidence that Bier had ignored warning signs pertaining to potential discovery abuse. The evidence now available demonstrates that simply did not happen.

When Raveendran forwarded the August 2002 email to Bier on January 7, that email confirmed what Bier understood to be an established fact: that her email address was on the reflector. The basis for Bier's understanding was the December 2002 Ad Hoc Report which listed her email address on the "avc_ce list" as one of "179 subscribers." In his focus on the question of how she had came to be added to the reflector (which that email did not resolve) and on witness preparation, the question of the discovery status of the document did not occur to Bier. He did not consider the question of whether it had been collected or produced as part of the earlier document production that he was not involved in.

Bier's failure to consider the discovery status of the document can be second-guessed with the benefit of hindsight. A more senior and experienced attorney might have questioned the production of any document that came out in a preparation session. Indeed, with additional years of experience, and the knowledge he has gained in these proceedings, Bier himself would respond differently today. ¶ 51. Nevertheless, the evidence does not support a conclusion that Bier ignored a warning flag. He simply did not recognize the document as such.

Bier's actions a week later provide further confirmation that he did not ignore red flags pertaining to discovery. In his January 14 meeting with Raveendran, he directed that a search be done to locate any documents Raveendran received from participants on the reflector. When that search turned up emails, Bier recognized that these contained what might constitute information not previously known—that the avc_ce reflector was an active one, and that Raveendran had received email from participants on the reflector. He then did just what an associate is supposed to do when he or she recognizes something of potential significance to discovery: he brought the emails to the

11

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                      No. 05cv1958-B (BLM)

**Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order**

attention of his supervising attorneys. None of these facts support an inference of willful conduct by Bier in seeking to conceal documents he understood to have potential discovery significance.

The Court in its initial sanctions order criticized Bier (along with others) for failing to identify the Raveendran emails as red flags suggesting the possibility of wider discovery failures by Qualcomm. Order dated January 7, 2008, at 28-29. Whether or not anyone at Day Casebeer would have suspected that other Qualcomm witnesses might have similar documents (and that is unlikely given the extent and breadth of Qualcomm's representations and denials concerning its JVT involvement), Bier was certainly not in a position to do so. Since he had not been involved in defensive document discovery by Qualcomm, Bier did not know what inquiries had been made by Day Casebeer or what representations had been made by Qualcomm; and he did not know what documents had been collected or what decisions had been made about what documents to produce. This necessarily meant that he was not in a position to recognize whether the presence of the emails on Raveendran's computer contradicted what Qualcomm paralegals had told Day Casebeer during document collection. The January 14 emails gave Bier no reason to suspect that additional documents existed and had not been collected or considered for production.

### B. The Evidence Does Not Support a Finding that Bier Acted in Bad Faith or With an Improper Purpose

Even if Bier were somehow remiss in his handling of the emails, there is no evidence— direct or circumstantial—of bad faith. Taken in their entirety, Bier's actions demonstrate no intent to conceal documents that he knew or believed to be responsive, or to turn a blind eye to potentially responsive documents Bier knew might exist. In fact, the evidence shows the opposite.

On January 14, on his own initiative and a week after Raveendran sent him the August 2002 email, Bier directed a search of Raveendran's computer, locating, apparently for the first time, a set of emails sent by participants to the avc_ce reflector. Once the emails were located, Bier recognized that they constituted potentially significant new information: these were the first evidence Bier had seen that Raveendran actually received emails from subscribers on the reflector. Bier clearly did not have any intent to conceal the existence of what he understood to be potentially responsive documents, since he brought them immediately to the attention of Patch and Mammen.

12

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                                      No. 05cv1958-B (BLM)

In addition to directing the January 14 search, Bier assisted Mammen and Patch in deciding whether to immediately produce the emails located on Raveendran's computer. Bier was asked to assist in making a narrow responsiveness determination. He reviewed Qualcomm's document responses for the first time, and advised Patch and Mammen that in his view these were not within the scope of what Qualcomm had agreed to produce. There is no evidence to support a finding that in reaching this conclusion, Bier acted in bad faith: he reviewed the requests and responses that evening, and reached what he believed was a reasonable conclusion.

Bier was a junior associate with no prior trial experience, and limited experience on the 1958 case prior to trial. He had played no role in Qualcomm's document collection or production, and had no knowledge of what was done to collect documents or from whom, or how decisions were made to produce documents. At the time he was asked to help prepare Ms. Raveendran for her testimony, he had little knowledge of the JVT issue, Broadcom's waiver defense. All these factors contributed to the actions Bier took, and the decisions he made. There is simply no evidence—much less evidence that would support the heightened standard of proof applicable here—that Bier acted in bad faith, or with an improper purpose.

### C. Equitable Factors Weigh Against Sanctions

To the extent Bier made any error of judgment in his handling of the emails, he has certainly already paid a heavy price. He was unable to find a new job after leaving Day Casebeer in April 2008. ¶ 49. Potential employers informed him that he was not a suitable candidate because of these proceedings, and one headhunter told him she could not work with him in part because of what has occurred in these proceedings. *Id.*

These factors are ones that the Court may—and should—consider in making its determination. *See Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1439 (7th Cir. 1987)("a district court should reflect upon equitable considerations"); *Blue v. United States Dept. of Army*, 914 F.2d 525 (4th Cir. 1990)(Court set aside sanctions against associate, "unwilling to see the career of a young attorney compromised at its inception"); *Bell v. United States District Court*, 2003 U.S. Dist. LEXIS 26010, *57 (district court refused to impose sanctions on associate, despite finding she had acted in bad faith, out of "concern[] about causing excessive damage to

13

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                                   No. 05cv1958-B (BLM)

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

her fledgling career . . .The Court hopes that [the associate] will learn from her mistakes in this situation and not commit the same types of errors again.")

Bier has already suffered significantly on account for his very limited involvement in this matter. His young career has been tarnished, and he will continue to face many challenges in the years ahead. Even if Bier's conduct were worthy of sanctions—and, as explained above, it is not—a renewed sanctions order would penalize him disproportionally.

## V. CONCLUSION

The issues that this Court grappled with in its prior order, and returns to here two years later, are serious ones indeed. The close attention given by the Court is appropriate, and has had an important effect. Attorneys around the country are familiar with this case, and know it by name as a reminder of the need to scrupulously adhere to discovery obligations, and of the many pitfalls that can occur in the area of electronic discovery. The value of sending a message, however, must be balanced against the interest a young and talented lawyer has in preserving his reputation and future. Bier's actions do not warrant sanctions, and none should be imposed.

Date:   October 13, 2009                CHAPMAN, POPIK & WHITE LLP

By: ___/s/ Merri A. Baldwin___
Merri A. Baldwin
Attorneys for Responding Attorney Adam Bier

14

Responding Attorney Adam Bier's Opening Memorandum on Remanded Order To Show Cause
Why Sanctions Should Not Be Imposed                          No. 05cv1958-B (BLM)