1 David J. Noonan (SBN 55966)
   dnoonan@knlh.com
2 Steven W. Sanchez (SBN 128669)
   ssanchez@knlh.com
3 Ethan T. Boyer (SBN 173959)
   eboyer@knlh.com
4 **KIRBY NOONAN LANCE & HOGE LLP**
   350 Tenth Avenue, Suite 1300
5 San Diego, California 92101-8700
   Telephone (619) 231-8666
6 Facsimile (619) 231-9593

7 Attorneys for Respondent Stanley Young

8

9                     **UNITED STATES DISTRICT COURT**

10                   **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 QUALCOMM INCORPORATED,                    CASE NO. 05CV1958-B (BLM)

13              Plaintiff,                    **MEMORANDUM OF POINTS AND
                                              AUTHORITIES OF STANLEY YOUNG
14        vs.                                 IN RESPONSE TO REMANDED ORDER
                                              TO SHOW CAUSE**
15 BROADCOM CORPORATION,
                                              Date:      January 13-15, 2010
16              Defendant.                    Time:      To Be Determined
                                              Courtroom:    A
17 ─────────────────────────────             Judge:     Hon. Barbara L. Major
   and RELATED COUNTERCLAIMS.
18

19

20

21

22

23

24

25

26

27

28

*Kirby Noonan Lance & Hoge LLP*
*350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700*

KNLH\655098.1                                              05CV1958-B (BLM)

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  SUMMARY OF ARGUMENT ................................................................... 2

III. FACTUAL BACKGROUND ...................................................................... 3

IV.  THIS COURT'S JURISDICTION IS LIMITED TO IMPOSITION OF
     SANCTIONS FOR DISCOVERY VIOLATIONS.................................... 4

V.   THE COURT'S AUTHORITY TO CONSIDER SANCTIONS AGAINST
     RESPONDENT YOUNG IS LIMITED TO ITS INHERENT POWER ............................. 5

VI.  RESPONDENT YOUNG SHOULD NOT BE SANCTIONED FOR THE
     FAILURE OF QUALCOMM TO PRODUCE THE SUBJECT DOCUMENTS IN
     RESPONSE TO BROADCOM'S WRITTEN DISCOVERY REQUESTS ........................ 8

VII. RESPONDENT YOUNG SHOULD NOT BE SANCTIONED FOR THE
     FAILURE TO PRODUCE THE RAVEENDRAN EMAILS DISCOVERED
     DURING TRIAL, OR FOR FAILING TO CONDUCT A FURTHER SEARCH
     FOR DOCUMENTS AT THAT TIME ........................................................ 9

     A.   The Factual Dispute Presented By The Young And Patch Declarations As
          To Whether Respondent Young Was Truly Advised Of The Discovery Of
          The Raveendran E-Mails Has Now Been Resolved Through Discovery. ................. 9

     B.   Patch Has Now Testified Under Oath That He Did Not Tell Young About
          The Discovery Of The 21 Raveendran Emails.................................................... 10

     C.   Patch's Deposition Testimony Confirms That Young Did Not Know Of The
          21 Emails Before Raveendran's Trial Testimony................................................ 14

     D.   Young Did Not Act In Bad Faith With Respect To His Oral And Written
          Statements To The Court............................................................................... 15

          (1)  Young May Rely On Co-Counsel And The Client. ............................ 16

          (2)  The Motion For Summary Judgment. .............................................. 19

               (a)  Young's Pre-Filing Understanding Of The Factual Basis For
                    The Motion. ......................................................................... 19

               (b)  The MSJ Filing. ................................................................... 21

               (c)  The MSJ Opposition And Reply. ........................................... 23

          (3)  The Discovery Of The 21 Emails..................................................... 26

          (4)  The January 18, 2007 Sidebar Statements At Trial......................... 27

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1          (5)    The JMOL. .......................................................................... 28

2          (6)    Young Acted In Good Faith. .............................................. 29

3   VIII.   CONCLUSION .................................................................................. 30

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kirby Noonan Lance & Hoge LLP**
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1

# **TABLE OF AUTHORITIES**

2

3    **CASES**                                                                                                  **Page(s)**

4    *Aoude v. Mobil Oil Corp.,*
        892 F.2d 1115 (1st Cir. 1989) ............................................................................. 7
5

6    *Apex Oil Co. v. Belcher Co. of New York, Inc.,*
        855 F.2d 1009 (2nd Cir. 1988) ............................................................................ 6
7

8    *Balcar v. Bell and Assocs. LLC,*
        295 F. Supp. 2d 635 (N.D. W. Va. 2003) ........................................................... 7

9    *BMW of North Am., Inc. v. Gore,*
        517 U.S. 559 (1996) ............................................................................................ 8
10

11   *Books Are Fun, Ltd. v. Rosebrough,*
        239 F.R.D. 532 (S.D. Iowa 2007) ................................................................ 16, 17

12   *Brooks v. Ala. State Bar,*
        574 So.2d 33 (Ala. 1991) .................................................................................... 8
13

14   *Chambers v. NASCO, Inc.,*
        501 U.S. 32 (1991) ......................................................................................... 6, 19
15

16   *Chaves v. M/V Medina Star,*
        47 F.3d 153 (5th Cir. 1995) ................................................................................ 7

17   *Continental Ins. Co. v. Construction Indus. Servs. Corp.,*
        149 F.R.D. 451 (E.D.N.Y. 1993) ....................................................................... 18
18

19   *CTC Imports & Exports v. Nigerian Petroleum Corp.,*
        951 F.2d 573 (3d Cir. 1991) ............................................................................. 18
20

21   *Dow Chemial Pacific, Ltd. v. Rascator Maritime, S.A.,*
        782 F.2d 329, 344 (2nd Cir. 1986) ....................................................................... 16

22   *Dubois v. U.S. Department of Agriculture,*
        270 F.3d 77 (1st Cir. 2001) ............................................................................... 18
23

24   *Erum v. County of Kauai,*
        No. 08-CV-00113, 2008 WL 2598138 (D. Haw. June 30, 2008) ...................... 6
25

26   *F.J. Hanshaw Enters., Inc., v. Emerald River Dev., Inc.,*
        244 F.3d 1128 (9th Cir. 2001) ............................................................................ 7

27   *Fink v. Gomez,*
        239 F.3d 989 (9th Cir. 2001) ......................................................................... 6, 30
28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

*Gates & Fox Co. v. Occupational Safety & Health Review Comm'n,*
  790 F.2d 154 (D.C. Cir. 1986) ........................................................... 8

*Hadges v. Yonkers Racing Corp.,*
  48 F.3d 1320 (2d Cir. 1995) ............................................................ 18

*In re Keegan Mgmt. Co. Sec. Litig.,*
  78 F.3d 431 (9th Cir. 1996) ......................................................... 6, 29

*In re Ruben,*
  825 F.2d 977, (6ᵗʰ Cir. 1987)825 F.2d ......................................... 16

*KPMG, LLP v. SEC,*
  289 F.3d 109 (D.C. Cir. 2002) ........................................................ 8

*Macias v. McGrath,*
  439 F.3d 1141 (9th Cir. 2006) ......................................................... 7

*Manville Sales Corp. v. Paramount Sys., Inc.,*
  123 F.R.D. 177 (E.D. Pa. 1988) ................................................. 18, 19

*Maynard v. Nygren,*
  332 F.3d 462 (7th Cir. 2003) ........................................................... 7

*Oliveri v. Thompson,*
  803 F.2d 1265 (2d Cir. 1986) ........................................................... 7

*Orleans Parish School Board v. Angelic Asset Management, et al.,*
  2004 WL 1713872 (E.D. La 2004) ................................................. 17

*Pennar Software Corp. v. Fortune 500 Sys.,*
  No. 01-01734 EDL, 2001 U.S. Dist. LEXIS 18432 (N.D. Cal. October 26, 2001) .................. 8

*Primus Auto. Fin. Servs. v. Batarse,*
  115 F.3d 644 (9th Cir. 1997) ........................................................... 6

*Quantum Communic'ns. Corp. v. Star Broad. Inc.,*
  473 F. Supp. 2d 1249 (S.D. Fla., 2007) ............................................ 7

*Roadway Express, Inc. v. Piper,*
  447 U.S. 752 (1980) ......................................................................... 6

*Samuel v. Michaud,*
  980 F.Supp. 1381 (D. Idaho 1996) ................................................... 8

*Scholastic Inc. v. Stouffer,*
  221 F. Supp. 2d 425 (S.D.N.Y. 2002) ............................................... 7

*Shepherd v. American Broad. Co., Inc.,*
  62 F.3d 1469 (D.C. Cir. 1995) ......................................................... 7

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

*Smith v. Our Lady of the Lake Hosp., Inc.*,
    960 F.2d 439 (5th Cir. 1992) ................................................................... 17

*Unigard Securities Ins. Co. v. Lakewood Engineering & Mfg. Corp.*,
    982 F.2d 363 (9th Cir. 1992) ..................................................................... 6

**STATUTES**

28 U.S.C. section 636(b) ............................................................................. 9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure
    Rule 11 .............................................................................................. *passim*
    Rule 26 .................................................................................................. 16
    Rules 26-37 ............................................................................................. 5
    Rule 26(g) ............................................................................................... 5
    Rule 37 ............................................................................................... 4, 7
    Rule 37(c) ............................................................................................... 6
    Rule 72(a) ............................................................................................... 9
    Rule 72.1(b) ............................................................................................ 9

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1   Respondent Stanley Young ("Young") hereby respectfully submits this Memorandum of

2   Points and Authorities in response to the Remanded August 13, 2007 Order to Show Cause

3   ("OSC") with respect to the issues to be addressed at the upcoming January 13-15, 2010 hearing.

## I. INTRODUCTION

5   The Court's OSC expressly arises from the failure of Qualcomm to produce to Broadcom

6   relevant and responsive documents relating to Qualcomm's participation, membership and

7   involvement in the JVT prior to September 2003.  That these documents should have been

8   produced, but were not, is not in dispute.

9   With the benefit of hindsight, it appears there are literally dozens of people, including

10   Qualcomm employees, in-house and outside counsel who at various times were in a position to

11   ask different questions and/or take different actions which conceivably may have resulted in the

12   timely discovery and production of some or all of these documents.  Even now, however, the more

13   fully developed discovery record in this case demonstrates that in many instances the right

14   questions were, in fact, asked of Qualcomm employees and in many instances, incorrect and

15   possibly false answers were given.

16   But, the issue to be addressed by the Court with respect to Young is not whether he could

17   have said or done something different which might have resulted in a different outcome.  Rather,

18   the specific issue is whether Young acted in "bad faith" and actually engaged in conduct which

19   caused these documents not to be produced by Qualcomm to Broadcom.

20   The evidence, including the new evidence adduced from recent discovery, establishes that

21   Young did not engage in such misconduct.  As a result of Judge Brewster's Remand Order, Young

22   is now free to provide the Court with additional testimony and documents which more fully

23   explain the actions he took and what he believes was his absolute good faith in taking the positions

24   he took, and making the arguments he did, even where subsequent events have proven these

25   positions or statements to be incorrect.  Even more germane to the inquiry, the record now

26   confirms that Young in no way caused or contributed to the failure of Qualcomm to produce the

27   requested documents to Broadcom, let alone engaged in "bad faith" discovery misconduct in so

28   doing.  This being the case, it is respectfully submitted that the OSC be dismissed as to Young.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

## II. SUMMARY OF ARGUMENT

The focus in this inquiry is potential discovery violations and not on statements made either orally or in pleadings filed with the District Court. As no federal rule adequately addresses the conduct of Young in this case, this Court may evaluate his actions pursuant to its inherent power to award sanctions. However, such inherent power is subject to very strict procedural safeguards and sanctions can only be imposed upon a specific finding that an attorney acted in bad faith. While it was never really disputed that Young had no responsibility for the identification, location and production of documents relating to Qualcomm's JVT activities, this Court now will have the benefit of substantial additional discovery and evidence emphasizing that Young had no involvement whatsoever in that discovery failure. As a result, there should be no finding of bad faith on his part with respect to the JVT discovery conduct.

In its Sanctions Order, however, this Court did find fault with Young's conduct in the underlying action, finding that he failed to make a reasonable inquiry into Qualcomm's discovery production before making specific factual and legal arguments to the Court in the Summary Adjudication Motion, at sidebar during trial, and in the Motion for Judgment as a Matter of Law ("JMOL"). The Court also criticized Young for failing to produce the 21 emails found on Viji Raveendran's computer by attorneys from Day Casebeer Madrid & Batchelder LLP ("Day Casebeer") during trial after purportedly being given a "heads up" by Attorney Lee Patch.

While Young disagrees that such statements and conduct amount to discovery violations which are within the scope of the reference to this Court, the evidence developed since the Sanctions Order and Remand reveals that Patch did not tell Young about the discovery of 21 Raveendran emails. Young has steadfastly affirmed that he was not told of the discovery of the 21 Raveendran emails during trial, only learning of their discovery when Raveendran testified about them in open court on January 24, 2007. In that he was not aware of the discovery of the emails, Young played no role in the decision as to whether those documents should be produced during trial and his comments at sidebar were made in ignorance of their discovery and based on his good faith understanding of the state of the record.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1     Moreover, while he does not believe any statements in the Motion for Summary Judgment

2 or JMOL are within the discovery reference to this Court, Young did conduct a reasonable inquiry

3 into the factual basis for the statements made in those pleadings including a review of discovery

4 responses and deposition testimony as well as discussions with co-counsel. Young was entitled to

5 rely on the discovery record that had been developed by co-counsel and the client and had no

6 reason to believe that it was inaccurate. Certainly Young did not act with willful bad faith in

7 authorizing those pleadings to be filed with the Court.

8                                   **III. FACTUAL BACKGROUND**

9     Counsel for Respondent Young, in his initial Memorandum of Points and Authorities

10 submitted in Response to Order to Show Cause filed October 3, 2007 (Dkt. No. 699) (the "Initial

11 Memorandum") detailed the limited role of the Heller Ehrman ("Heller") attorneys in this matter,

12 including that:

13        In sum, Young, Venkatesan, Robertson and the other Heller attorneys did not have
          any role or responsibility in the failure to produce documents, to identify and
14        produce knowledgeable 30(b)(6) witnesses or to provide accurate interrogatory
          responses on JVT issues. (Young Dec., ¶¶ 17-34; Venkatesan Dec., ¶ 67;
15        Robertson Dec., ¶¶ 11-15, 32.)

16 (p. 4:19-22.) This critical point remains accurate and undisputed. The other factual background

17 information (set forth in the Initial Memorandum at page 2, line 15 to page 9, line 19) remains

18 accurate. Despite the extensive deposition and document discovery which has been undertaken

19 pursuant to Judge Brewster's Remand Order, nothing unearthed therein in any way undermines the

20 truthfulness or accuracy of the factual recitation previously offered by Young. As such, rather

21 than repeating it, Young simply refers the Court to his Initial Memorandum for a factual overview

22 as to his role and Heller's role in the 1958 case.

23     Significantly, however, important new evidence developed during post-Remand discovery,

24 demonstrates that, as against Young, sanctions are neither appropriate, warranted or supportable.

25 The newly available facts, as set forth in the Supplemental Declaration of Stanley Young and in

26 the deposition of Lee Patch, are discussed below and demonstrate that Young did not act in bad

27 faith and is not culpable of any wrongdoing.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

## IV. THIS COURT'S JURISDICTION IS LIMITED TO IMPOSITION OF SANCTIONS FOR DISCOVERY VIOLATIONS

The OSC provided notice to Young that its focus was limited to discovery violations. "This Court believes that the record evidence provides a basis for finding that Qualcomm's attorneys violated this Court's discovery and/or scheduling orders." (OSC p. 2:20-22.) That point was confirmed at the initial hearing on the Motion re Application of the Self-Defense Exception on September 28, 2007:

> Can I ask the Court, with respect to the Court's view, is the Court's view that we are --- this is a Rule 37 proceedings, that's where we are or is it –
>
> THE COURT: Essentially, yes.
>
> MR. NOONAN: Okay. And so the issue here are the discovery abuse or the discovery transgressions.
>
> THE COURT: Correct.

(TR., September 28, 2007, p. 23:1-7, attached to the Declaration of David J. Noonan ("Noonan Dec.") as Ex. A.)

The scope was again confirmed at the October 12, 2007 hearing, wherein the Court, in its initial comments to counsel, stated:

> Moving on to the next issue, and that is as I reviewed the declarations and history of this case the first discovery violation … and to me it's a critical discovery violation, that caught my attention was how in the world over 200,000 E-mails clearly responsive were not found and not produced … To me, that is a fundamental and monumental error. And to me that is what led to all of the rest of the misconduct in this case.

(TR., October 12, 2007, Hrg., p. 46:24 – p. 47:13, Ex. B to Noonan Dec.)

Later, in its January 27, 2008 Order Granting in Part and Denying in Part Defendant's Motion for Sanctions and Sanctioning Qualcomm, Incorporated and Individual Lawyers (the "Sanctions Order") (Docket 718), the Court affirmed that its jurisdiction in this matter was limited to discovery violations:

> The Court is limited in its review and analysis of the debacle that occurred in this litigation because Judge Brewster only referred the discovery violation to this Court. [Doc. No. 494 ("Dft's Oral Motion [489] for sanctions re Production of Documents re Witness Viji Raveendran – made and submitted on 01-24-07 – Referred to the Magistrate Judge")]. Judge Brewster did not refer any sanction motions relating to false statements made to the trial judge or in pleadings resolved by the trial judge. Id. Accordingly, this Court is limited in its review, analysis, and

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

conclusion to discovery violations and applicable discovery rules and remedies. See Fed. R. Civ. P. 11(d) (Rule 11 does "not apply to disclosures and discovery requests, responses, objections, and motions").

(Sanctions Order, p. 18:23-28, fn. 5.)

Before reaching issues of state of mind, such as bad faith, the threshold issue before the Court is to determine what role or involvement, if any, did Young have in causing Qualcomm not to produce the "200,000 documents." If none, sanctions are inappropriate and Young should be dismissed from the OSC.

However, despite the statement in the Sanctions Order expressly limiting jurisdiction to discovery violations, the order does contain some references to erroneous statements Young made to the Court. (*See, e.g.*, Sanctions Order, p. 30:10-11 ["Young falsely *stated* that no emails had been sent to Raveendran from the AVC_CE email group." (emphasis added)]; *id.*, p. 30, n.11, ll. 20-22 ["Young had a duty to conduct a reasonable investigation *before making that affirmative statement to the Court...*" (emphasis added)].) Without waiving his position that only discovery conduct is at issue, Young will squarely address the statements referenced by the Court and provide the Court with the extensive factual basis he had for believing on a good-faith basis that those statements were true at the time they were made. *See, infra* at VII.D. Such explanation is also appropriate to assure the Court that, in appearing in the underlying litigation, Young complied with his ethical obligations to the Court and opposing counsel.

## V. THE COURT'S AUTHORITY TO CONSIDER SANCTIONS AGAINST RESPONDENT YOUNG IS LIMITED TO ITS INHERENT POWER

This Court's Sanctions Order noted the limited applicability of the discovery rules in the Federal Rules of Civil Procedure to the OSC proceedings against the Respondent attorneys in general. (Sanctions Order, p. 26:17-28, fn. 9.) Without revisiting in detail each of the potentially applicable rules, where Young neither signed any discovery response nor violated any discovery order, he cannot be held responsible under either FRCP 26(g) or 37(b). Moreover, the Court acknowledged the non-applicability of Rule 11 in that it expressly "does not apply to disclosures in discovery requests, responses, objections, and motions under Rules 26-37." (Sanctions Order, p. 18, fn. 5.)

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1    The remaining sanctioning authority available to the Court is its "inherent power."  *See,*

2  *e.g., Unigard Securities Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 367 (9th

3  Cir. 1992); *Apex Oil Co. v. Belcher Co. of New York, Inc.*, 855 F.2d 1009, 1014 (2nd Cir. 1988)

4  ("we decline to adopt [the] suggestion that we construe Rule 37(c) broadly in order to fill a so-

5  called "gap" in the federal rules.")  However, any award of sanctions under the Court's inherent

6  authority is subject to very strict procedural safeguards.  *Chambers v. NASCO, Inc.*, 501 U.S. 32,

7  44 (1991) ("[b]ecause of their very potency, inherent powers must be exercised with restraint and

8  discretion."); *see, Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent

9  powers are shielded from direct democratic controls, they must be exercised with restraint and

10  discretion.").  "The court must, of course, exercise caution invoking its inherent power and it must

11  comply with the mandates of due process both in determining that the requisite bad faith exists

12  and in assessing fines."  *Chambers*, 501 U.S. at 50.

13    The Court cannot impose sanctions under its inherent powers unless it makes a specific

14  finding that counsel acted in bad faith.  *Chambers, supra*, at 46-47; *Fink v. Gomez*, 239 F.3d 989,

15  992 (9th Cir. 2001); *Erum v. County of Kauai*, No. 08-CV-00113, 2008 WL 2598138 at 4 (D.

16  Haw. June 30, 2008).  As stated in *Fink*, pursuant to both *Roadway* and *Chambers*, "the district

17  court has the inherent authority to impose sanctions for bad faith, which includes a broad range of

18  *willful improper conduct*."  *Id.* at 992; *see also, Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644,

19  649 (9th Cir. 1997): ("We insist on the finding of bad faith because it assures that restraint is

20  properly exercised and it preserves a balance between protecting the court's integrity and

21  encouraging meritorious arguments.")  In *Primus*, the Ninth Circuit reversed sanctions against an

22  attorney who persisted in advancing a completely meritless argument because there was no

23  evidence that the attorney acted in bad faith.

24    Accordingly, the Court may not sanction counsel based on merely negligent or even

25  reckless conduct under its inherent power.  *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436

26  (9th Cir. 1996) (reversing sanctions without a finding of bad faith, stating "precedence plainly

27  require" more than a finding of recklessness).  Reckless conduct is only sanctionable when

28  combined with factors such as frivolousness, harassment or an improper purpose.  *Fink, supra*, at

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1  994.

2        Additionally, a heightened burden of proof is appropriate for inherent power sanctions.

3  The Ninth Circuit has not made a specific finding regarding the moving party's burden of proof

4  before a court exercises its inherent sanction power; however it has cautioned that "[the] more

5  punitive the nature of the sanction, the greater the protection to which an individual is entitled."

6  *F.J. Hanshaw Enters., Inc., v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir. 2001).  The

7  Ninth Circuit has held that the highest level of due process must be satisfied before a court may

8  impose a sanction that is punitive, rather than compensatory, in nature.  *Macias v. McGrath*, 439

9  F.3d 1141 (9th Cir. 2006) (reversing sanction of $1,500 fine and referral to State Bar, holding that

10  heightened due process procedures were required); *Hanshaw, supra*, at 1138 ($500,000 fine for

11  attempted bribery of court-appointed receiver was punitive; sanction reversed for lack of due

12  process, including presumption of innocence and proof beyond a reasonable doubt).

13        Other Courts of Appeal reaching this issue have repeatedly required a finding of bad faith

14  by ***clear and convincing evidence***.  The rationale is that sanctions imposed under the court's

15  inherent power are punitive in nature and are based on allegations of fraud or other quasi-criminal

16  wrongdoing.  Reflecting these factors, numerous federal courts have required a heightened

17  standard of proof: clear and convincing evidence of the abusive conduct is required; a mere

18  preponderance of evidence is not enough.[1]

19        And while the Ninth Circuit has not had occasion to review the standard of proof

20  applicable to an award of sanctions under the Court's inherent power, two district courts in the

---

22  [1] *See Shepherd v. American Broad. Co., Inc.*, 62 F.3d 1469, 1476-75 (D.C. Cir. 1995) ("[a] heightened standard of proof is particularly appropriate because most inherent power sanctions ... are fundamentally punitive"); *Aoude v.*

23  *Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ('fraud on the court' must be proven "clearly and convincingly"); *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (court requires "clear evidence" and a "high degree of

24  specificity in the factual findings" before imposing attorneys' fees under inherent powers); *Quantum Communic'ns. Corp. v. Star Broad. Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla., 2007) (preponderance of the evidence is not

25  sufficient for entry of default under court's inherent powers); *Balcar v. Bell and Assocs. LLC*, 295 F. Supp. 2d 635, 640 (N.D. W. Va. 2003) ("Although the Fourth Circuit appears not to have addressed the issue, this Court believes it,

26  too, would adopt the clear and convincing evidence standard with regard to the Court's inherent power to sanction."); *Scholastic Inc. v. Stouffer*, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002); *see also Maynard v. Nygren*, 332 F.3d 462, 468

27  (7th Cir. 2003) (applying clear and convincing evidence standard to Rule 37 dismissal based on bad faith); *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) ("the threshold for use of the inherent power sanctions is high").

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1   Ninth Circuit have utilized that standard.  In *Samuel v. Michaud*, 980 F.Supp. 1381, 1408 (D.

2   Idaho 1996), the District Court adopted the "clear and convincing" test nothing that "Courts

3   require clear and convincing evidence of misconduct before imposing attorneys' fees under their

4   inherent power."  In *Pennar Software Corp. v. Fortune 500 Sys.*, No. 01-01734 EDL, 2001 U.S.

5   Dist. LEXIS 18432, at *16 (N.D. Cal. October 26, 2001), the Court held that "there must be clear

6   and convincing evidence of misconduct before a punitive sanction … is entered."  Because the

7   sanction proposed to be levied here is punitive in nature, Young respectfully submits that the

8   "clear and convincing" standard should be applied.

9          In the same vein, "[e]lementary notions of fairness enshrined in our constitutional

10  jurisprudence dictate that a person receive fair notice . . . of the conduct that will subject him to

11  punishment . . . ."  *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996).  This doctrine

12  applies to civil as well as criminal penalties.  *See, e.g., KPMG, LLP v. SEC*, 289 F.3d 109, 115-17

13  (D.C. Cir. 2002); *Gates & Fox Co. v. Occupational Safety & Health Review Comm'n*, 790 F.2d

14  154, 156 (D.C. Cir. 1986); *Brooks v. Ala. State Bar*, 574 So.2d 33, 34 (Ala. 1991) (ruling that a

15  lawyer lacked fair notice where there was no "clear answer" to a question under the ethics rules).

16  Accordingly, even if the discovery dispute in this case were to lead to the imposition of new duties

17  on counsel  (*e.g.*, a duty for co-counsel to conduct an independent review of the accuracy of

18  discovery responses prepared by the client and lead counsel, *see infra*,) to avoid repetition of the

19  problem, case law does not support imposing sanctions on attorneys, such as Young, who did not

20  violate any standard of conduct of which they were on notice.

21          **VI. RESPONDENT YOUNG SHOULD NOT BE SANCTIONED FOR THE**
        **FAILURE OF QUALCOMM TO PRODUCE THE SUBJECT DOCUMENTS**
22      **IN RESPONSE TO BROADCOM'S WRITTEN DISCOVERY REQUESTS**

23          There has never been any dispute by any of the parties that neither Young nor Heller had

24  any responsibility for the identification, location and production of documents relating to

25  Qualcomm's JVT activities.  In his Declaration filed in response to the Order to Show Cause Why

26  Sanctions Should Not Be Imposed, dated October 2, 2007 (Docket No. 678), lead counsel for

27  Qualcomm and Day Casebeer, James Batchelder, stated under penalty of perjury, as follows: "As

28  far as I know, the Heller attorneys did not have any responsibility in this matter for investigating

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1  the existence of, collecting or producing QUALCOMM documents, including JVT-related

2  documents." (Batchelder Dec., p. 6:15-17.)  Additionally, counsel for Qualcomm at the October

3  12, 2007 hearing correctly stated as follows:

4      As Mr. Noonan has correctly pointed out, his clients, the Heller firm, were not
       allocated and did not have responsibility to handle the discovery in this case.  And,
5      as he has correctly pointed out, the Day Casebeer firm did.

6  (TR, October 12, 2007, p. 114:20-24.)  The declarations filed herein by Respondent attorneys

7  Young, Venkatesan and Robertson also confirm, in detail that at no time did they have any role or

8  responsibility in the failure of Qualcomm to produce documents, to identify and produce

9  knowledgeable 30(b)(6) witnesses or to provide accurate interrogatory responses on JVT issues

10  (Young Dec., ¶¶ 17-34; Venkatesan Dec., ¶ 67; Robertson Dec., ¶¶ 11-15, 32; *see also*, Noonan

11  Dec. ¶¶ 5-7.)

12      And while numerous depositions have now been taken of Qualcomm employees focusing

13  on the discovery process in the 1958 case, no facts have emerged which are contrary to the fact

14  that neither Young nor Heller had any such responsibilities as they related to JVT documents.

15  **VII. RESPONDENT YOUNG SHOULD NOT BE SANCTIONED FOR
        THE FAILURE TO PRODUCE THE RAVEENDRAN EMAILS
16      DISCOVERED DURING TRIAL, OR FOR FAILING TO CONDUCT
        A FURTHER SEARCH FOR DOCUMENTS AT THAT TIME**

17  **A.    The Factual Dispute Presented By The Young And Patch Declarations As To
18          Whether Respondent Young Was Truly Advised Of The Discovery Of The
            Raveendran E-Mails Has Now Been Resolved Through Discovery.**

19      The Court appears to have sanctioned Young because he "did not conduct a reasonable

20  inquiry into Qualcomm's discovery production before making specific factual and legal arguments

21  to the Court." (Sanctions Order p. 29:17-20.)[2]  The Sanctions Order repeatedly refers to the now

22  proven to be incorrect statements made by Young at sidebar on January 18, 2007:

23

24  [2] Again, to the extent that the Court premised its decision to sanction Young because of "specific factual and legal
25  arguments to the Court" made by Young, this appears to be contrary to the Court's observations in footnote 5 at page
    18 regarding the scope of the referral by Judge Brewster.  Moreover, statements made to the Court during trial are not
26  "pretrial motions or matters," and as such sanctions for such statements would appear to exceed the authority of the
    Magistrate Judge under 28 U.S.C. section 636(b), Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(b) of the
27  United States District for the Southern District of California.  Nevertheless, these issues must be addressed because
    they call into question the ethical propriety of Young' statements to the Court and opposing counsel.
28

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

1    [Young] argued at sidebar on January 18, 2007 to exclude the December 2002
     email reflector list containing Raveendran's email address and affirmatively stated
2    that there was no evidence that any emails had been sent to Raveendran's email
     address. Although Young denies knowing about the 21 emails, his statement
3    occurred four days after Patch claims he notified Young of the discovery.

4    (Sanctions Order Ex. A, pp. 46:28-47-3.)

5         The Court's conclusion that, in fact, Young was aware of the existence of the Raveendran

6    emails prior to the sidebar conference of January 18, 2007, appears premised upon the statement

7    made by Patch in his October 17, 2007 declaration (Dkt. No. 676) in these proceedings that:

8         Shortly after this discovery, I gave a brief heads-up to my other colleagues,
          including Jim Batchelder and Stanley Young, of the discovery of JVT-related
9         documents on Ms. Raveendran's laptop. However, I do not recall that I was explicit
          with them that the documents were emails or that they were from the "avc_ce"
10        email list, and this I regret in light of later events.

11   (Patch Dec. p. 6:16-20.)

12        The Court appears to have interpreted Patch's declaration statements as having actually

13   advised Young of the existence of the 21 emails. This in turn appears to have led to its conclusion

14   that Young acted in bad faith in making his comments at sidebar on January 18, and thereafter,

15   permitting the factually incorrect JMOL to be filed. (Sanctions Order pp. 29:27-30:5.) Young has

16   repeatedly and explicitly denied having been made aware of the discovery of 21 Raveendran

17   emails on or about January 14, 2007, prior to the sidebar conference of January 18, 2007. (Young

18   Dec. ¶¶80, 82, 83, 86.)

19        This apparent factual dispute has since been resolved through discovery. Patch's

20   ambiguous "heads up" statement has been scrutinized under deposition cross-examination and it is

21   now clear that in making the statements in his declaration, Patch was not intending to suggest to,

22   or tell the Court that he, in fact, had advised Young of the discovery of the 21 Raveendran emails

23   on or about January 14, 2007.

24        **B.    Patch Has Now Testified Under Oath That He Did Not Tell Young About The
               Discovery Of The 21 Raveendran Emails.**
25
          Given the significance of the Court's conclusion that Patch told Young about the 21
26
     Raveendran emails on January 14, 2007, counsel for Young took the deposition of Patch on
27

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

July 14, 2009.[3]  In his deposition, Patch clearly and unequivocally stated that he did not tell Young

of the discovery of the 21 Raveendran emails on January 14, 2007.  (*See*, Noonan Dec. Ex. C.)

During his deposition, Patch was specifically asked about the Court's statement at page 30,

footnote 11 of the Sanctions Order that "Patch claims that he told Young about the 21 Raveendran

e-mails, but Young denies it."

> Q:     Have you ever claimed that you told Mr. Young about the 21 Raveendran emails?
>
> A:     Never.

(Patch Depo. p. 41:14-20.)

Again, with respect to the Court's observation in Exhibit A, pp. 46-47 of the Sanctions

Order that "although Young denies knowing about the 21 Raveendran emails, his statement

occurred four days after Patch claims he notified Young of the discovery," he testified as follows:

> Q:     And again, to your understanding, Mr. Patch, you did not notify Mr. Young of the discovery of 21 Raveendran emails either four days prior or any days prior to January 18; is that correct?
>
> A:     That is correct.

(Patch Depo. p. 41:21-42:6.)

With respect to the Court's observation at page 28, line 24, that after Bier located the

emails on January 14, "Patch discussed the discovery and production issue with Young and

Batchelder," Patch affirmed as follows:

> Q:     And am I correct, sir, you did not discuss with Mr. Young on January 14th or 15th or any day prior to January 18th, you did not discuss with him the issue as to whether or not the documents should be produced or should have been produced; is that correct?
>
> A:     That is correct.
>
> Q:     Again, to the extent that this portion of the Court's order refers to - - I believe it refers to pages 6 and 7 of your declaration, again, you did not discuss and advise Mr. Young on the evening of January 14, 2007 that 21 e-mails had been discovered on Ms. Raveendran's laptop computer, correct?

---

[3] Prior to the original hearing on October 12, 2007, none of the Respondent Attorneys had the ability to take depositions or otherwise seek clarification as to the contents of the filed declarations before the hearing.  That opportunity was first afforded as a result of Judge Brewster's Remand Order.

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  A:      That's correct.

2  (Patch Depo. pp. 42-18-43:5.)

3  As to the specifics of the so-called "heads up," Patch testified that the entire encounter with

4  Young lasted "30 seconds" (Patch Depo. p. 35:9-11) and consisted of the following:

5  Q:      All right.  And as you sit here today, do you have a specific recollection of what
          you stated to Mr. Young?

6

7  A:      To my recollection, that I told him that some JVT-related documents had been
          located on Viji's computer and that people were looking into it.

8  Q:      Now, is that - - are you piecing together what you think you told him, or do you
          have a specific recollection as you sit here today as to the exact words that you

9          used?

10  A:     **I do not have a recollection of exact words.**

11  **Q:      So as you sit here today, you can't specifically state that you used the term
          "JVT-related," is that correct?**

12

13  **A:      That's correct.**

   Q:      And you said some people were looking into it.  Was that your reference to Mr.
14          Bier and Mr. Mammen?

15  A:      Correct.

16  Q:      But I take it you didn't tell him who the people were; is that correct?

17  A:      I have no recollection of identifying people.

18  Q:      And was that the sum and substance of your conversation?

19  A:      Totality of it.

20  Q:      Do you recall any - - any gestures or body language or anything in Mr. Young in
          response to what you had told him?

21

22  A:      I recall no reaction or response.

   Q:      Did you state anything else to Mr. Young at that time other than what you've told
23          us:

24  A:      I don't believe I said anything further.

25  Q:      And have you, to the best of your recollection, imparted to me what you can recall
          about the conversation with Mr. Young?

26

27  A:      I have.

   (Patch Depo. pp. 35:20-37:4 (emphasis added).)  He further stated that he does not recall that he
28

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1   was "explicit with [Young] that the documents were emails." (Patch Depo. p. 37:5-20.)

2         When questioned about contemporaneous correspondence corroborating Young's

3   ignorance of the discovery, Patch confirmed that it matched his recollection. For example, Patch

4   recalled that in the "meet and confer" telephone conference of February 1, 2007 involving himself,

5   Bier and Young on the Qualcomm side and Tompros and Saxon on the Broadcom side – a call

6   recounted in a letter by Tompros of February 7, 2007 – that Tompros was told words to the effect

7   that "Mr. Young did not know about this search when he represented to the Court on January 18,

8   2007 that there was no evidence of any email from the JVT and Raveendran." (Patch Depo. p.

9   10:13-21.) While he did not recall who made this statement, that statement was consistent with

10  his knowledge as of February 1, 2007. (Patch Depo. p. 11:3-9.) No one on the call disputed the

11  accuracy of that statement. (*Id.* at p. 11:10-15.)

12        Patch also recalled seeing Bier's email of January 29, 2007 [Young Dec. Ex. 11] in which

13  Bier made a statement to the effect that Young was not privy to the conversations concerning the

14  discovery of the 21 emails at the time he made his statements to the Court on January 18, and he

15  believes that to be an accurate statement. (Patch Depo. pp. 20:11-21:15.) Indeed, to his

16  recollection, neither Bier nor anyone else from Day Casebeer ever disputed the notion that Young

17  did not know about the search which uncovered the emails when he made the statements to the

18  Court on January 18, 2007. (Patch Depo. p. 13:15-21.)

19        Patch was then directed to paragraph 34 on page 8 of his previously submitted declaration

20  in which had stated he had been unaware of Young's comments to Judge Brewster at sidebar on

21  January 18, 2007 because he was not in court. He then reaffirmed the truth of his statement at

22  page 8, line 24, of his previously submitted declaration that "obviously if I had known of the

23  sidebar comments or if we had more effectively communicated with the Heller Ehrman attorneys

24  on those matters, the statements would either never have been made or I would have been in a

25  position to immediately take corrective action with the Court after they were made." (Id. at pp.

26  39:22-40:5.)

27        Patch also confirmed that the only conversation that he had with Young on this subject

28  prior to January 18 was the "one brief conversation which he previously testified to" and that in

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

-13-
05CV1958-B (BLM)

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1    that conversation he "had not communicated to Mr. Young at any time prior to January 18 that

2    what had been discovered on Ms. Raveendran's laptop computer were 21 e-mails to or from the

3    AVC_ce reflector list...." (Patch Depo. p. 40:6-17.) He further reaffirmed what he had previously

4    stated in his declaration at page 9, line 4, that he regretted and apologized that he "did not share

5    the information about the 21 e-mails more fully with all members of the trial team ..." including

6    Young. (Patch Depo. p. 40:12-24.)

7          Finally, Patch testified that, on January 24, 2007, after the conclusion of the trial

8    testimony, he recalls Young seeking confirmation that he had not been advised in the discovery of

9    the emails prior to and during the course of the trial and "I remember confirming to him that I did

10   not recall having informed him of the discovery of the emails in that period." (*Id.* at pp. 43:6-

11   44:14.) That remains his recollection at the time of his deposition. (*Id.* at p. 44:15-22.)

**C.    Patch's Deposition Testimony Confirms That Young Did Not Know Of The 21 Emails Before Raveendran's Trial Testimony.**

13         This newly developed evidence – of which this Court did not have the benefit until now –

14   fully corroborates Young's consistent position that he did not know of the emails:

16          I did not know at any time before January 18, 2007, that such emails had been
            located by other Qualcomm counsel or that Ms. Raveendran had, in fact, received
17          any emails from the JVT Ad Hoc Group.  Had I been aware of the existence of the
            emails either sent to or from Ms. Raveendran's email address involving the JVT Ad
            Hoc Group and/or the e-mail reflector address indicated in that report, I would not
18          have made the statements on January 18, 2007 at sidebar as to the absence of
            evidence indicating e-mails were sent to Ms. Raveendran.

19   (Young Dec. ¶ 80, p. 29:8-14.)

20
            Also, I did not know that during the course of preparation for her testimony that
21          other counsel for Qualcomm had located emails, 21 or otherwise, constituting
            emails from the JVT reflector to Ms. Raveendran's email address or vice versa.

22   (Young Dec. ¶ 82, p. 25-28.)

23          I was present in Court when Ms. Raveendran testified on January 24, 2007, and I
24          was surprised when she testified regarding the existence of any e-mails received by
            her from the JVT reflector, because it was contrary to what I had previously
25          understood about the absence of any e-mail traffic from or to Ms. Raveendran
            involving the JVT email reflector address.

26   (Young Dec. ¶ 83, p. 30:1-4.)

27          As of the conclusion of the lunch recess on January 24, 2007, I had not even seen
28          the 21 emails.  Nor was I involved in any discussion or decision about whether the

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    emails should or should not be produced, either then or at any other time before.

2    (Young Dec. ¶ 86, pp. 30:26-31:1.)

3         As such, and while Young has no recollection of the "heads up" conversation, it now

4    appears that Patch's "heads up" may have been misconstrued as being an assertion that he, in fact,

5    told Young on January 14, 2007 of the discovery of the 21 Raveendran emails.  It is now clear that

6    this simply was not the case.  (*See*, Supplemental Declaration of Stanley Young filed herewith

7    ("Supp. Young Dec.") at ¶ 4-6.)  Young has been very clear and forthright from the outset that he

8    was not aware of this discovery until Raveendran testified in Court on January 24, 2007, that he

9    was not asked to participate in any decision or discussion as to whether the emails should be

10   produced, nor was he advised of any decision in this respect.  The only reasonable conclusion that

11   can be drawn from the evidence is that Young was as surprised as others were when the

12   information regarding the discovery of the 21 Raveendran emails was first revealed in open court

13   on January 24, 2007.  Patch's deposition testimony confirms Young's account.

14        On this basis, there is simply no evidence from which a finding could be made that Young

15   was aware of the discovery on or about January 14, 2007.  Accordingly, there is no basis for

16   finding that Young committed misconduct in (a) failing to disclose the existence of the 21 emails;

17   (b) failing to search for further emails, (c) making the statements which he made at sidebar on

18   January 18, (d) or failing to modify the JMOL before it was filed on January 24, 2007.[4]

19        **D.    Young Did Not Act In Bad Faith With Respect To His Oral And Written**
             **Statements To The Court.**

20

21        In its Sanctions Order, the Court was critical of Young's conduct in certain respects and

     issued sanctions against him – some of which has already been addressed above.  Specifically, the
22
     Court found that Young – along with Attorneys Patch and Batchelder – did not conduct a
23
     reasonable inquiry into Qualcomm's discovery production before making factual and legal
24

25   _____

26   [4] It remains Young's recollection that the only contact he had with anyone prior to January 24, 2007 regarding any
     documents located on Raveendran's computer was the fleeting contact he had with Bier as described in paragraphs
27   100-101 of his declaration which provided him no new information on the subject and which reaffirmed his
     understanding of the situation as set forth in his written communications to the Court.

28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1   arguments to the Court, referencing (1) the Motion for Summary Judgment, (2) the JMOL and (3)

2   the statements made at sidebar during trial on January 18, 2007. (Sanctions Order at pp. 29-30.)

3   The Court also found that Young failed to inquire whether Qualcomm's document search was

4   adequate when he learned of the discovery of 21 emails on the laptop computer of Viji

5   Raveendran on January 14, 2007 from Attorney Patch – although the Court noted that Young

6   disputed that he knew of the discovery of those emails. (*Id.* at pp. 28-30.)

7           As noted above, this conduct is not sanctionable here in that it involves pleadings filed

8   with, and statements made to, the Court rather than discovery and thus is outside the scope of the

9   OSC. Nevertheless, it is important for Young to explain to the Court why he did not act in bad

10  faith with respect to these actions. In that regard, both previous evidence and additional

11  information revealed in discovery make clear that Young did not act in bad faith, or engage in

12  conduct tantamount to bad faith, such that he should be sanctioned by this Court.

13          **(1)       Young May Rely On Co-Counsel And The Client.**

14          In its Sanctions Order, the Court acknowledged that, depending on the circumstances of

15  the case, it may be reasonable to rely on the work conducted by other attorneys. (Sanctions Order

16  pp. 32-33, fn. 14.) And, indeed, courts have ruled in a variety of contexts that attorneys who

17  reasonably rely on co-counsel or the client should not be sanctioned. While most of these cases

18  arose under a Rule 11 analysis, Courts have also declined to award such sanctions in cases

19  involving a court's inherent power to sanction attorneys and under Rule 26.

20          Thus, for purposes of inherent powers sanctions, "bad faith" is personal, meaning that an

21  attorney may not be sanctioned based on misconduct by co-counsel. *In re Ruben,* 825 F.2d 977,

22  987-88 (6th Cir. 1987) (lawyer who began representing plaintiff after case filed could not be

23  sanctioned for bad faith in commencing the action); *Dow Chemial Pacific, Ltd. v. Rascator*

24  *Maritime, S.A.*, 782 F.2d 329, 344 (2nd Cir. 1986) (a finding that one defendant acted in bad faith

25  does not justify awarding fees against co-defendant).

26          In *Books Are Fun, Ltd. v. Rosebrough*, 239 F.R.D. 532 (S.D. Iowa 2007), the District Court

27  declined to sanction a law firm under its inherent sanctions power because there was no evidence

28  that the attorneys took "a conscious deliberate step to conceal" documents in discovery. In that

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    case, a client had given the attorneys a document sealed in an envelope without telling the

2    attorneys what was contained in that envelope. *Id.* at 536. When an opposing party requested

3    documents in discovery which would have included the document enclosed in the sealed envelope,

4    the attorneys, not knowing what was in the envelope, did not produce it. *Id.* at 536-537. When

5    the document was eventually produced, sanctions were sought against the attorneys and the party.

6        While noting that the "record contains no explanation of why an experienced legal

7    professional would allow such a mystery envelope to be placed in the possession of his law firm

8    without information about the nature of its contents," the Court nonetheless declined to sanction

9    the attorneys under its inherent powers (or under any other federal rule) because there was no

10    evidence that counsel acted in bad faith or deliberately suppressed the document. *Books Are Fun,*

11    239 F.R.D. at 536, 556.

12        Cases imposing sanctions under Rule 11 are also instructive as it is well-established that

13    such sanctions are not appropriate where an attorney reasonably relies on the client or co-counsel.

14    For example, in *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439 (5th Cir. 1992), the

15    plaintiff initially consulted with an Arizona attorney who conducted interviews and prepared an

16    extensive chronology regarding plaintiff's case. The plaintiff then hired counsel in Louisiana to

17    litigate the matter. Louisiana counsel interviewed both the plaintiff and his Arizona attorney.

18    After plaintiff later voluntarily dismissed the action, the court ordered plaintiff and his Louisiana

19    counsel to pay over $300,000 in Rule 11 sanctions for defendants' attorneys' fees and expenses.

20    The Fifth Circuit reversed the sanctions order, noting that it was reasonable for Louisiana counsel

21    to rely on the Arizona counsel's factual investigation: "[A]n attorney receiving a case from

22    another attorney is entitled to place some reliance upon that attorney's investigation." *Id.* at 446;

23    *see also, Orleans Parish School Board v. Angelic Asset Management, et al.,* 2004 WL 1713872

24    (E.D. La 2004).

25        Moreover, the Advisory Committee expressly cautions as follows:

26       The court is expected to ***avoid using the wisdom of hindsight*** and should test the
signer's conduct by inquiring what was reasonable to believe at the time the

27       pleading, motion, or other paper was submitted. Thus, what constitutes a
reasonable inquiry may depend on such factors as how much time for investigation

28       was available to the signer; ***whether he had to rely on a client for information as***

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1    *to the facts underlying the pleading, motion, or other paper;* whether the pleading,
     motion, or other paper was based on a plausible view of the law; *or whether he*
2    *depended on forwarding counsel or another member of the bar.*

3    Advisory Committee Notes, 1983 Amendment (emphasis added).

4        The same principles apply to reasonable reliance on a client. In *Continental Ins. Co. v.*

5    *Construction Indus. Servs. Corp.*, 149 F.R.D. 451 (E.D.N.Y. 1993), Continental sued in federal

6    court based on diversity of citizenship and alleged that its principal place of business was in New

7    Jersey, when in fact it was in New York. The court held that Continental's counsel should not be

8    sanctioned because he reasonably relied on a representation by Continental's assistant general

9    counsel that Continental's principal place of business was in New Jersey:

10       [Plaintiff's counsel] plainly did all that a reasonably competent attorney would be
         expected to do under the circumstances. He relied upon Continental's assistant
11       general counsel, a member of the bar, to determine the corporation's principal place
         of business. This court would not expect him independently to examine that
12       determination, absent some reason to question it.

13   *Id.* at 453.

14       In fact, the more complex the litigation, the more reasonable it is to rely on the client. In

15   *Dubois v. U.S. Department of Agriculture*, 270 F.3d 77, 82 (1st Cir. 2001), the court noted that the

16   highly technical nature of the subject matter together with the lack of any basis to doubt the

17   client's veracity made counsel's reliance reasonable. Of note, counsel sent to the client copies of

18   the substantive court submissions to review for accuracy. *See also, Hadges v. Yonkers Racing*

19   *Corp.*, 48 F.3d 1320, 1329-30 (2d Cir. 1995); *CTC Imports & Exports v. Nigerian Petroleum*

20   *Corp.*, 951 F.2d 573 (3d Cir. 1991).

21       Rule 11 sanctions also are not appropriate where an attorney relies on deposition testimony

22   that later turns out to be incorrect. In *Manville Sales Corp. v. Paramount Sys., Inc.*, 123 F.R.D.

23   177 (E.D. Pa. 1988), Paramount filed a motion to declassify a Manville videotape designated as

24   confidential under a protective order. Manville opposed, arguing that the videotape was intended

25   solely for internal use – factual assertions that turned out to be wrong. At the time they were

26   made, however, the assertions were consistent with the client's deposition testimony. In vacating

27   Rule 11 sanctions, the District Court concluded as follows:

28       [Manville's] counsel's reliance on [Paramount's counsel's] independent questioning

*Kirby Noonan Lance & Hoge LLP*
*350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700*

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1    of the employee who produced and was responsible for the videotape, as well as his
     reliance on that employee's sworn deposition testimony that the tape was never
2    shown to anyone outside of [Manville's company division], was objectively
     reasonable under the circumstances at the time Manville's response in opposition to
3    the motion to declassify was filed.  Therefore, it is my conclusion that counsel for
     Manville did not violate Rule 11, and sanctions pursuant to that rule are
4    accordingly unwarranted.

5    *Manville*, 123 F.R.D. at 179.

6        Insofar as sanctions imposed under inherent power involve an even higher standard of

7    wrongfulness than Rule 11 sanctions, *see Chambers*, 501 U.S. at 47 (contrasting the bad-faith

8    requirement under inherent power with Rule 11's "objective standard of reasonably inquiry"),

9    Young's reasonable reliance on his co-counsel (and client) provides no basis for sanctioning him.

10            **(2)      The Motion For Summary Judgment.**

11       With respect to the motion for summary judgment prepared and filed by the Heller

12   lawyers, the Court noted and concluded as follows:

13       Young decided that Qualcomm should file a motion for summary adjudication
         premised on the fact that Qualcomm had not participated in the JVT until after the
14       H.264 standard was adopted in May 2003.  Given that non-participation was vital
         to the motion, Young had a duty to conduct a reasonable inquiry into whether that
15       fact was true.  And, again, had Young conducted such a search, he would have
         discovered the inadequacy of Qualcomm's document search and production and
16       learned that his argument was false.

17   (Sanctions Order, p. 29:20-27.)  The Court apparently concluded that Young did not conduct a

18   reasonable inquiry into whether that fact was true.

19       Young respectfully submits that he did conduct a reasonable inquiry into whether the facts

20   upon which the Motion for Summary Judgment was based were true.  However, in assessing his

21   conduct, it is important to review not just the work that Young and the Heller associates did to

22   prepare that Motion, but also to understand the state of Young's knowledge in the months leading

23   up to the filing of this Motion on November 6, 2006.[5]

24           **(a)      Young's Pre-Filing Understanding Of The Factual Basis For
                       The Motion.**
25

26

27   [5] Of note, the Motion was filed some two months before attorney Bier discovered the emails on Viji Raveendran's
     computer in January 2007.
28

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1    From the beginning of the case, Day Casebeer handled JVT-related issues while Young

2    and Heller handled damages issues. (Batchelder Dec. ¶ 18.) In Young's first meeting with co-

3    counsel, *Day Casebeer's Chris Mammen told Young that Qualcomm had had no involvement in*

4    *the JVT standard setting process.* (Young Dec. ¶ 13 and Exhibit 1 thereto.) Young had no reason

5    to question this statement of respected co-counsel in that it was not his or Heller's area of

6    responsibility.

7    It was not until August 2006 that Young and Heller had any involvement with any JVT-

8    related task. Day Casebeer asked Heller to work with Qualcomm's expert to respond to the report

9    of Broadcom's expert. *All of Young's discussions with Day Casebeer to that time had confirmed*

10   *Qualcomm's lack of participation in the JVT standard setting process.* (Young Dec. ¶ 44.)

11   The report of Broadcom's expert – who had been personally involved in the JVT standard

12   setting process since 2002 – seemed to corroborate Day Casebeer's assurances as he stated only

13   that Qualcomm was involved in the JVT as early as 2003 and attended JVT meetings as early as

14   September 2003. (Young Dec. ¶¶ 39-43.) On September 28, 2006, Young took the deposition of

15   this expert, Cliff Reader, who yet again confirmed, under oath, that he had no information that

16   Qualcomm had participated in the development of the H.264 standard before its approval in May

17   2003. (Young Dec. ¶ 54.)[6]

18   In this same time frame in 2006, Young also read Qualcomm's response to Broadcom's

19   second set of interrogatories prepared by Day Casebeer and served on August 16, 2006, which

20   interrogatory responses contained substantially the same information regarding Qualcomm's

21   participation in JVT meetings as was contained in Broadcom's expert report. (Young Dec. ¶ 44

22   and Exhibit 7 thereto.) These responses list the specific JVT meetings that Qualcomm attended –

23   _____

24   [6] In the Sanctions Order, the Court noted that Young "agreed to present the JVT witnesses at trial, although they
     ultimately were not used at trial." (Sanctions Order p. 46:27-28, Ex. A.) The Court also noted that the "Heller
25   Ehrman attorneys took on the task of preparing witnesses…regarding the JVT." (Sanctions Order p. 30:23-25, fn. 12.)
     These statements are not correct. Neither Young nor any other Heller attorney agreed to present any Qualcomm JVT
26   witnesses at trial, nor did they prepare any of Qualcomm's JVT witnesses for deposition or trial testimony. (Supp.
     Young Dec. ¶ 8.) Young deposed Dr. Reader to assist Day Casebeer and was also prepared to cross-examine (but not
27   present) Dr. Reader at trial, although that did not happen because Dr. Reader was not called to testify. (Supp. Young
     Dec. ¶ 8.)

28

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

**Kirby Noonan Lance & Hoge LLP**
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1    and none were listed prior to December 2003. (Young Dec. Ex. 7 at p. 12.)

2        Importantly, Young's belief was also based on the sworn deposition testimony of

3    Qualcomm's JVT witnesses who all testified about Qualcomm's lack of involvement in the JVT

4    standard setting process. (Young Dec. ¶ 52.) And, on August 30, 2006, Young reviewed a

5    summary of the deposition of third party witness Gary Sullivan, the chairperson of the JVT since

6    its inception, who testified that he had little or no recollection of any activities by Qualcomm in

7    the JVT prior to 2004 or 2005, which was after the standard had been published. (*Id.* ¶ 53.)

8        Thus, when work began on the Summary Judgment Motion which asserted, in part, that

9    Qualcomm had not been involved in the JVT standard setting process prior to May 2003, Young

10   was relying upon (1) the sworn deposition testimony of Qualcomm's JVT witnesses, (2)

11   interrogatory answers prepared by Qualcomm and Day Casebeer, (3) the report and sworn

12   deposition testimony of Broadcom's expert, Dr. Reader, and (4) the sworn deposition testimony of

13   third-party witness, Gary Sullivan. Importantly, all of the evidence reviewed unequivocally

14   supported the premise upon which the Motion was based, *i.e.*, that Qualcomm had not participated

15   in the JVT until after May 2003. There were no "red flags" raised nor any reason to re-do the

16   discovery already completed by Day Casebeer.

17                    **(b)    The MSJ Filing.**

18       In authorizing the filing of the Motion for Summary Adjudication, Young relied on the

19   investigation performed above and the work performed by Heller Ehrman associates Venkatesan

20   and Robertson. (Young Dec. ¶ 58.) Under Young's direction and supervision, Kyle Robertson

21   undertook substantial investigation including (i) reviewing numerous deposition transcripts and

22   discovery responses, (ii) circulating drafts of all pleadings to counsel at both Day Casebeer and in-

23   house counsel at Qualcomm, as well as to Young, for their approval of the pleadings and of the

24   statements contained therein, (iii) reviewing the JVT website for information about the ad hoc

25   group email list, (iv) contacting numerous Day Casebeer lawyers for more information and

26   speaking with Qualcomm employee/witness Viji Raveendran. (Robertson Dec. at ¶¶ 33-57.) Kyle

27   Robertson also reviewed the database of all documents produced in the case (October 12, 2007

28   Hrg. Tr., pp. 65-66.) Thus, before the final product was filed in Court, at Young's direction, Heller

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1   took even greater care to establish the factual basis of the Motion.

2       In approving the filing of the Motion for Summary Adjudication, Young relied on his

3   knowledge and review of the substantial factual record to date, including (i) Qualcomm's

4   interrogatory responses, (ii) the Reader report, (iii) the Richardson declaration about the publicly

5   available minutes from the JVT website, (iv) Dr. Reader's sworn deposition testimony taken by

6   Young, (v) the sworn deposition testimony of Qualcomm JVT witnesses Viji Raveendran, Yuriy

7   Reznik, Yiliang Bao, Phoom Sagetong and Yan Ye, as well as (vi) the deposition testimony of Dr.

8   Gary Sullivan, Chairman of the JVT - all of which confirmed that there were no facts indicating

9   that Qualcomm had been involved in the JVT standards setting process before H.264 was adopted

10  in May 2003. (Young Dec. ¶ 58.)  Young further relied on the work done by and his

11  conversations with Day Casebeer attorneys who had prepared and defended the Qualcomm JVT

12  witnesses at their depositions and who had responded on behalf of Qualcomm to Broadcom's

13  discovery requests. (Young Dec. ¶ 58.)

14      Young also reviewed an outline of the Motion for Summary Adjudication prepared by

15  Kyle Robertson which Young had transmitted to the Day Casebeer attorneys for review. (Young

16  Dec. ¶ 55 and Robertson Dec. ¶ 40.)  And Young directed Kyle Robertson to transmit his draft of

17  the Motion for Summary Adjudication via email to various Day Casebeer attorneys as well as to

18  in-house counsel for Qualcomm for their comments and approval, which Young and Robertson

19  received. (Young Dec. ¶ 56; Robertson Dec. ¶ 41 and Ex. 4 thereto.)  Both Day Casebeer attorney

20  Batchelder and Qualcomm in-house attorney Rogers commented on the draft of the Motion, but

21  neither one contradicted the fundamental factual premise on which it was based – that Qualcomm

22  did not participate in the JVT proceedings prior to May 2003. (Young Dec. ¶ 56; Robertson Dec.

23  ¶ 42.)  In fact, Batchelder informed Young and Robertson that they had done a "great job"

24  providing comments to make the introduction to the brief "far stronger." (Robertson Dec. ¶ 42 and

25  Ex. 5 thereto.)

26      As can be seen, Young did not act in bad faith in authorizing the filing of the Motion for

27  Summary Judgment – rather, he and the Heller team were quite diligent.  They conducted an

28  extensive review of the record, looking not only at their own client's testimony (in interrogatory

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California  92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  answers and numerous deposition transcripts) but also at the report and testimony of the

2  adversary's witness on the subject (Dr. Reader), the testimony of an independent third party (Dr.

3  Sullivan), relevant websites, etc. The fruits of their labors led them to believe, in the utmost good

4  faith, not only that their motion for summary judgment was supported by the evidence, but that it

5  was compelled by the evidence. In that regard, it is undeniable that all evidence that had been

6  made available to Young and which Young understood to be all of the available evidence as of

7  November 6, 2006 unequivocally supported Young's understanding that the factual premise in the

8  Motion was correct – that Qualcomm did not participate in the JVT prior to May 2003.

9      Young did not duplicate – nor does the law or custom and practice require that he duplicate

10  – Day Casebeer and Qualcomm's initial discovery and document searches regarding JVT issues.[7]

11  Nor did Young have any reason to do so. Rather, Young and Robertson quite rightly relied on the

12  work that had been done to date by Day Casebeer and the client, as well as the research and

13  investigation performed by Heller associate Robertson in drafting the Motion.

### (c) The MSJ Opposition And Reply.

15      Broadcom's opposition to the Motion for Summary Adjudication included a document

16  showing that Raveendran's email address was listed on a subscriber email list in the AVC Ad Hoc

17  Group Report for December 2002. (Robertson Dec. ¶ 47.) Young assigned Robertson with

18  preparing the reply and investigating the document and supervised his effort.

19      Complicating matters was the timing of the reply. The opposition was served on Monday,

20  November 20, 2006, and the reply was due the following week on Monday, November 27, 2006 –

21  with the Thanksgiving holiday falling in between the two dates. (Robertson Dec. ¶ 47.)

22      As noted in the Court's Sanctions Order, Kyle Robertson "made significant efforts to

23  confirm the accuracy of the facts upon which he relied in drafting the various pleadings' filed by

24  Heller Ehrman" – despite the time constraints. (Order at 34:8-9.) Robertson had not seen the

25  document in question nor was it mentioned in the deposition of Raveendran. (Robertson Dec. ¶

---

[7] Young will be prepared to offer expert testimony on these matters either at the January 2010 hearing.

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

47.) As part of his review, Robertson learned that the document had been marked and discussed
during the deposition of Scott Ludwin, a deposition which he had not reviewed in preparing the
Summary Judgment Motion. (Id.) During Thanksgiving week, Robertson set about investigating
the document, searching the JVT website, but finding no definitive answer. (Id. at ¶ 48.)
Robertson also discussed the matter over the phone with Heller associate Venkatesan and Young.
(Id. at ¶ 50.) Robertson called Patch but does not recall learning anything of substance. (Id.)

On Young's recommendation, Robertson contacted Raveendran directly to speak to her
about the document. (Id. at ¶ 51.) For the October 2007 proceedings, the Heller lawyers,
including Young, could not describe the conversation between Robertson and Raveendran due to
the assertion of the attorney-client privilege. This is critical, new evidence of which the Court was
unaware when it previously ruled and is presented in the September 21, 2007 declarations of
Robertson and Young not previously filed with the Court.

Robertson contacted an in-house paralegal at Qualcomm, who informed him that
Raveendran was out on maternity leave. (Robertson Dec. ¶ 51 and Ex. 7 thereto.) Robertson then
suggested that, if they could not reach Raveendran, he would like to speak with other Qualcomm
personnel such as Christine Irvine, Hari Garudadri, Phoom Sagetong or Scott Ludwin. (Id.) The
Qualcomm paralegal informed Robertson that she was only able to locate Sagetong as most people
had left for Thanksgiving holiday. (Id.) However, the Qualcomm paralegal ultimately heard back
from Raveendran who provided a cell phone number to contact her. (Id.)

On Wednesday, November 22, 2006, before Thanksgiving, Robertson contacted
Raveendran on her cell phone while, as he understood it, she was at a park with her child.
(Robertson Dec. ¶ 52.) Robertson typed up his notes from the conversation immediately after they
spoke and emailed them to Young. (Robertson Dec. ¶ 52 and Ex. 8 thereto.) Importantly, this
email summary could not be presented to the Court in October 2007. Raveendran told Robertson
that she believed someone else had put her name on the email list. (Id.) She also told Robertson
that she never read the '104 patent, or even a draft of the patent, and that she did not read the
H.264 standard until 2004. (Id.) Raveendran did not reveal to Robertson that in fact she herself
had requested that she be put on this email list or that she had attended JVT meetings and seen

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1 | reports of other Qualcomm employees' attendance at JVT meetings in 2002 and 2003. (*Id.*) What

2 | Raveendran did tell Robertson during their telephone conversation simply confirmed his

3 | understanding of the state of the evidence as expressed in the Summary Judgment Motion – that is,

4 | that Qualcomm did not participate in the JVT standard setting process. (*Id.*; Young Dec. ¶ 62.)

5 |       Robertson forwarded his notes of the Raveendran conversation to Young. (Robertson Dec.

6 | ¶ 52; Young Dec. ¶ 62.) When Raveendran's statement was conveyed to Young, he had no reason

7 | to believe it was inaccurate or untruthful and thus no reason to call for a complete redo of the

8 | discovery process.

9 |       Robertson prepared the reply brief and circulated drafts to Young and Venkatesan for

10 | comment. (Robertson Dec. ¶ 53.) Venkatesan then circulated a draft of the reply memorandum in

11 | support of the Motion for Summary Adjudication among the attorneys at Day Casebeer as well as

12 | and among Qualcomm in-house counsel to confirm that the factual statements made and the

13 | positions taken were correct prior to filing. (Young Dec. ¶¶ 64-65; Robertson Dec. ¶¶ 54, 55.)

14 | Young was copied on the circulated briefs. No Day Casebeer attorney or Qualcomm in-house

15 | attorney indicated that any statement in the reply was incorrect. Patch made comments which

16 | specifically buttressed the assertion that Raveendran did not know of JVT meetings or have

17 | involvement with the JVT prior to her participation in the SVC project. (Robertson Dec. ¶ 55 and

18 | Ex. 10 thereto.)

19 |       As seen above, the Heller attorneys conducted a substantial investigation into the facts

20 | before filing the Summary Judgment Motion and Reply. While Young was not the Heller attorney

21 | principally involved in preparing and drafting the motion, he supervised associate Robertson who,

22 | at Young's direction, conducted a substantial inquiry into the factual basis for the Motion.

23 | Robertson's draft briefs conform with Young's understanding of the state of the factual record,

24 | which was based on Young's own review of Qualcomm interrogatory responses prepared by Day

25 | Casebeer, relevant Qualcomm employee deposition testimony, Broadcom's expert report and

26 | deposition testimony, and the depositions of third parties such as Gary Sullivan, Chair of the JVT.

27 |       Far from failing to conduct a reasonable inquiry, Young and his associates conducted a

28 | thorough inquiry into the state of the facts, relying on evidence provided under oath during the

*Kirby Noonan Lance & Hoge LLP*
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  discovery process, a follow-up interview of the key witness, Raveendran, and independent

2  investigation of websites. That they did not go back and investigate anew all of the discovery

3  responses Qualcomm and Day Casebeer had already prepared during the discovery phase of the

4  case does not mean that they acted in bad faith or were responsible for the massive discovery

5  failure. Indeed, they were entitled to rely on the discovery performed to date by their client and

6  respected lead counsel on the case. To do otherwise, without any apparent reason, was neither

7  required by law nor custom and practice of lawyers working in teams on large, complex cases.

8  **(3)    The Discovery Of The 21 Emails.**

9  As noted, the Court was critical of Young in the Sanctions Order for failing to review the

10  emails discovered by Attorney Bier and Raveendran on Raveendran's laptop computer during trial

11  and then ascertaining whether Qualcomm's initial document search was adequate. (Sanctions

12  Order pp. 28:22-29:11.) Specifically, the Court found:

13  > If Bier, Mammen, Patch, Young or Batchelder had conducted a reasonable inquiry
>  after the discovery of the 21 Raveendran emails, they would have discovered the
14  > inadequacy of Qualcomm's search and the suppressed documents. And, these
>  experienced attorneys should have realized the presence on Raveendran's computer
15  > of 21 JVT/avc_ce emails from 2002 contradicted Qualcomm's numerous arguments
>  that it had not participated in the JVT during that same time period. This fact,
16  > alone, should have prompted the attorneys to immediately produce the emails and
>  to conduct a comprehensive document search.

17  (Sanctions Order p. 29:7-16.)

18
19  However, Young was ***not*** told of the discovery of the 21 Raveendran emails on January 14,

20  2007 and did not learn of this discovery until January 24, 2007 when Raveendran testified in open

21  court. As a result, Young cannot be faulted for (1) failing to produce the emails at that time or (2)

22  failing to inquire into the adequacy of Qualcomm's document search.

23  Similarly, in the Sanctions Order at pp. 28:24-29:4, the Court appears to suggest that

24  Young assumed that the documents did not need to be produced because they were deemed to be

25  nonresponsive. The undisputed facts are that Young was not aware of the emails, was not aware

26  of any analysis regarding the production or non-production of those emails, and did not participate

27  in that process. (Young Dec. ¶¶ 81-86.) Young thus had no opportunity to take any position

28  regarding the responsiveness of the emails to any discovery request. Young respectfully submits

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   that, in light of the undisputed facts as clarified by the new evidence developed after the Sanctions

2   Order, he cannot be faulted in this regard.

3         **(4)    The January 18, 2007 Sidebar Statements At Trial.**

4         In the Sanctions Order, the Court also stated that "Young had a duty to conduct a

5   reasonable inquiry into the accuracy of the statement before affirmatively telling the Court that no

6   emails were sent to Raveendran from the avc_ce email group." (Sanctions Order pp. 29:27-30:2.)

7   At the time of the sidebar, Young's knowledge was the same as it had been at the time of the filing

8   of the Summary Judgment Motion and the Reply. As noted, his understanding was formed by his

9   own extensive review of the record including a review of interrogatory responses, sworn

10  deposition testimony of numerous Qualcomm witnesses, a Broadcom witness and an independent

11  third-party witness, Robertson's even more extensive investigation and review of the record, and

12  Robertson's critical interview of Raveendran, and the review and approval by Qualcomm and Day

13  Casebeer of the Motion and the Reply.

14        Based on newly provided evidence (the Patch deposition) corroborating Young's prior

15  testimony, it is also clear that at the time of this sidebar, Young did not know of the discovery of

16  the 21 emails. Young thus did not know the emails had, in fact, been sent to Raveendran's email

17  address from the avc_ce email group at the time he made the statement at sidebar during trial on

18  January 18, 2007. Indeed, at that time, neither Day Casebeer nor Qualcomm had informed him of

19  that discovery and thus he had no reason to be believe that his understanding of the evidence was

20  incorrect. Young was one more person who was shocked and perplexed to learn of the emails

21  during Raveendran's trial testimony on January 24, 2007.

22        In fact, at the October 12, 2007 hearing regarding the Order to Show Cause, the Court

23  acknowledged that Young should have been told of the discovery of the 21 emails on January 14,

24  2007. (Tr. p. 141:4-6, Noonan Dec. Ex. B.) Further, while the Court noted that the statement

25  made by Young was incorrect and therefore "false," Young did not know that his statement was

26  untrue, and for all of the reasons cited, he was not in a position where he reasonably should have

27  known. (Tr. p. 138:6-15; *see also*, p. 78:23-25 ["I accept what you're saying, that he made the

28  statement believing it to be true."].)

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

1    Rather, Young believed the statement to be true and his belief was based on the substantial

2    due diligence he had done to that point in time. Had he known of the discovery of the 21 emails,

3    he obviously would not have made the comments that he did. (Young Dec. ¶ 80.) And, as soon as

4    Young learned of the discovery of the 21 emails, he retracted his sidebar comments formally to the

5    District Court. (*Id.* at ¶ 90, Ex. 10.) Certainly, Young's honest, though mistaken, belief about the

6    accuracy of his statement does not mean he acted in bad faith and should be subject to sanctions.

7         **(5)    The JMOL.**

8         In its Sanctions Order, the Court also concluded that "Young also did not conduct a

9    reasonable (or any) inquiry during the following days before he approved the factually incorrect

10   JMOL." (Sanctions Order p. 30:2-4.) Young, however, had conducted a reasonable inquiry

11   regarding the truth of the statements contained in the section of the JMOL contributed by the

12   Heller attorneys and was not yet aware of any information – or "red flags" – which would have led

13   him to conclude otherwise at the time he reviewed Heller's work on that Motion.

14        Indeed, the Motion was filed by Day Casebeer – not Heller – at approximately 11:30 a.m.

15   on January 24, 2007 – the day Viji Raveendran testified at trial. (Robertson Dec. ¶ 70.) Young

16   had no control over the filing that day and, in fact, was in trial listening to Raveendran's

17   revelations regarding the 21 emails, learning of their existence for the very first time.

18        Heller associate Robertson prepared a draft section of the JMOL brief regarding

19   Broadcom's waiver defense concerning the JVT issue. (*See*, Robertson Dec. at ¶ 70.) Robertson

20   drafted that section and circulated it to Young on January 21, 2007 – three days before

21   Raveendran testified, and Young and Heller learned of, regarding the discovery of the emails in

22   question. (*Id.*) Robertson also provided a draft of that section of the brief on January 21 to Day

23   Casebeer. (*Id.*) Robertson and Day Casebeer attorneys exchanged comments regarding the brief

24   over the next two days but, after January 23, 2007, Robertson provided no further comments to the

25   JMOL brief. (Robertson Dec. ¶ 70.) Young was not aware of the discovery of the 21 Raveendran

26   emails at that time. (Young Dec. ¶ 89.)

27        Nobody informed Robertson (or Young) of the discovery of the 21 emails when Robertson

28   circulated his section of the JMOL brief to them nor did they tell him that his draft was factually

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1  incorrect. (Robertson Dec., ¶ 71.) As a result, neither Young nor any other Heller attorney had

2  any reason to believe that their section of the JMOL brief was factually incorrect or that they

3  needed to inquire further regarding the state of the evidence. Neither Robertson nor Young nor

4  anyone else at Heller was aware at that time of red flags that would have caused them to form a

5  belief that Day Casebeer attorneys were withholding from them critical information that destroyed

6  the credibility of the factual premise for Robertson's portion of the JMOL brief. For it was not

7  until Raveendran testified that Young or the other Heller attorneys ever discovered that they had

8  been kept in the dark.

9       Day Casebeer associate Smith filed the JMOL on January 24, 2007 at approximately 11:30

10  a.m. (Robertson Dec. ¶ 70.) Neither Young nor any other Heller attorney had responsibility for

11  actually filing that Motion on that date which was handled by Day Casebeer. (*Id.*) According to

12  Smith, she did not know of the discovery of the emails at the time she filed the document and

13  Raveendran testified at approximately the same time.

14       In sum, neither Young nor any other Heller attorney was aware of the discovery of those

15  21 emails nor had any reason to suspect that their section of the JMOL brief was "factually

16  incorrect" when it was drafted or submitted. Rather, the brief conformed to their understanding of

17  the evidence and was based largely on the same evidence used in filing the Motion for Summary

18  Judgment. Moreover, it was Young who requested that the statements appearing in the JMOL

19  brief which were proven to be incorrect in light of the trial testimony of Raveendran be corrected

20  and thereafter an amended JMOL brief was filed with the Court correcting the statements. (Young

21  Dec. ¶ 90 and Ex. 10 thereto.)

22       **(6)    Young Acted In Good Faith.**

23       In light of the new evidence available to the Court and in consideration of the complete

24  record, it simply cannot be said that Young acted in bad faith or is otherwise in violation of any of

25  his ethical duties to this Court or opposing counsel. Bad faith, and conduct tantamount to bad

26  faith, cannot be merely negligent or even reckless conduct to be sanctionable under a court's

27  inherent powers. *In re Keegan, supra*, 78 F.3d at 436. Indeed, reckless conduct is only

28  sanctionable when combined with additional factors such as frivolousness, harassment or an

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order

Kirby Noonan Lance & Hoge LLP
350 Tenth Avenue, Suite 1300 San Diego, California 92101-8700

1   improper purpose. *Fink, supra*, 239 F.3d at 994.

2       However, the evidence described above demonstrates not only that Young did not act in

3   bad faith.  It also demonstrates that he was not reckless, or even negligent.  Rather, he proceeded

4   as any conscientious lawyer would in assuring himself that the evidence (at least that had been

5   made available to him) overwhelmingly supported the positions he asserted.  And, while in

6   retrospect one can speculate whether there was something out there that should have made Young

7   question everything he read, everything he saw, everything he was told, the truth of the matter is

8   there was not.  In that regard, it is important to note that when one document appeared that raised a

9   question, Young directed his associate, Robertson, to question the key witness at Qualcomm,

10  Raveendran, and she had a simple and compelling response that answered that question.

## VIII. CONCLUSION

12      In summary, Young acted appropriately and professionally.  Young submits that his

13  conduct was well within the standard of care and that he and the Heller associates went to great

14  lengths to verify the facts that they presented to the District Court both orally and in writing.  It

15  simply cannot be said that Young's conduct amounted to bad faith, or amounted to conduct

16  tantamount to bad faith.  In light of the full and complete record now available to this Court, there

17  simply is no basis upon which sanctions against Young can be upheld.  The OSC should be

18  dismissed as to Young.

19  DATED: October 13, 2009          KIRBY NOONAN LANCE & HOGE LLP

21                           By:  _David J. Noonan_____

22                                David J. Noonan
                                  Steven W. Sanchez
23                                Ethan T. Boyer
                                  Attorney for Respondent Stanley Young

Privileged and Confidential – Production and Use Governed by Paragraph 3 of the November 7, 2008 Order